United States District Court
Southern District of Texas
FILED

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

APR 0 1 2002

Michael N. Milby
Clerk of Court

APOLINAR TORRES-ESPINO          )
                                )
v.                              )       C.A. No. **B-02-062**
                                )
E.M. TROMINSKI, INS DISTRICT    )
     DIRECTOR                   )
_____)

**PETITION FOR WRIT OF HABEAS CORPUS**
**SEEKING REVIEW OF ORDERS OF DEPORTATION,**
**AND, IN THE ALTERNATIVE, MOTION TO REINSTATE PETITION AND/OR**
**TO CLARIFY DECISION IN *TORRES-ESPINO v. TROMINSKI*, C.A. B-97-149**

Comes Apolinar Torres-Espino, and, pursuant to 28 U.S.C. §2241, *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), and *U.S. ex rel Marcello v. INS,* 634 F.2d 964,971 (5th Cir.1981), files the instant Petition for Writ of Habeas Corpus, seeking review of the Decisions of the Board of Immigration Appeals, dated February 10, 1995, and March 4, 2002. (Petitioner's Exhibits A and B, herein incorporated by reference). The first dismissed his appeal from the Order of the Immigration Judge, finding that he did not have the requisite seven years lawful domicile in the United States to qualify for §212(c) relief. In its 1995 decision, the BIA not only sustained the Judge's finding that he did not have seven years continuous **domicile**, [1] but also held, *sua sponte,* that he had abandoned his LPR status. [2] The

_____

    [1]  The Decision opined that Mr. Torres might have abandoned his status by asking to serve his sentence in Mexico, but ultimately held only that he lacked the requisite seven years lawful domicile. Petitioner's Exhibit C, herein incorporated by reference.

    [2]  This *sua sponte* finding was crucial to the Board's ultimate disposition of the case. Mr. Torres resumed his U.S. "domicile" in November 1987, more than seven years prior to the Board's decision, when his father picked him up after his release from prison, and

March 4, 2002 decision denied, (for the second time), Mr. Torres'
motion to reopen and reconsider and ordered his deportation.[3]

In the alternative, Mr. Torres seeks leave to reinstate his prior
petition, *Torres-Espino v. Trominski,* CA B-97-149, Hon. Hilda G.
Tagle, Presiding, either to clarify the decision therein, or to
address the validity of the original order of deportation, dated
February 10, 1995, which order was also challenged therein.  In his
initial petition, Mr. Torres challenged both the 1995 and the 1997
decisions.   In its Memorandum Order in that case, this Honorable
Court specifically "granted" said petition, but in the accompanying
discussion, the Court addressed only the retroactivity issues

---

brought him back to the U.S.  Therefore, without the BIA's finding
that he had abandoned his LPR status, he would have been eligible
for §212(c) waiver of inadmissibility at the time of the BIA's
decision, and entitled to a remand.  *See, e.g., Matter of Alarcon,*
20 I&N Dec. 557,562 (BIA 1992), holding that an application for a
waiver of inadmissibility is a continuing one, eligibility for
which is determined at the time of the final administrative
decision, and *Matter of A-A-,* 20 I&N Dec. 492,501,n.21 (BIA 1992)
("an application for relief from deportation is a continuing one").

[3] There is no dispute but that the office of prior counsel
committed two errors:  they failed to submit a brief in support of
the appeal, and on receipt of the 1995 BIA decision, dismissing the
appeal, they sent Mr. Torres a letter, stating that he had ninety
days to seek review of the decision from the Fifth Circuit, when in
fact, he only had thirty days.  The 1995 BIA decision itself notes
that no brief was received, and the letter incorrectly advising Mr.
Torres of the time to file a petition for review was filed with the
BIA.   (Petitioner's Exhibit D, herein incorporated by reference).

Mr. Torres' motion was filed before the promulgation of 8 C.F.R.
§§3.2(b)(2) and (c)(2), allowing only one motion to reopen, and one
to reconsider.    Although it was styled as seeking both
reconsideration and reopening (to submit a brief on appeal), as the
BIA pointed out in its decision, it did not contain the type of new
evidence necessary for a free-standing motion to reopen. Reopening
was not required for the BIA to consider the brief on appeal, which
also supported the motion for reconsideration. So the motion could
more accurately be viewed as one which sought only reconsideration.

involved in the 1997 decision. [4] Apparently for this reason, the BIA treated the Court's Order as granting Mr. Torres' petition only insofar as it challenged the 1997 order.

## I.  THE FACTS

1.  Apolinar Torres-Espino, (hereinafter, "Mr. Torres"), is a 46 year old native and citizen of Mexico, who initially entered the United States as a visitor in August of 1976, and became a lawful permanent resident, ("LPR"), on or about August 2, 1978, through his U.S. citizen father.  His wife is also an LPR, and their three sons, ages 12, 10, and 8, are native born United States citizens. Mr. Torres' parents and siblings, most of whom reside in the Rio Grande Valley, are also U.S. citizens or LPRs.

2.  On May 7, 1981, Mr. Torres was convicted of aggravated assault on a police officer, (for punching him in the mouth during a traffic stop), for which he was granted three years probation.  And in August of 1983, Mr. Torres was convicted of attempted murder, when the gun his ex-wife kept to protect her business was discharged during an argument.  For this offense, he was sentenced to prison.  He has no other criminal record.

3.  Several months after he was sentenced, Mr. Torres arranged to serve the remainder of his time, (approximately three years), in a Mexican prison, so that it would be easier for his family to visit. During the trial, Mr. Torres' defense attorney took his "green card."  While he was in prison, he wrote to request that it be sent to him in Mexico, but it never arrived.  In 1987, after serving

---

[4]  Petitioner's Exhibit E, herein incorporated by reference. In 1997, the Board denied this motion, solely on the basis of *Matter of Soriano,* 21 I&N Dec. 516 (BIA 1996; AG 1997), holding that the Antiterrorism and Effective Death Penalty Act of 1996 retroactively rescinded his eligibility for §212(c) relief.

less than five years, Mr. Torres was released from prison, in Mexico, and came immediately to the U.S. to be with his family. Later, he worked for his brother in Nuevo Progreso for a brief period, during which he stayed in Rio Bravo. Not having his "green card," he initially crossed back and forth through the river, but then requested, and was given, a temporary substitute card. Later, his attorney discovered that he had Mr. Torres' "green card" in his file, (as Mr. Torres had requested, he had attempted to mail it to him, but it had been returned), and gave it back to Mr. Torres.

3. On February 13, 1989, Mr. Torres was placed in deportation proceedings, for having been convicted of two crimes involving moral turpitude. The OSC alleged that he was a permanent resident, and did *not* allege that this status had changed. He was represented at that time by the Hon. Margaret Burkhart, then, of Texas Rural Legal Aid, and now, an Immigration Judge.

4. Mr. Torres requested relief under (then) §212(c) of the Act. A hearing was held on his application on November 2, 1989, following which, the Judge raised several issues he wanted the parties to brief, including the question of whether Mr. Torres could show that he had seven years lawful domicile, in light of the fact that, at his own request, he had served the bulk of his sentence in Mexico. The Judge did not, however, request that the parties address whether he had also abandoned his LPR status, apparently accepting Mr. Torres' testimony that he never intended to relinquish his LPR status. Mr. Torres submitted a brief, arguing that he maintained his lawful domicile. INS' brief did not address this issue.

5. On March 8, 1990, and without allowing Mr. Torres to present all his evidence on the merits of his application, the Judge issued his Oral Decision, finding that he had not shown seven years lawful domicile, and ordering that he be deported to Mexico. The Decision discussed the possibility that Mr. Torres might have relinquished

4

his status as an LPR, but made no explicit finding to that effect

6.  Mr. Torres filed a timely appeal.  However, due to confusion within the EOIR, which was in the process of changing the manner in which fees were handled, the BIA dismissed Mr. Torres' appeal, on the (erroneous) basis that it had not been timely filed.  Mr. Torres successfully challenged the dismissal at the Fifth Circuit, and the case was remanded to the BIA.

7.  On remand, the BIA concluded, *sua sponte,* that Mr. Torres had abandoned his LPR status, and on this basis, held that he could not establish the requisite seven years of lawful domicile necessary to support a §212(c) application. As a result, on February 10, 1995, the Board ordered that he be deported to Mexico.

8.  On receipt of this decision, the office of prior counsel sent Mr. Torres a letter, telling him that he had until May 11, 1995, in which to seek judicial review of that decision.  In fact, however, Mr. Torres had only until March 11, 1995, to seek such review.

9.  After the window for filing a petition for review had closed, but before May 11, 1995, Mr. Torres sought the services of the undersigned.  Therefore, on May 4, 1995, the undersigned filed a sixteen page motion to reopen and reconsider the Board's decision, and on June 6, 1995, a twenty-six page, points and authorities in support of said motion, plus exhibits.  In these pleadings, Mr. Torres pointed out a number of errors in the BIA's decision, including specific evidence which the Board had overlooked, tending to show that Mr. Torres had not abandoned his LPR status.

10.  On May 8, 1997, the BIA denied that motion, based solely on *Matter of Soriano, supra.*  On July 7, 1997, Mr. Torres filed his

first petition for habeas corpus, challenging both the February, 1995, decision, and that of July, 1997.  On August 26, 1998, this Honorable Court "granted" said petition, and remanded the case to the BIA.    However, the Memorandum Order addressed only the retroactivity issues, and not those relating to the 1995 decision.

11.  On or about April 12, 2001, Mr. Torres requested that the case be remanded to the Immigration Judge for further proceedings on his application for §212(c) relief.  But by Order dated March 4, 2002, the BIA denied Mr. Torres' request for a remand, as well as his motion of May, 1995, requesting that the Board reopen reconsider its decision of February 10, 1995, and reopen proceedings. Ironically, in its decision, the Board noted as follows:

> On August 26, 1998, the United States District Court for the Southern District of Texas vacated our decision in this matter and remanded the case to us, to give the respondent an opportunity to pursue an application for section 212(c) relief.

12.  In denying Mr. Torres' motion to reconsider, the Board made a number of errors, including its assertion that the issue of **abandonment** of LPR status had been properly before the Board, [5] and its somewhat surprising claim that Mr. Torres only made "general statements," and did not point to "a specific error of law or fact" in the Board's 1995 decision.

13.  As a result of the Board's recent decision, Mr. Torres is in "custody" within the meaning of 28 U.S.C. §2241, in that it puts him in imminent danger of deportation, and places significant restrictions on his liberty not shared by the populace at large. Petitioner's Exhibit F, herein incorporated by reference.

---

[5]  Actually, it was the question of whether Mr. Torres could show lawful domicile which formed the basis of the Judge's ruling.

## II.   CAUSES OF ACTION
### A.   REVIEW OF THE 1995 ORDER IN HABEAS CORPUS

MR. TORRES IS ENTITLED TO FULL JUDICIAL REVIEW OF THE 1995 DECISION, UNDER *MARCELLO v. INS, SUPRA,* BECAUSE HIS FAILURE TO FILE A PETITION FOR REVIEW OF THAT DECISION WAS THE RESULT OF FAULTY ADVISE OF COUNSEL, AND NOT A DELIBERATE BY-PASS OF JUDICIAL REVIEW.

    1.   THE 1995 DECISION OF THE BIA ERRONEOUSLY CONCLUDED THAT MR. TORRES HAD ABANDONED HIS LPR STATUS, IN THAT IT FAILED TO CONSIDER PERTINENT EVIDENCE OF RECORD, AND DREW UNWARRANTED INFERENCES AS TO MR. TORRES' MENTAL STATE FROM HIS ACTIONS DURING THE PERIOD THAT HE DID NOT HAVE APPROPRIATE DOCUMENTATION OF HIS LPR STATUS.

    2.   IT WAS A DENIAL OF DUE PROCESS FOR THE BIA TO CONCLUDE THAT MR. TORRES HAD ABANDONED HIS LPR STATUS, WHEN THE IMMIGRATION JUDGE HAD HELD ONLY THAT HE HAD NOT SHOWN THE REQUISITE SEVEN YEARS OF LAWFUL DOMICILE, WHICH DOMICILE HE HAD ACCRUED BY THE TIME OF THE BIA'S DECISION

### B.   REVIEW OF THE 2002 ORDER IN HABEAS CORPUS

THE MARCH, 2002 DECISION VIOLATES DUE PROCESS, IN THAT IT FAILS TO MEANINGFULLY CONSIDER THE ISSUES RAISED IN MR. TORRES' MOTIONS.

## III.   PREJUDICE AND SCOPE OF REVIEW

It is also clear that Mr. Torres was prejudiced from these Due Process failings.  His motion to reconsider was denied, without meaningful consideration of its merits.   In the immigration context, prejudice results, *inter alia,* where the procedures deprive the individual of the opportunity to present his or her case, and be heard. *Matter of Ruiz,* 20 I&N Dec. 91, 92 (BIA 1989).

Ultimate prejudice, in the sense that there exists a reasonable likelihood that the result would have been different, can nonethe-

less be seen from the facts of record.   He has been a permanent
resident since 1978, and has extensive family ties in the United
States, including three minor U.S. citizen children, and a lawful
permanent resident wife.   His offenses, while serious, occurred
some twenty years ago, and he has shown genuine rehabilitation.
Under current BIA precedent, he would be clearly entitled to
§212(c) relief.   *See, Matter of Arreguin,* I.D. 3247 (BIA 1995).

Since review herein is sought by means of habeas corpus, the
limitations of (prior) 8 U.S.C. §1105a do not apply, and Mr. Torres
may obtain review of both BIA decisions.   This is particularly true
since Mr. Torres was deprived of the right to seek judicial review
of the first decision due to counsel's error in misadvising him of
the time in which he could file such a petition. *U.S. ex rel
Marcello v. INS,* 634 F.2d 964,971 (5th Cir.1981), cited with
approval in *INS v. St. Cyr, supra* at 2284-85.   In *Marcello,* the
Court declined to require exhaustion of administrative remedies
where review of a deportation order was conducted under §2241,
"[a]bsent a finding of deliberate bypass of the direct appeal..."
The Court also concluded that, under those circumstances, the
"standard of review of the order of the Board ... [was] the same as
that on direct appeal of a final order of deportation." *Id.* at 972.

Clearly, where the office of prior counsel erroneously advised Mr.
Torres of the deadline to seek judicial review, and where he sought
legal assistance, (and even filed a motion to reopen and
reconsider), within the period he was told was available for
judicial review, there was no "deliberate by-pass" of such review.

WHEREFORE, it is respectfully urged that this Honorable Court
vacate both the February 10, 1995, and March 4, 2002, decisions of
the Board of Immigration Appeals, and remand the case to the BIA,

with instructions that it be remanded to the Immigration Judge, for the completion of the testimony on his §212(c) application, receipt of any further evidence, and entry of a new decision.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3226                    Texas Bar:    03052800
(956) 421-3423 (fax)              Federal ID:   1178

## VERIFICATION

I hereby certify that Attorney Lisa Brodyaga read and translated to me the factual allegations contained herein, and that they are true and correct, to the best of my knowledge and belief.

Apolinar Torres-Espino

## VERIFICATION OF COUNSEL

I hereby certify that I am familiar with the contents of Mr. Torres' administrative file, and that the foregoing facts are true and correct, to the best of my knowledge and belief.

## CERTIFICATE OF SERVICE

I certify that a courtesy copy of the foregoing, with Exhibits, was hand-delivered to the office of Lisa Putnam, SAUSA, 1701 Zoy St., Harlingen, Texas 78551, this 1st day of April, 2002.

9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO          )
                                )
v.                              )          C.A. No. B-02-062
                                )
E.M. TROMINSKI, INS DISTRICT    )
     DIRECTOR                   )
_____ )


EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

 

RECEIVED FEB 14

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*

_____

Chairman

*5107 Leesburg Pike, Suite 2400*

*Falls Church, Virginia 22041*

FEB 1 0 1995

Margaret D. Burkhart, Esquire
Texas Rural Legal Aid, Inc.
316 South Closner
Edinburg, Texas  78539-4565

APOLINAR TORRES-ESPINO
A22 365 809


    Enclosed  is  a  copy  of  the  Board's  decision  and  order  in  the
above-referenced case.

                    Very Truly Yours,

                    Mary Maguire Dunne
                    Acting Chairman

Enclosure



Panel Members:        FRED W. VACCA

                 MICHAEL J. HEILMAN

**U.S. Department of Justic**                    Decision of the     rd of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

========================================================================

File:  A22 365 809 – Harlingen                  Date:     FEB 1 0 1995

In re:  APOLINAR TORRES-ESPINO a.k.a. Apolinar Torres

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Margaret D. Burkhart, Esquire
                            Texas Rural Legal Aid, Inc.
                            316 South Closner
                            Edinburg, Texas  78539-4565

ON BEHALF OF SERVICE:   David M. Dixon
                        Chief Appellate Counsel

CHARGE:

    Order:  Sec. 241(a)(4), I&N Act [8 U.S.C. § 1251(a)(4)] –
            Crimes involving moral turpitude

APPLICATION:  Waiver of inadmissibility


    On March 8, 1990, the immigration judge found the respondent
deportable as charged; denied his application for a waiver of
inadmissibility under section 212(c) of the Immigration and
Nationality Act, 8 U.S.C. § 1182(c), on the basis that he was
statutorily ineligible for relief due to the lack of 7 consecutive
years of lawful unrelinquished domicile in the United States; and
ordered him deported from the United States to Mexico.  The
respondent appealed only from the denial of section 212(c) relief
and the finding that he lacks the requisite period of
unrelinquished domicile.

    In a decision dated June 25, 1993, the Board of Immigration
Appeals dismissed the respondent's appeal as untimely, predicating
that decision on the untimely payment of the filing fee to the
Immigration and Naturalization Service despite the timely filing
of the Notice of Appeal (Form EOIR-26) at the Office of the
Immigration Judge.  The alien appealed our decision to the United
States Court of Appeals for the Fifth Circuit.  Thereafter, the
Fifth Circuit granted a motion of the Service for remand of the
record to the Board.  Affidavits of counsel for respondent and the
management office of the Department of Justice, Executive Office
for Immigration Review in Harlingen, Texas, attached to a
February 28, 1994, memorandum of David M. Dixon, Chief Appellate
Counsel for the Service, are to the combined effect that at the
time the alien's appeal was filed it was the practice for filing
fees to be paid at the Office of the Immigration Judge in
Harlingen, Texas, simultaneously with the filing of the Notice

A22 365 809

of Appeal, with the filing fees later forwarded to the Service office where a receipt for filing fees was ultimately issued or the Form EOIR-26 was stamped filed. On remand, the Service concedes that the alien's appeal was timely filed. Consequently, the Board decision of June 25, 1993, is vacated, and the Board will review the merits of this case. The appeal will be dismissed.

In the case before us, we emphasize that deportability is not contested on appeal. We also recognize that the immigration judge found that the respondent's testimony as to domicile was not credible. However, we will not address the immigration judge's finding that the applicant's testimony lacked credibility, because even if we were to accept the applicant's testimony as true, it would not establish his claim that he qualifies for section 212(c) relief on the basis of 7 consecutive years of lawful unrelinquished domicile.

It is undisputed that the respondent was admitted to the United States as a lawful permanent resident in 1978. His criminal history includes a conviction on August 24, 1983, for attempted murder for which he was sentenced to 18 years of imprisonment by the Texas Department of Corrections. 1/ The respondent testified that as the result of his 1983 conviction he was incarcerated for a total of 4 years and 10 months, counting time in a county jail prior to his conviction, a period of 7 or 8 months served after his conviction in prison in Texas, and a period spent in prison in Mexico. He stated that at his request in about June 1984 he was transferred to a Mexican prison where he remained until about November 1987. 2/ He indicated that he requested the transfer to prison in Mexico in order to facilitate his visitation by family members who resided in Texas. He admitted that at the time he

-------------------------------------------------------------------

1/ Certified conviction records also show that in 1981 he was convicted of aggravated assault on a peace officer for which he was fined and sentenced to 3 years in the Texas Department of Corrections, suspended on condition of completion of 3 years' probation

2/ We have placed no reliance on the immigration judge's speculation during deportation proceedings regarding the nature of documents signed by the respondent in conjunction with his transfer to a Mexican prison pursuant to provisions of an unidentified treaty between the United States and Mexico. Although the Service was given an opportunity to introduce documentary evidence pertaining to the prison transfer at the deportation hearing, it declined to do so, and the respondent has submitted no evidence as to the documents signed or the treaty under which the transfer was effectuated.

-2-

A22 365 809

requested his transfer to a prison in Mexico he was aware that he
would be confined outside the United States for more than 3 years.
He related that after his release from prison in November 1987, he
remained in Mexico for 3 to 5 months, during which time he was
employed at his brother's bakery, lived in his brother's home, and
met and married his wife. During this period when he worked and
lived with his brother in Mexico, he made brief visits to the
United States via entries without inspection, i.e. crossing the
river. When he decided to move to the United States to live, he
then entered this country using a border crossing card issued in
1967, prior to his acquisition of lawful permanent resident status
in 1978.

The respondent also testified that beginning in 1988 he and his
wife (who has no legal status here) lived in the United States;
his wife entered the United States without inspection since she
had no valid immigration documents. He also stated that in
1983 his "green card" was physically taken from him during the
course of criminal proceedings and that he applied for and was
given a replacement document by the Service about 2 months after
he began living in the United States in 1988. He also reported
that his wife, after becoming pregnant, returned to Mexico to care
for her sick mother; that he went there to help her return to the
United States; and that in June 1989 they were excluded from the
United States when it was found that the respondent's temporary
"green card" had expired and his wife attempted entry using the
birth certificate not her own. The respondent also related that a
few days later they both re-entered the United States without
inspection. 3/ The respondent further testified that it was never
his intention to return to live in Mexico after he became a lawful
permanent resident and that after his release from prison it was
never his intention to live or remain in Mexico on a permanent
basis.

Section 212(c) of the Act provides, in pertinent part, that
aliens lawfully admitted for permanent residence who temporarily
proceed abroad voluntarily and not under an order of deportation,
and who are returning to a lawful unrelinquished domicile of
7 consecutive years, may be admitted in the discretion of the
Attorney General without regard to certain specified grounds for
exclusion enumerated in section 212(a) of the Act, 8 U.S.C.
§ 1182(a). The grounds specified include those enumerated in
section 212(a)(4) of the Act, 8 U.S.C. § 1182(a)(4), concerning
conviction for crimes involving moral turpitude. A waiver of a
ground of inadmissibility under section 212(c) may be granted to a

---

3/ The respondent has raised no issue on appeal concerning the
   propriety of deportation proceedings.

-3-

A22 365 809

permanent resident alien in deportation proceedings regardless of whether he departs the United States following the act or acts which render him deportable. <u>Matter of Silva</u>, 16 I&N Dec. 26 (BIA 1976). If a ground of deportation is also a ground of inadmissibility, section 212(c) can be invoked in a deportation hearing. <u>Matter of Granados</u>, 16 I&N Dec. 726 (BIA 1979).

It would be incongruous to have a situation where an alien could no longer qualify as a returning resident immigrant and then hold that his status as a lawful permanent resident in deportation proceedings had not changed by virtue of his absence from the United States. <u>See</u> sections 101(a)(20) and 101(a)(27)(A) of the Act; <u>Matter of Quijencio</u>, 15 I&N Dec. 95, 97 (BIA 1974). Consequently, we agree with the immigration judge that it is appropriate to consider whether the respondent, who became a lawful permanent resident in 1978, abandoned his status, rendering him unable to establish the 7 consecutive years of lawful unrelinquished domicile required for section 212(c) eligibility.

From the language in the immigration judge's decision, we are uncertain of the burden of proof he applied in determining whether the respondent did in fact abandon his lawful permanent resident status. On <u>de novo</u> review of the record, we find that while the burden of proving eligibility for relief from deportation is generally on the alien, where an applicant for section 212(c) relief in deportation proceedings shows that he was admitted as a lawful permanent resident more than 7 years immediately preceding his application for relief, the burden is then on the Service to show that the applicant abandoned his status as a lawful permanent resident. We also find that the Service's burden is to show that the applicant's status has changed by clear, unequivocal, and convincing evidence. <u>See</u> <u>Matter of Huang</u>, 19 I&N Dec. 749, 754 (BIA 1988) (exclusion proceedings). Where abandonment of an alien's lawful permanent resident status is established, he is statutorily ineligible for section 212(c) relief due to his inability to show lawful unrelinquished domicile.

We conclude that the same factors considered in determining whether a returning resident immigrant should be deprived of his status as a lawful permanent resident are applicable to the circumstances of the instant case. The factors to be considered include the location of the alien's family ties, property holdings, and job, and the intention of the alien with respect to both the location of his actual home and the anticipated length of his excursion. <u>Matter of Muller</u>, 16 I&N Dec. 637 (BIA 1978); <u>Matter of Kane</u>, 15 I&N Dec. 258 (BIA 1975); <u>Matter of Quijencio</u>, <u>supra</u>. Also to be considered is the applicant's purpose in departing from the United States and whether that purpose is likely to be accomplished in a visit abroad which terminates within a relatively

-4-

A22 365 809

short period of time and with the termination date being fixed by
some early event. See, e.g., Matter of Kane, supra. An alien's
intent and desire to retain lawful permanent resident status is
not sufficient by itself to retain that status. Matter of Huang,
supra; Matter of Kane, supra.

In the instant case, while the respondent's professed intent was
to return to the United States and to maintain his lawful permanent
resident status, his actions between 1984 and 1988 do not support
that intent.  The respondent has at least one sibling in Mexico
and many family members in the United States. 4/  There is no
indication in the record that the respondent owned real estate in
the United States prior to his incarceration in Texas in 1983 or
that he has ever owned real estate in Mexico.  In 1984 he
voluntarily requested transfer to a Mexican prison, knowing that
he would be required to serve at least 3 more years in prison and
at best ignorant of whether his criminal conviction would preclude
him from reentering the United States.  He has stated that he
requested the transfer in order to be incarcerated at a facility
closer to his family in the United States.  However, it is
significant that on his release from prison, he made no immediate
attempt to resume living in the United States.  Instead, he elected
to remain in Mexico for several months, living with his brother
while employed at his brother's bakery and marrying a native and
citizen of Mexico during this time.  His actions in entering the
United States without inspection on multiple occasions during this
period, as well as his delay in applying for a replacement "green
card" until 2 months after he began living in this country in
1988 appear inconsistent with a genuine belief that his immigration
status would be unaffected by his years spent in Mexico.

The respondent's time in Mexico between 1984 and 1988 cannot be
viewed as a period which would terminate within a relatively short
time or as having a termination date fixed by some early event.
In fact, the respondent was, as he anticipated, incarcerated in
Mexico for at least 3 years and subsequent to his release resumed
his daily life there, living, working, and marrying in his home

---------------------------------------------------------------
4/  The respondent testified that his father is a United States
    citizen and that his mother is a lawful permanent resident
    (Tr. at 31).  His testimony concerning his siblings is somewhat
    difficult to follow (Tr. at 30-32, 87).  He supplied the names
    of seven siblings and related that four are lawful permanent
    residents and that two may have applied for legalization.  His
    family members in the United States were initially located in
    Texas near the Mexican border, but are now in Ohio, Kansas,
    and Oklahoma as well as in Texas.  His relatives in Mexico
    include one brother who owns a bakery in Mexico and also
    resides there.

-5-

A22 365 809

country.   Considering the evidence in its entirety, we find that
the respondent is shown by clear, convincing, and unequivocal
evidence to have abandoned his lawful permanent resident status
and thus to be unable to establish the requisite 7 consecutive
years of lawful unrelinquished domicile for statutory eligibility
for section 212(c) relief.

We note that the respondent on appeal has advanced arguments as
to his equities and asserts that he warrants a grant of section
212(c) relief in the exercise of discretion.  However, as we find
the respondent statutorily ineligible for a waiver of
inadmissibility under section 212(c) of the Act, we need not reach
whether relief is warranted in the exercise of discretion and find
no error in the immigration judge's similar conclusion.

Accordingly, the appeal will be dismissed.

ORDER:  The Board's decision of June 25, 1993, is vacated.

FURTHER ORDER:  The appeal is dismissed.

FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO        )
                              )
v.                            )        C.A. No. B-02-062
                              )
E.M. TROMINSKI, INS DISTRICT  )
     DIRECTOR                 )
_____)


EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

─────────────────────────────────────

*5201 Leesburg Pike. Suite 1300*
*Falls Church, Virginia 22041*

**Brodyaga, Lisa S., Esquire**
**17891 Landrum Park Road,**
**San Benito, TX 78586-0000**

**Office of the District Counsel/HL**
**P.O. Box 1711**
**Harlingen, TX 78551**

**Name: TORRES-ESPINO, APOLINAR***             A22-365-809

<u>Date</u> of this notice: 03/04/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    HOLMES, DAVID B.
    MILLER, NEIL P.
    SCHMIDT, PAUL W.

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A22 365 809 - Harlingen                  Date:

In re: APOLINAR TORRES-ESPINO a.k.a. Apolinar Torres

IN DEPORTATION PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:    Lisa S. Brodyaga, Esquire

CHARGE:

    Order:    Sec.    241(a)(4), I&N Act [8 U.S.C. § 1251(a)(4)] -
                      Crimes involving moral turpitude

APPLICATION:  Section 212(c) waiver

ORDER:

        PER CURIAM.  This case has been before us on several previous occasions.  On
February 10, 1995, we dismissed the respondent's appeal from an Immigration Judge's decision
finding him ineligible for relief from deportation under former section 212(c) of the Immigration and
Nationality Act, 8 U.S.C. § 1182(c), for failure to satisfy the lawful unrelinquished domicile
requirement.  Following that decision, the respondent filed a motion to reopen and reconsider.  We
denied that motion on May 8, 1997, based on the Attorney General's decision in *Matter of Soriano*,
21 I&N Dec. 516 (BIA 1996; A.G. 1997).  Under that decision, the respondent was statutorily
ineligible for a section 212(c) waiver due to section 440(d) of the Antiterrorism and Effective
Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA").

        On August 26, 1998, the United States District Court for the Southern District of Texas
vacated our decision in this matter and remanded the case to us, to give the respondent an
opportunity to pursue an application for section 212(c) relief.  On March 27, 2001, the United States
Court of Appeals for the Fifth Circuit granted the government's unopposed motion to withdraw and
dismiss the appeal it had taken from the district court's decision.  Further, the Attorney General has
now established by regulation, codified at 8 C.F.R. § 212.3(g), that section 440(d) of AEDPA shall
not apply to any applicant for section 212(c) relief whose deportation proceedings were commenced
before the Immigration Court prior to April 24, 1996.  The proceedings in this case were commenced
before that date.

A22 365 809

As the respondent is no longer barred from section 212(c) relief due to the provisions of AEDPA, we now will address the merits of his motion to reopen and reconsider. In his motion, the respondent makes three arguments. First, he argues that the finding by the Immigration Judge and the Board that he had abandoned his residence in this country should be set aside because he was never properly charged with abandoning his lawful permanent resident status. Second, the respondent argues that the finding that he abandoned his residence should be set aside on the merits, because the evidence does not clearly, unequivocally, and convincingly establish that he intended to abandon his home in this country. Third, the respondent argues, alternatively, that the proceedings should be reopened based on ineffective assistance of counsel, to allow him to submit a brief in support of his appeal and to receive de novo consideration of the issues being raised.

A motion to reopen before the Board must present new, material, previously unavailable evidence. 8 C.F.R. § 3.2(c)(1). A motion to reconsider must specify the errors of fact or law in the prior Board decision, and be supported by pertinent authority. 8 C.F.R. § 3.2(b)(1). The respondent's motion does not meet these requirements.

The respondent asserts that the Immigration Judge should not have raised the issue of possible abandonment of lawful permanent resident status without the Service making the charge that he had abandoned his status. As the Immigration Judge noted at the hearing, he did have authority to raise this issue, which relates to the respondent's application for relief from deportation. This situation is not analogous to a situation where an alien is found deportable on a charge that the Service did not bring. There was nothing to preclude the Immigration Judge from raising the issue of abandonment of lawful permanent resident status in connection with an application for 212(c) relief.

Moreover, the parties were clearly given notice that the Immigration Judge planned to inquire into the abandonment issue, as the Immigration Judge continued the case for the parties to brief several issues, and that issue was one the Immigration Judge specifically stated he wanted briefed. The respondent points out that the Service never did brief that issue, and asserts that because the Service did not pursue it, he assumed that it would not be an issue and did not prepare for it. These factors in no way prevented the Immigration Judge from considering this issue, which the Immigration Judge clearly informed the parties would be considered. The respondent's contention that he was "never provided with notice that abandonment was an issue" (Respondent's Motion at 20) is simply not true. As he did have notice of the issue, which the Immigration Judge had power to raise, and clearly did raise, there was no denial of "an opportunity to defend" (Respondent's Motion at 20), resulting in a denial of due process.

On the merits, the respondent argues in his motion that the Board erred in finding that the respondent had abandoned his permanent resident status. He argues that the Board erred in its manner of considering the issue by not focusing on the respondent's intent, and by not fully

2

A22 365 809

considering certain evidence, such as his attempts during his years in Mexico, to get his "green card" back, that indicated he did not intend to abandon his status. Other than these general statements, the respondent has not pointed to a specific error of fact or law to support his motion to reconsider. Our February 10, 1995, decision was comprehensive and detailed in its discussion of the abandonment issue, and the respondent has not provided an adequate basis for us to reconsider that decision.

Nor do we find an adequate basis to reopen or reconsider based on alleged ineffective assistance of counsel. We note initially that, despite present counsel's statements to the contrary, there has not been compliance with the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), and reopening on that basis is therefore not appropriate. *Compare Mattter of Grijalva*, 21 I&N Dec. 472 (BIA 1996). We further note that the issue of abandonment of lawful permanent resident status, while not briefed, was explored at the hearing, and as indicated above, the Immigration Judge made a reasoned decision on that issue, which we upheld.

We also note that the respondent requests "de novo" consideration of the issues raised, but he has already had such review. In fact, in our February 10, 1995, decision, we specified that we were reviewing the abandonment issue de novo because of concerns regarding the Immigration Judge's allocation of the burden of proof.

In sum, we find that there was no error in our February 10, 1995, decision in this case. Nor did the Immigration Judge err in raising and deciding the issue of the respondent's lawful permanent resident status. Accordingly, the respondent's motion to reopen and reconsider is dismissed.

FOR THE BOARD

3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO                    )
                                          )
v.                                        )     C.A. No. B-02-062
                                          )
E.M. TROMINSKI, INS DISTRICT              )
        DIRECTOR                          )
_____)


EXHIBIT "C" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
Harlingen, Texas

File No.:    A 22 365 809                March 8, 1990

In the Matter of              )
                              )
APOLINAR TORRES-ESPINO        )    IN  DEPORTATION  PROCEEDINGS
                              )
          Respondent          )

CHARGE:        I&N Act - Section 241(a)(4): Conviction of two
               crimes involving moral turpitude.

APPLICATIONS:  Waiver of inadmissibility Act pursuant to Section
               212(c) of the Immigration and Nationality Act [8
               U.S.C. 1182(c).

ON BEHALF OF RESPONDENT:              ON BEHALF OF SERVICE:

Margaret Burkhart                      District Counsel's
316 South Closner                         Office
Edinburg, TX   78539                   U.S.I.N.S.
                                       2102  Teege  Avenue
                                       Harlingen, Tx. 78550

ORAL DECISION OF THE IMMIGRATION JUDGE

     The respondent is a 34 year old married man, a native and

citizen of Mexico, who adjusted his status from that of a visitor

to that of a lawful permanent resident in the United States, in

1978, apparently on or about August 2nd of that year.

     In an Order to Show Cause issued on February 13, 1989, which

has been marked as Exhibit 1 for the record, the Immigration

Service has charged that he's subject to deportation under Section

241(a)(4) of the Immigration and Nationality Act, based upon

convictions for two crimes involving moral turpitude not arising

1

0186

out of a single scheme of criminal misconduct.

The respondent, through counsel, has admitted the allegations in the Order to Show Cause, with the exception of allegation six, concerning an alleged conviction in May, 1981, in a Texas State Court for the offense of aggravated assault on a peace officer. Because that allegation was denied the respondent also denied deportability.

The Immigration Service has presented the document, marked as Exhibit 2, a judgement from that State Court. And based upon that judgement, I do find that the respondent was, in fact, convicted of the crime alleged in allegation number six of the Order to Show Cause. Further I find, on the basis of that, and his admission of allegation number seven and the other allegations that he is clearly and unequivocally subject to deportation on the charge under Section 241(a)(4) of the Act.

As to relief from deportation the respondent has sought relief in the form of a waiver of deportability and excludability under Section 212(c) of the Immigration Act. His application for that relief has been filed with the Court and marked as Exhibit 3.

In hearings on the question of relief from deportation the respondent has presented his own testimony as to his application for relief. During the hearing on the question of relief questions arose concerning whether the respondent had maintained an unrelinquished domicile in the United States, as required by the Act. And the Court has decided to issue this decision on that question without continuing the case to hear more evidence from the

A 22 365 809                    2                    March 8, 1990

respondent.   The respondent has made a proffer of the other evidence that would have been presented in the case.

To qualify for relief from deportation under Section 212(c) of the Immigration Act the respondent needs to show three things. He needs to show that he was lawfully admitted to the United States for permanent residence.  This does not appear to be seriously and issue since it is almost conceded by the terms of the Order to Show Cause.  And is certainly established by the respondent's unrebutted testimony on that point.  And I certainly would find that he has shown a lawful admission for permanent residence in 1978.   The respondent also is required to show that he merits the exercise of discretion.   And, although evidence has been presented on that point, I will not make a decision on that issue because I consider it the most subjective issue in the case.   And, therefore, the issue that should be reached last or if not necessary, not at all.

As to the issue of the unrelinquished domicile for seven consecutive years that is required by the statute, the respondent in his testimony on direct has raised certain issues concerning whether he has maintained such an unrelinquished domicile.   The respondent is required to show by a preponderance of the evidence that he does meet each of the criteria set out in the statutes. See Matter of Marin, 16 I&N Dec. 581 (BIA 1978).   These three criteria, the lawful admission, the unrelinquished domicile and the exercise of discretion are separate criteria.   Each one of them must be met by a preponderance of the evidence.  It is not possible to meet only two of these criteria and be successful in the

A 22 365 809                           3                        March 8, 1990

application for relief.

As to the respondent's testimony as it relates to this issue, the respondent's testimony establishes that he was sentenced in August 1983, to a term of 18 years in a Texas prison. That he spent at least seven months in prison and had spent several months in county jail waiting for trial. That after approximately a year in custody on the criminal case he did request a transfer to a Mexican prison. He testified that he made this request through the Mexican Consulate. And, although there is not clear evidence in the record, there's at least some indication that was pursuant to some type of international treaty, The terms of which are not a matter of record.

The respondent's stated reason for requesting the transfer to Mexico, was that it would make it easier for his family to visit him more easily while he was in prison. He testified that he had at least three years to serve in Texas before he could have been released from prison there. And he testified that he thought at the time that he was transferred to Mexico, that he would serve as long a term in Mexico before he was released from prison there.

The respondent was released from prison, according to his testimony, some time in late 1987, which would appear to indicate that he spent at least three years in Mexican prison. And apparently more time, it's not possible to be definite as to how long he served in Mexico because the respondent could not state with any specificity when exactly he was transferred.

During the time that he served in prison in Mexico the

A 22 365 809                          4                          March 8, 1990

0169

respondent was in two separate institutions. One of them would be at least an eight hour drive from his family's home in South Texas. The other would apparently be more than a one day drive, perhaps a two day drive, from his family's location in South Texas.

There isn't any evidence in the record to show where the respondent thought he would be placed in prison if he was transferred to Mexico. But there is certainly nothing to indicate that he had any reasonable expectation that it would be easier for his family to visit him in Mexican prison than it was in the United States. Since the prison he was located in in Texas was apparently eight hours drive or less from his family's home in South Texas.

After being released from prison in Mexico, apparently, some time in late 1987, perhaps early November of that year, the respondent testified that he lived and worked in a Mexican city not far from the United States border, employed by a brother who owned a bakery in that area. He did not give any reason for remaining in Mexico for that period of several months. He did testify that during that period he entered the United States several times without inspection. And also, apparently, entered the United States during that period at least once, perhaps more often with a border crossing card that apparently had been issued to him before he became a lawful permanent resident of the United States.

The respondent then testified that at some time, several months after being released from prison, he re-entered the United States again without inspection with the intention of living in

A 22 365 809                5                March 8, 1990

the United States.  That some time after doing so, he applied for a replacement permanent residence card at the Immigration office in South Texas.  And the Court notes what is shown clearly by the Immigration statute,that even a lawful permanent resident who had entered the United States without inspection would have been subject to deportation for having done so, at that time when the respondent made the application for the substitute permanent resident card.  In fact, such a person would still be subject to deportation.At the time the respondent applied for the replacement card.  The state of the law would not have apparently admitted any type of relief from deportation for a person in his situation. Although a recent decision of the Board of Immigration Appeals might change that prospectively.

It is, therefore, difficult for the Court to believe that the respondent actually disclosed that he had entered the United States illegally without inspection, when he applied for the replacement card at the Immigration office in South Texas.  On the other hand, the Immigration Service has not presented any evidence about what might have been contained in the application the respondent said he made.  Nor, have they asked him any questions on this point.

. I do, however, find it is not likely that the respondent actually disclosed his entries without inspection at the time he applied for the substitute card.

The respondent states that he re-entered the United States without inspection by crossing through the Rio Grande River because it was easier to do so in that manner than by applying for a

A 22 365 809                    6                    March 8, 1990

. 0171

substitute card at the Immigration office located at the international bridge between Mexico and the United States. The Court feels that this explanation is simply not credible by any common sense terms and becomes less credible when one considers that an application made by the respondent while he was physically located in Mexico and approaching the United States from Mexico, would certainly raise the question about why he had been in Mexico and for how long a period he had been there.

The respondent has claimed, through his testimony that he thought he had a valid permanent resident status in 1988, 1989, after re-entering the United States following his release from prison in Mexico. This claim is belied by aspects of his testimony which are simply incredible. As I've noted above, the Mexican prisons were further from his family's location in South Texas than the prison he was in in the United States. So, his explanation given for requesting a transfer to Mexican prison is, therefore, not credible or sensible. Second, the respondent claimed, when questioned by the Court, that in June of 1989, when returning to the United States at an international bridge, accompanied by the woman he later married, he simply hoped that she would not be asked questions about her citizenship. He admitted on cross-examination that, in fact, she had with her and presented to an Immigration officer a birth certificate in another name. This evasion by the respondent, and failure to mention the birth certificate when he was questioned by the Court, comes close to an actual misrepresentation about his intentions on that day. And his testimony in general in

A 22 365 809                    7                    March 8, 1990

0172

the ways I have mentioned, and other ways that I think are clear from the record, simply does not have the ring of credibility.

As far as the findings of the Court concerning the applicant's domicile since his transfer to Mexico in 1984, I would make the following finding.  First, it does appear to the Court, based on the record in this case, that the respondent's request for a transfer to Mexican prison at a time when he had a term to serve of at least three years in Mexico, according to his statement, in itself would constitute an abandonment of his domicile in the United States.

In the alternative the Court would find that such a request for a transfer to Mexico when the respondent expected to serve at least three years in prison there constitutes an abandonment of his lawful permanent resident status and domicile in the United States, unless ~~Unless~~ he presents some very convincing and believable explanation about why he felt compelled to request a transfer. And in this case, the record certainly does not include a credible or convincing explanation of why he requested that transfer.

In the alternative the Court would find, in this case, that this respondent's several entries into the United States without inspection following his release from prison in Mexico, his apparent use of a border crossing card which he was no longer entitled to, the failure to renew the temporary permanent resident card that he had received from the Immigration Service at some time during 1988, and his conduct in general during that period, does demonstrate to the Court that during that period, between his

A 22 365 809                    8                    March 8, 1990

0173

release from prison in late 1987, and the time he was stopped by Immigration officers at the international bridge in June of 1989, clearly demonstrates that during that period of time he himself believed that he no longer had lawful permanent resident status in the United States.  For all these reasons it seems to the Court that even if the transfer to prison in general, or in this case in particular, does not in itself constitute an abandonment of permanent resident status or domicile in the United States.  In this case, in the respondent's mind, it clearly did constitute such abandonment.

For all these reasons the Court finds that the respondent has, in fact, abandoned his lawful unrelinquished domicile in the United States which he had before his conviction.  And, therefore, finds that it's impossible for him to qualify for relief under Section 212(c) of the Immigration Act.  Therefore, I make the following order.

ORDER

IT'S ORDERED that the respondent's application for relief under Section 212(c) of the Act be denied.

IT FURTHER ORDERED  that the respondent be deported from the United States to Mexico based on the charge in the Order to Show Cause.

ALAN E VOMACKA
Immigration Judge

A 22 365 809                  9              March 8, 1990

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO        )
                              )
v.                            )        C.A. No. B-02-062
                              )
E.M. TROMINSKI, INS DISTRICT  )
     DIRECTOR                 )
_____)


EXHIBIT "D" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
May 3, 1995

Immigration Judge Margaret Burkhart
Executive Office for Immigration Review
201 E. Jackson
Harlingen, Texas 78550

Re: Apolinar Torres-Espino·              HAND DELIVERED
    A22 365 809

Dear Judge Burkhart:

Thank you for taking the time to speak with me yesterday about the above-captioned case. And thank you also, for your frankness in acknowledging the administrative errors which occurred herein.

As we discussed, the original appeal, timely filed on March 19, 1990, was initially dismissed as untimely by the Board of Immigration Appeals because the fee receipt was dated March 20, 1990, the day after the appeal period expired. A Petition for Review to the Fifth Circuit was taken, and it was eventually agreed that the appeal had been timely, because the procedure followed at that time was that the fee was submitted to the EOIR with the notice of appeal, and subsequently forwarded to INS for processing.

On remand to the Board of Immigration Appeals, it was discovered that the attachments from the notice of appeal were missing from the record of proceedings. A letter was sent from the Board, requesting a copy of the missing page(s), and noting that no brief had been filed in support of the appeal. You forwarded the attachments to the Board, and gave the file to another attorney to prepare the brief. However, he neglected to do so, and as there was no specific briefing schedule, no-one noticed the oversight.

On February 10, 1995, the Board dismissed the appeal. By letter dated February 15, 1995, (see attached), Mr. Torres was advised by the attorney who apparently took over the case, that he had until May 11, 1995, in which to appeal to the Fifth Circuit. In fact, since he was convicted in 1983 of the offense of attempted murder, an aggravated felony, and the final order of deportation was issued after January 1, 1991, the time for filing a Petition for Review expired on March 12, 1995, long before he sought my assistance.

Consequently, we are left with no available course of action but to seek reopening from the Board, based on the good-faith errors of your former office. It pains me greatly to do so, since I have only the highest regard for your legal work in general, and for the work you performed in this case in particular, but it is comforting to know that you understand the need to file such a motion.

If I have misstated any facts, or omitted any pertinent information, please advise me at once. Mr. Torres is under a "bag and baggage" letter, requiring that he report for deportation on May 10, 1995, so time is of the essence.

Thank you for your consideration.

Sincerely,

Lisa S. Brodyaga
Attorney at Law

2

0127

LAW OFFICES OF

## TEXAS RURAL LEGAL AID, INC.
316 S. CLOSNER
EDINBURG, TEXAS 78539-4565
PHONE: (210) 383-5673
FAX. (210) 383-4688

MID-VALLEY OFFICE:
259 S TEXAS BLVD.
WESLACO. TEXAS 78596-6112
(210) 383-0641
(210) 968-9574

el dia 15 de febrero, 1995

Sr. Apolinar Espino Torres
405 South Tio Street
Weslaco, Texas  78596

Estimado Sr. Torres:

Siento informarle que su apelacion ha sido despedido por la mesa de apelaciones de inmigracion (BIA).  La oficina de inmigracion le informara de la fecha que debe de presentarse para que lo deportan para Mexico.

Su caso puede ser apelado a la corte de apelaciones( U.S. Fifth Circuit of Appeals).  Sin embargo, nosotros no vamos a poder asistirlo con esta apelacion.  Si decide apelar su caso, debe de consultar un abogado privado.  **Tome en cuenta que su caso tiene un limite de fecha del dia 11 de mayo, 1995 si usted se decide apelar el caso.**

Aqui le mando una copia de la decision de la mesa de apelaciones de inmigracion (BIA) en su caso.  Favor de llamarme si tiene preguntas tocante su caso.

Atentamente,

TEXAS RURAL LEGAL AID, INC.

ALBERTO GUERRERO
Abogado

AG:NA
TRLA File #1-37,125

printed on recycled paper

0138

(Heading in English)

February 15, 1995

Dear Mr. Torres:

I am sorry to inform you that your appeal has been dismissed by the Board of Immigration Appeals, (BIA). The office of Immigration will inform you of the date on which you must present yourself to be deported to Mexico.

Your case can be appealed to the appellate court, (U.S. Fifth Circuit Court of Appeals). However, we will not be able to assist you with this appeal. If you decide to appeal your case, you must consult a private attorney. **Take into consideration that you have a limited time, until May 11, 1995, if you decide to appeal the case.**

I am sending herewith a copy of the decision of the Board of Immigration Appeals, (BIA) in your case. Please call me if you have any questions about your case.

Sincerely,

TEXAS RURAL LEGAL AID, INC.

/s/

Alberto Guerrero
Attorney


CERTIFICATE OF TRANSLATOR

I., Lisa S. Brodyaga, certify that I am competent in both the Spanish and English languages, and that the foregoing is a true and correct translation of the Spanish original, (with the emphasis in the original), to the best of my knowledge and belief.

Lisa S. Brodyaga
Attorney at Law
May 4, 1995

0130

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO          )
                                )
v.                              )        C.A. No.  B-02-062
                                )
E.M. TROMINSKI, INS DISTRICT    )
     DIRECTOR                   )
_____)

EXHIBIT "E" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Southern District of Texas
FILED

**JUL 07 1997**

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO            )
                                  )
v.                                )      C.A. No. *B-97-149*
                                  )
E.M. TROMINSKI, INS DISTRICT      )
      DIRECTOR                    )
_____)

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDERS OF DEPORTATION

Comes Apolinar Torres-Espino, and, pursuant to the Decisions of the
Fifth Circuit in (1) *Williams v. INS*, __ F.3d __, (June 6, 1997)
(right to review by Habeas Corpus survives in cases where
jurisdiction in Court of Appeals is withdrawn by §440(a) of the
Antiterrorism and Effective Death Penalty Act, ("AEDPA")); and (2)
*Anwar v. INS*, 1997 WL 327302 (5th Cir. June 16, 1997), withdrawing
the opinion in the same case at 107 F.3d 339, files the instant
Petition for Writ of Habeas Corpus, seeking review of the Decisions
of the Board of Immigration Appeals, dated February 10, 1995, and
May 8, 1997. [1]  The first dismissed his appeal from the Order of
the Immigration Judge, finding, *sua sponte,* that he had abandoned
his residence in the United States, and the second, denying his
motion to reopen and reconsider, on the grounds, *inter alia*, of
ineffective assistance of counsel, and ordering his deportation to

_____

[1]  The 1997 Decision was issued by a single Board Member, in
violation of 8 CFR §3.1(a)(1), permitting delegation of the powers
of the Board only to three member panels.

Mexico. (Petitioner's Exhibits A and B incorporated herein). [2]

The 1997 denial was based solely on the contested assertion that Mr. Torres was ineligible for the relief sought, which, in turn, is grounded in several contested issues of constitutional import. One arises from the fact that the statute has been construed in such a manner that it bases continuing eligibility for relief *solely* on the procedural context in which it is sought. *Compare; Matter of Fuentes-Campos*, I.D. 3318 (BIA 1997) (notwithstanding §440(d) of AEDPA, applicant otherwise within its scope may be granted §212(c) relief in exclusion proceedings), with *Matter of Gonzalez-Camarillo*, I.D. 3320 (BIA 1997) (§440(d) of AEDPA precludes grant of §212(c) waiver of excludability in conjunction with application for adjustment of status to alien in deportation proceedings). Petitioner urges that this is a violation of Equal Protection, as applied through the Due Process Clause of the Constitution. *See, for example, Yeung v. INS*, 61 F.3d 891, 833 (11th Cir. 1995); *Bedoya-Valencia v. INS*, 61 F.3d 891 (2nd Cir. 1993); and *Ghassan v. INS*, 972 F.2d 631, 633, n.2 (5th Cir. 1992) (Equal Protection denied where eligibility for eligibility for relief is based on an arbitrary factor, and the statute will be extended to afford relief to group improperly excluded).

---

[2] Mr. Torres sought review of the 1997 decision at the Fifth Circuit, under *Anwar I*, 107 F.3d 339. He anticipates that his petition will be dismissed, pursuant to *Williams*.

2

A second such claim is that to apply AEDPA §440(d) to convictions and/or cases arising before its enactment, in accordance with the interpretation given it by the Attorney General in *Matter of Soriano*, I.D. 3287 (BIA 1996; A.G. 1997), renders it unconstitutionally retroactive. *See, Lindh v. Murphy*, 1997 WL 338568 (U.S.) (June 23, 1997), and *Hughes Aircraft v. U.S.*, 1997 WL 321246 (U.S.) (June 16, 1997). [3]

Significantly, in the first of the instant series of cases to reach this Court, on a motion for a stay of deportation, *Garcia-Garcia v. Trominski, C.A. No. B-97*-093, INS acknowledged the Board's error in failing to address the issues raised herein, and, when it reached the Fifth Circuit, successfully sought a remand to the BIA. *Garcia-Garcia v. INS,* No. 97-60294. The primary distinction between these cases is that INS has since discovered that the Board's treatment of the issue in *Garcia-Garcia* was not an isolated error.

At the result of a combination of errors, the office of his prior attorney failed to file a brief on his behalf, [4]  and the 1995

---

[3]  Mr. Torres also asserts that, since his motion was based on the ineffective assistance of counsel, the Board should have permitted him to apply for relief on a *nunc pro tunc* basis. *See, Batanic v. INS*, 12 F.3d 662 (7th Cir. 1993) (where alien denied counsel, and law changes prior to remand, rendering him statutorily ineligible for the relief sought, he must be allowed to apply for such relief on a *nunc pro tunc* basis).

[4]  The initial appeal had been dismissed, without briefs, because the Board incorrectly believed it had been untimely filed.

3

decision of the BIA contained a number of procedural and substantive errors, including an affirmation of the improper finding by the Immigration Judge, that Mr. Torres had abandoned his residency, when no such charge had been brought, and on the basis of numerous factual errors and omissions.

The denial of the motion to reconsider was made with no recognition of the fact that *current* eligibility for reconsideration *is* not required for reconsideration, which is essentially a *nunc pro tunc* procedure. *See, Matter of Cerna,* 20 I&N Dec. 399, 402 (BIA 1991) (in reconsidering a decision, BIA places itself "back in time" and adjudicates motion on the basis of law and facts in existence at the time of the original decision, without regard to current eligibility for the underlying relief requested).

It is also clear that Mr. Torres was prejudiced from these failings. His motion to reopen was denied, with no consideration of its merits. In the immigration context, prejudice results, *inter alia,* where the procedures utilized erroneously deprive the individual of the opportunity to present his or her case, and be heard. *Matter of Ruiz,* 20 I&N Dec. 91, 92 (BIA 1989).

---

The Board's 1995 decision followed a remand from the Fifth Circuit, by which time Mr. Torres' prior attorney had become an Immigration Judge. Due to the lack of a briefing notice from the BIA, which was apparently not sent because of the intervening action in the Fifth Circuit, her office neglected to file a brief on his behalf.

4

Ultimate prejudice, in the sense that there exists a reasonable likelihood that the result would have been different, can nonetheless be seen from the facts of record. He has been a permanent resident since 1978, and has extensive family ties in the United States, including three minor U.S. citizen children, and a lawful permanent resident wife. His offenses, while serious, occurred some fifteen or more years ago, and he would be able to demonstrate genuine rehabilitation. He has been gainfully employed, and pays his taxes as required. Under current BIA precedent, he would be entitled to relief. *See, Matter of Arreguin*, I.D. 3247 (BIA 1995).

Since review herein is sought by means of habeas corpus, and is not statutorily based, Mr. Torres contends that the limitations of 8 USC Section 1105a do not apply, and that he may obtain review of both of the Board's decisions in his case, particularly since he was deprived of the right to seek review of the first decision due to his counsel's error in misadvising him of the time in which he could file a petition for review.

Respectfully Submitted,

Lisa S. Brodyaga
Attorney at Law

5

402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

### VERIFICATION

I hereby certify that I am familiar with the contents of Mr.
Torres' administrative file, and that the foregoing facts are true
and correct, to the best of my knowledge and belief.



### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with Exhibits, was mailed,
first-class postage prepaid, to Ken Muir, SAUSA, Box 1711,
Harlingen, Texas 78551, this 7th day of July, 1997.

United States District Court
Southern District of Texas
FILED

JUL 07 1997

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO          )
                                )
v.                              )        C.A. No. B-97-149
                                )
E.M. TROMINSKI, INS DISTRICT    )
      DIRECTOR                  )
_____ )


EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDERS OF DEPORTATION



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*

*Appeals Processing Unit*
*5107 Leesburg Pike, Suite 1711*
*Falls Church, Virginia 22041*

Brodyaga, Lisa S.
402 E. Harrison, 2Nd Floor,
Harlingen, TX 78551

Date of this notice:  4/3/97

Name: TORRES-ESPINO, APOLINAR*

A#: 22-365-809

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Paul W. Schmidt
Chairman

Enclosure

Panel Members:

. Department of Justice
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A22 365 809 - Harlingen

Date:    MAY — 8 1997

In re:  APOLINAR TORRES-ESPINO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:      Lisa S. Brodyaga, Esquire
402 East Harrison, 2nd Floor
Harlingen, Texas 78551

ORDER:

PER CURIAM.   This Board has previously rendered a decision in this matter and has jurisdiction over the instant motion to reopen and reconsider.  The respondent seeks reopening in order for us to again consider whether he abandoned his lawful permanent resident status, as well as his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c).  However, under the present law the respondent is statutorily ineligible for such relief as an "alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)."   See Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA") § 440(d); Matter of Soriano, Interim Decision 3289 (A.G., Feb. 21, 1997).  Accordingly, as the respondent cannot presently establish prima facie eligibility for section 212(c) relief, we need not reconsider whether he abandoned his lawful permanent resident status.

For these reasons, the respondent's motion to reopen and reconsider is denied.

FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 7 1997

Michael N. Milby, Clerk of Court

APOLINAR TORRES-ESPINO          )
                                )
v.                              )          C.A. No.
                                )
E.M. TROMINSKI, INS DISTRICT    )          B - 97 - 149
      DIRECTOR                  )
_____  )

EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDERS OF DEPORTATION



RECEIVED FEB 1 4 ~~~~

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*

---

Chairman

*5107 Leesburg Pike, Suite 2400*
*Falls Church, Virginia 22041*

FEB 1 0 1995

Margaret D. Burkhart, Esquire
Texas Rural Legal Aid, Inc.
316 South Closner
Edinburg, Texas  78539-4565

APOLINAR TORRES-ESPINO
A22 365 809

    Enclosed is a copy of the Board's decision and order in the
above-referenced case.

                    Very Truly Yours,

                    *Mary Maguire Dunne*
                    Mary Maguire Dunne
                    Acting Chairman

Enclosure

Panel Members:      FRED W. VACCA

                    MICHAEL J. HEILMAN

                    *Kendall B Warren*

**U.S. Department of Justic**
Executive Office for Immigration Review

Decision of the      rd of Immigration Appeals

Falls Church, Virginia 22041

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

File:  A22 365 809 – Harlingen                Date:     FEB 1 0 1995

In re:  APOLINAR TORRES-ESPINO a.k.a. Apolinar Torres

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Margaret D. Burkhart, Esquire
                           Texas Rural Legal Aid, Inc.
                           316 South Closner
                           Edinburg, Texas  78539-4565

ON BEHALF OF SERVICE:  David M. Dixon
                       Chief Appellate Counsel

CHARGE:

   Order:  Sec. 241(a)(4), I&N Act [8 U.S.C. § 1251(a)(4)] –
           Crimes involving moral turpitude

APPLICATION:  Waiver of inadmissibility


   On March 8, 1990, the immigration judge found the respondent
deportable as charged; denied his application for a waiver of
inadmissibility under section 212(c) of the Immigration and
Nationality Act, 8 U.S.C. § 1182(c), on the basis that he was
statutorily ineligible for relief due to the lack of 7 consecutive
years of lawful unrelinquished domicile in the United States; and
ordered him deported from the United States to Mexico.  The
respondent appealed only from the denial of section 212(c) relief
and the finding that he lacks the requisite period of
unrelinquished domicile.

   In a decision dated June 25, 1993, the Board of Immigration
Appeals dismissed the respondent's appeal as untimely, predicating
that decision on the untimely payment of the filing fee to the
Immigration and Naturalization Service despite the timely filing
of the Notice of Appeal (Form EOIR-26) at the Office of the
Immigration Judge.  The alien appealed our decision to the United
States Court of Appeals for the Fifth Circuit.  Thereafter, the
Fifth Circuit granted a motion of the Service for remand of the
record to the Board.  Affidavits of counsel for respondent and the
management office of the Department of Justice, Executive Office
for Immigration Review in Harlingen, Texas, attached to a
February 28, 1994, memorandum of David M. Dixon, Chief Appellate
Counsel for the Service, are to the combined effect that at the
time the alien's appeal was filed it was the practice for filing
fees to be paid at the Office of the Immigration Judge in
Harlingen, Texas, simultaneously with the filing of the Notice

A22 365 809

of Appeal, with the filing fees later forwarded to the Service office where a receipt for filing fees was ultimately issued or the Form EOIR-26 was stamped filed. On remand, the Service concedes that the alien's appeal was timely filed. Consequently, the Board decision of June 25, 1993, is vacated, and the Board will review the merits of this case. The appeal will be dismissed.

In the case before us, we emphasize that deportability is not contested on appeal. We also recognize that the immigration judge found that the respondent's testimony as to domicile was not credible. However, we will not address the immigration judge's finding that the applicant's testimony lacked credibility, because even if we were to accept the applicant's testimony as true, it would not establish his claim that he qualifies for section 212(c) relief on the basis of 7 consecutive years of lawful unrelinquished domicile.

It is undisputed that the respondent was admitted to the United States as a lawful permanent resident in 1978. His criminal history includes a conviction on August 24, 1983, for attempted murder for which he was sentenced to 18 years of imprisonment by the Texas Department of Corrections. 1/ The respondent testified that as the result of his 1983 conviction he was incarcerated for a total of 4 years and 10 months, counting time in a county jail prior to his conviction, a period of 7 or 8 months served after his conviction in prison in Texas, and a period spent in prison in Mexico. He stated that at his request in about June 1984 he was transferred to a Mexican prison where he remained until about November 1987. 2/ He indicated that he requested the transfer to prison in Mexico in order to facilitate his visitation by family members who resided in Texas. He admitted that at the time he

---

1/  Certified conviction records also show that in 1981 he was convicted of aggravated assault on a peace officer for which he was fined and sentenced to 3 years in the Texas Department of Corrections, suspended on condition of completion of 3 years' probation

2/  We have placed no reliance on the immigration judge's speculation during deportation proceedings regarding the nature of documents signed by the respondent in conjunction with his transfer to a Mexican prison pursuant to provisions of an unidentified treaty between the United States and Mexico. Although the Service was given an opportunity to introduce documentary evidence pertaining to the prison transfer at the deportation hearing, it declined to do so, and the respondent has submitted no evidence as to the documents signed or the treaty under which the transfer was effectuated.

-2-

A22 365 809

requested his transfer to a prison in Mexico he was aware that he would be confined outside the United States for more than 3 years. He related that after his release from prison in November 1987, he remained in Mexico for 3 to 5 months, during which time he was employed at his brother's bakery, lived in his brother's home, and met and married his wife. During this period when he worked and lived with his brother in Mexico, he made brief visits to the United States via entries without inspection, i.e. crossing the river. When he decided to move to the United States to live, he then entered this country using a border crossing card issued in 1967, prior to his acquisition of lawful permanent resident status in 1978.

The respondent also testified that beginning in 1988 he and his wife (who has no legal status here) lived in the United States; his wife entered the United States without inspection since she had no valid immigration documents. He also stated that in 1983 his "green card" was physically taken from him during the course of criminal proceedings and that he applied for and was given a replacement document by the Service about 2 months after he began living in the United States in 1988. He also reported that his wife, after becoming pregnant, returned to Mexico to care for her sick mother; that he went there to help her return to the United States; and that in June 1989 they were excluded from the United States when it was found that the respondent's temporary "green card" had expired and his wife attempted entry using the birth certificate not her own. The respondent also related that a few days later they both re-entered the United States without inspection. 3/ The respondent further testified that it was never his intention to return to live in Mexico after he became a lawful permanent resident and that after his release from prison it was never his intention to live or remain in Mexico on a permanent basis.

Section 212(c) of the Act provides, in pertinent part, that aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds for exclusion enumerated in section 212(a) of the Act, 8 U.S.C. § 1182(a). The grounds specified include those enumerated in section 212(a)(4) of the Act, 8 U.S.C. § 1182(a)(4), concerning conviction for crimes involving moral turpitude. A waiver of a ground of inadmissibility under section 212(c) may be granted to a

---

3/  The respondent has raised no issue on appeal concerning the
    propriety of deportation proceedings.

-3-

A22 365 809

permanent resident alien in deportation proceedings regardless of
whether he departs the United States following the act or acts
which render him deportable. Matter of Silva, 16 I&N Dec. 26 (BIA
1976). If a ground of deportation is also a ground of
inadmissibility, section 212(c) can be invoked in a deportation
hearing. Matter of Granados, 16 I&N Dec. 726 (BIA 1979).

It would be incongruous to have a situation where an alien could
no longer qualify as a returning resident immigrant and then hold
that his status as a lawful permanent resident in deportation
proceedings had not changed by virtue of his absence from the
United States. See sections 101(a)(20) and 101(a)(27)(A) of the
Act; Matter of Quijencio, 15 I&N Dec. 95, 97 (BIA 1974).
Consequently, we agree with the immigration judge that it is
appropriate to consider whether the respondent, who became a
lawful permanent resident in 1978, abandoned his status, rendering
him unable to establish the 7 consecutive years of lawful
unrelinquished domicile required for section 212(c) eligibility.

From the language in the immigration judge's decision, we are
uncertain of the burden of proof he applied in determining whether
the respondent did in fact abandon his lawful permanent resident
status. On de novo review of the record, we find that while the
burden of proving eligibility for relief from deportation is
generally on the alien, where an applicant for section 212(c)
relief in deportation proceedings shows that he was admitted as a
lawful permanent resident more than 7 years immediately preceding
his application for relief, the burden is then on the Service to
show that the applicant abandoned his status as a lawful permanent
resident. We also find that the Service's burden is to show that
the applicant's status has changed by clear, unequivocal, and
convincing evidence. See Matter of Huang, 19 I&N Dec. 749,
754 (BIA 1988) (exclusion proceedings). Where abandonment of an
alien's lawful permanent resident status is established, he is
statutorily ineligible for section 212(c) relief due to his
inability to show lawful unrelinquished domicile.

We conclude that the same factors considered in determining
whether a returning resident immigrant should be deprived of his
status as a lawful permanent resident are applicable to the
circumstances of the instant case. The factors to be considered
include the location of the alien's family ties, property holdings,
and job, and the intention of the alien with respect to both the
location of his actual home and the anticipated length of his
excursion. Matter of Muller, 16 I&N Dec. 637 (BIA 1978); Matter
of Kane, 15 I&N Dec. 258 (BIA 1975); Matter of Quijencio, supra.
Also to be considered is the applicant's purpose in departing from
the United States and whether that purpose is likely to be
accomplished in a visit abroad which terminates within a relatively

-4-

A22 365 809

short period of time and with the termination date being fixed by
some early event.  See, e.g., Matter of Kane, supra.  An alien's
intent and desire to retain lawful permanent resident status is
not sufficient by itself to retain that status.  Matter of Huang,
supra; Matter of Kane, supra.

    In the instant case, while the respondent's professed intent was
to return to the United States and to maintain his lawful permanent
resident status, his actions between 1984 and 1988 do not support
that intent.  The respondent has at least one sibling in Mexico
and many family members in the United States. 4/  There is no
indication in the record that the respondent owned real estate in
the United States prior to his incarceration in Texas in 1983 or
that he has ever owned real estate in Mexico.  In 1984 he
voluntarily requested transfer to a Mexican prison, knowing that
he would be required to serve at least 3 more years in prison and
at best ignorant of whether his criminal conviction would preclude
him from reentering the United States.  He has stated that he
requested the transfer in order to be incarcerated at a facility
closer to his family in the United States.  However, it is
significant that on his release from prison, he made no immediate
attempt to resume living in the United States.  Instead, he elected
to remain in Mexico for several months, living with his brother
while employed at his brother's bakery and marrying a native and
citizen of Mexico during this time.  His actions in entering the
United States without inspection on multiple occasions during this
period, as well as his delay in applying for a replacement "green
card" until 2 months after he began living in this country in
1988 appear inconsistent with a genuine belief that his immigration
status would be unaffected by his years spent in Mexico.

    The respondent's time in Mexico between 1984 and 1988 cannot be
viewed as a period which would terminate within a relatively short
time or as having a termination date fixed by some early event.
In fact, the respondent was, as he anticipated, incarcerated in
Mexico for at least 3 years and subsequent to his release resumed
his daily life there, living, working, and marrying in his home

---

4/  The respondent testified that his father is a United States
    citizen and that his mother is a lawful permanent resident
    (Tr. at 31).  His testimony concerning his siblings is somewhat
    difficult to follow (Tr. at 30-32, 87).  He supplied the names
    of seven siblings and related that four are lawful permanent
    residents and that two may have applied for legalization.  His
    family members in the United States were initially located in
    Texas near the Mexican border, but are now in Ohio, Kansas,
    and Oklahoma as well as in Texas.  His relatives in Mexico
    include one brother who owns a bakery in Mexico and also
    resides there.

-5-

A22 365 809

country.  Considering the evidence in its entirety, we find that the respondent is shown by clear, convincing, and unequivocal evidence to have abandoned his lawful permanent resident status and thus to be unable to establish the requisite 7 consecutive years of lawful unrelinquished domicile for statutory eligibility for section 212(c) relief.

We note that the respondent on appeal has advanced arguments as to his equities and asserts that he warrants a grant of section 212(c) relief in the exercise of discretion.  However, as we find the respondent statutorily ineligible for a waiver of inadmissibility under section 212(c) of the Act, we need not reach whether relief is warranted in the exercise of discretion and find no error in the immigration judge's similar conclusion.

Accordingly, the appeal will be dismissed.

ORDER:  The Board's decision of June 25, 1993, is vacated.

FURTHER ORDER:  The appeal is dismissed.

_____
FOR THE BOARD

-6-

/5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 2 8 1998

Michael N. Milby, Clerk of Court,
By Deputy Clerk

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
F I L E D

AUG 2 6 1998

Michael N. Milby, Clerk

APOLINAR TORRES-ESPINO,              §
           Petitioner               §
                                    §
    VS                              §    C.A. NO. B-97-149
                                    §         (HGT)
E. M. TROMINSKI,                    §
District Director, Immigration      §
and Naturalization Service,         §
           Respondent               §

---

**MEMORANDUM ORDER**

---

The instant case is one of a series of Petitions for Writs of

Habeas Corpus, challenging a final order of deportation issued by

the Board of Immigration Appeals (BIA) under the authority of

Matter of Soriano, I.D. 3289 (BIA 1996; AG 1997), holding that

§ 440(d) of Antiterrorism and Effective Death Penalty Act, (AEDPA),

restricting eligibility for relief from deportation under 8 U.S.C.

§ 1182(c), applied to all cases pending when it was enacted.  The

parties designated Cantu-Salinas, et al v. Trominski, C.A. B-97-

183, Honorable Filemon B. Vela, presiding, as the "lead" case in

this series, and agreed that the conclusions reached by this Court

therein on the jurisdictional issues, and the applicability of

AEDPA § 440(d), would extend to all the cases in the series.

The Honorable Filemon B. Vela has recently signed an Order in that case, finding that the Court has jurisdiction under 28 U.S.C. § 2241(c)(1) and (c)(3); concluding that Congress did not intend that 8 U.S.C. § 1252(g) amend 28 U.S.C. § 2241, and further concluding that Congress did not intend for AEDPA § 440(d) to apply to convictions occurring prior to its enactment. Consequently, the Court remanded the case to the BIA for reconsideration of its prior decision, in light of the principles articulated therein. See Lerma de Garcia v. INS, 141 F.3d 215 (5th Cir. 1998); Okoro v. INS, 125 F.3d 920 (5th Cir. 1997); U.S. ex rel Marcello v. INS, 634 F.2d 964 (5th Cir. 1981); Goncalves v. Reno, No. 97-1953 (1st Cir. May 15, 1998), 1998 WL 236799; Heikkila v. Barber, 345 U.S. 229 (1953); Plyler v. Doe, 102 S.Ct. 2382 (1982); Felker v. Turpin, 116 S.Ct. 2333 (1996); Mojica v. Reno, 970 F.Supp. 130 (E.D.N.Y. 1997); Sabino v. Reno, ___ F.Supp. ___, 1998 WL 313305 (S.D.Tx. June 1, 1998).

IT IS THEREFORE HEREBY ORDERED that the Government's Motion to Dismiss be, and the same hereby is, **DENIED**;

IT IS FURTHER ORDERED that the instant Petition for Writ of Habeas Corpus be, and the same hereby is, **GRANTED**.

IT IS FURTHER ORDERED that the decision of the BIA regarding the above Petitioner be **VACATED**, and that the case be **REMANDED** to the BIA for further proceedings consistent herewith.

The Clerk of Court shall send certified copies of the foregoing to all counsel of record.

DONE at Brownsville, Texas, this 26 day of August, 1998.


_____
Judge Presiding

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO            )
                                  )
v.                                )     C.A. No. B-02-062
                                  )
E.M. TROMINSKI, INS DISTRICT      )
       DIRECTOR                   )
_____)


EXHIBIT "F" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS



PAROLED PURSUANT TO SEC. 212(d) (6)
OF THE I & N ACT TO:
July 14, 2000

PURPOSE: Await Ruling on
Appeal Pending in Fifth
Circuit Court

(fut)         (halt)         (office)
PIC   07/15/99        Jul/200

| | | Apellido | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Apellido**
T O R R E S ,   E S P I N O ,

Fecha de nac (dia mes/año)
**Primer nombre**
A P O L I N A R

0 8   0 1   5 6

**Cuidadania**
M E X I C O

Sexo (Male or Female)
M A L E

**Nro de pasaporte**
A 2 2   3 6 5   8 0 9

Aerolinea x Nro de vuelo

**Pab donde Ud vive**

Puerto de embarque

**Ciudad de emision de visa**

Fecha de emision de visa (mes/año)

**Direccion en EU (No y calle)**
4 0 5   S .   T I O ,

**Ciudad y Estado**
W E S L A C O ,   T E X A S   78596

---

| 18. Occupation | 19. Waivers |
|---|---|
| **20. INS File**<br>A - 2 2   3 6 5   8 0 9 | **21. INS FCO** |
| **22. Petition Number** | **23. Program Number** |
| **24.** ☐ Bond | **25.** ☐ Prospective Student |

**26. Itinerary-Comments**

Subj has Appeal Pending with 5th Circuit
Court of Appeals.
Paroled as per ADDE Doyle   07-15-99

**27. TWOV Ticket Number**

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

*Southern* DISTRICT OF *Texas*

*Apolinar Torres – Espino*

v.

*E M Trominski, INS
District Director*

### SUMMONS IN A CIVIL ACTION

CASE NUMBER: B-02-062.

TO: (Name and Address of Defendant)

*E. M. Trominski
2102 Teege
Harlingen, Tx 78550*

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

an answer to the complaint which is herewith served upon you, within _____60_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Michael N. Milby, Clerk

4-1-02

CLERK                                          DATE

BY DEPUTY CLERK

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

_Southern_ DISTRICT OF _Texas_

_Apolinar Torres – Espino_

v.

_E.M. Trominski. INS_
_District Director_

## SUMMONS IN A CIVIL ACTION

CASE NUMBER: **B-02-062**

TO: (Name and Address of Defendant)

_John Ashcroft, US Atty General #5111_
_950 Pennsylvania Ave NW_
_Wash. DC   20530 - 0001_

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

an answer to the complaint which is herewith served upon you, within _____60_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

Michael N. Milby, Clerk                                    _4-1-02_

CLERK                                                      DATE

BY DEPUTY CLERK

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

_Southern_ **DISTRICT OF** _Texas_

_Apolinar Torres- Espino_

**SUMMONS IN A CIVIL ACTION**

v.

_EM Trominski, INS District Director_

**CASE NUMBER:** **B-02-062**

TO: (Name and Address of Defendant)

_US Attorney_
_PO Box   61129_
_Houston, Tx 77208_

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

an answer to the complaint which is herewith served upon you, within _____60_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Michael N. Milby, Clerk

4-1-02

CLERK                                    DATE

BY DEPUTY CLERK