IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 7 2002

Michael N. Milby
Clerk of Court

APOLINAR TORRES-ESPINO,      )
                             )
    Petitioner,              )
                             )
v.                           )
                             )    CIVIL ACTION NO. B-02-062
E.M. TROMINSKI, INS DISTRICT )
DIRECTOR,                    )
                             )
    Respondent.              )
_____)

**RESPONDENT'S RETURN AND
MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS**

COMES NOW the Respondent, by and through Michael T. Shelby,
United States Attorney for the Southern District of Texas, and
files this Return and Motion to Dismiss the Petition for Writ of
Habeas Corpus in this case.  The petition for writ of habeas
corpus should be dismissed for lack of jurisdiction because the
claims do not fall within the scope of the habeas statute.

**STATEMENT OF THE FACTS**

Petitioner, Apolinar Torres-Espino ("Torres-Espino" or
"Petitioner"), is an adult male, native and citizen of Mexico who

1

became a lawful permanent resident of the United States on August 2, 1978. Government Exh. "A". He was convicted on May 7, 1981, in the 9th Judicial District Court of Polk County, Texas, for the offense of Aggravated Assault on a Peace Officer. Government Exh. "B". He was subsequently convicted on August 24, 1983, in the 217th District Court of Angelina County, Texas, for the offense of attempted murder and sentenced to eighteen years in the Texas Department of Corrections. Government Exh. "C".

Based upon those convictions, Petitioner was placed in deportation proceedings and charged with deportability for having been convicted of two crimes involving moral turpitude not arising from a single scheme of criminal misconduct, pursuant to former 8 U.S.C. §1251(a)(4), §241(a)(4) of the Immigration and Nationality Act ("INA"). Government Exh. "D". He was ordered deported by an immigration judge on March 8, 1990, after a hearing on the merits of his application for a waiver of inadmissibilty pursuant to 8 U.S.C. §1182(c), §212(c) of the INA. The immigration judge found that he was ineligible for the relief because he had abandoned his domicile in the United States and, thus, could not establish the requisite seven years of unrelinquished domicile. Government Exh. "E".

He appealed, but the Board of Immigration Appeals ("BIA" or "Board") dismissed his appeal as untimely on June 25, 1993. Government Exh. "F. After filing a Petition for Review with the United States Court of Appeals for the Fifth Circuit, the case

2

Petitioner filed a Petition for Review with the Court of Appeals on May 15, 1997. That Petition was dismissed for lack of jurisdiction on August 3, 1998. Government Exh. "J".

Torres-Espino filed a Petition for Writ of Habeas Corpus Seeking Review of Orders of Deportation with the United States District Court for the Southern District of Texas, Brownsville Division, B-97-149, on July 7, 1997. By order dated August 28, 1998, the District Court denied the Government's motion to dismiss, granted the Petitioner's Writ for Habeas Corpus, vacated the BIA's decision and remanded the matter to the BIA for further proceedings. Government Exh. "K".

The Government timely filed its Notice of Appeal the decision to the Fifth Circuit Court of Appeals on October 23, 1998. Government Exh. "L". During the pendency of the appeal, regulations were promulgated which would allow aliens subject to §440(d) of AEDPA to apply for §212(c) relief if their application were pending at the time AEDPA was enacted. Based on these new regulations, the Government moved to dismiss its appeal. Government Exh. "M".

With the case back before the BIA, Torres-Espino moved to remand the case to the immigration judge for a hearing on his relief application. Government Exh. "N". The BIA considered Petitioner's motion to reopen and reconsider. In its March 4, 2002, decision, the BIA found there was not adequate basis to reopen and reconsider the case. The BIA decided that it had

4

conducted a "de novo" review of the proceeding in its decision of February 10, 1995, and found no reason to disturb that finding. Government Exh. "O".

Disappointed with the Board's decision, Torres-Espino filed this instant Petition for Writ of Habeas Corpus Seeking Review of Orders of Deportation, and, in the Alternative, Motion to Reinstate Petition and/or to Clarify Decision in Torres-Espino v. Trominski, C.A. B-97-149 on April 1, 2002.

## ARGUMENT

**I.   This Court Lacks Jurisdiction in Habeas Corpus to Review the Attorney General's Factual Findings and Exercises of Discretion.**

Torres-Espino cannot rely on 28 U.S.C. §2241 as a jurisdictional basis in this Court because his claims do not fall within the limited scope of that statute.  In the petition for a writ of habeas corpus, Torres-Espino essentially challenges the factual findings of the Board by arguing that the Board erred in finding that he had abandoned his domicile.  See Petition for Writ of Habeas Corpus at 7 (hereafter "Hab. Pet.").  He also argues that the Board failed to consider all of the relevant factors in reaching its decision.  Id.  He therefore claims that the Board abused its discretion in this regard.  Opie v. INS, 66 F.3d 737, 739 (5th Cir. 1995) (finding no abuse of discretion

5

where alien claimed that Board did not consider all of the evidence presented); Luciano-Vincente v. INS, 786 F.2d 706 (5th Cir. 1986) (applying abuse of discretion standard to alien's claim that Board failed to consider a pertinent factor). As set forth below, these challenges are not cognizable in habeas corpus.

In INS v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court held that Congress did not preclude habeas corpus jurisdiction for the purpose of reviewing pure questions of law raised by criminal aliens. In holding that habeas corpus remains available under 28 U.S.C. §2241 for such claims, however, the Court also stated that, historically, courts have not reviewed factual determinations or exercised other APA-type review in habeas corpus proceedings. Id. at 306 (citing Ekiu v. United States, 142 U.S. 651 (1892)). Indeed, the Court emphasized that the scope of habeas review is limited. Id. In response to the dissent's complaint that allowing habeas review for criminal aliens would result in such aliens having "more opportunities for (and layers of) judicial review (and hence more opportunities for delay) than are afforded non-criminal aliens," St. Cyr, supra at 334-335 (Scalia, J., dissenting), the majority responded to this criticism by explaining that "as we have noted, the scope of review on habeas [that we are conferring on criminal aliens] is considerably more limited than on APA-style review [that non-

6

criminal aliens receive under the INA such as review over an abuse of discretion claim]." Id. at 314 n.38 (emphasis added).

This Circuit's case law directly supports this view.   In Toscano-Gil v. Trominski, 210 F.3d 470 (5th Cir. 2000), the Fifth Circuit addressed the scope of a district court's habeas jurisdiction to review criminal aliens' immigration orders under IIRIRA's transitional rules for judicial review, and held that such jurisdiction did not encompass review of the Board's discretionary denial of Section 212(c) relief.   In that case, the alien sought review of the Board's denial of his application for Section 212(c) relief alleging that the Board failed to consider evidence concerning rehabilitation, mischaracterized the record, and failed to follow prior precedent.   Id. at 474.   The Fifth Circuit reversed the district court and held that the alien failed to raise a "cognizable constitutional claim" that merited review under 28 U.S.C. §2241.[1]   Id.

Torres-Espino's claims are similar to the types of claims raised in Toscano-Gil.   Torres-Espino argues that the Board erred by failing to consider all of the relevant factors in concluding that he abandoned his domicile.   Hab. Pet. 7.   In Toscano-Gil,

---

[1] Several district courts have also concluded that they lack jurisdiction under 28 U.S.C. §2241 to review challenges to the Attorney General's discretion.   See Chavez v. U.S. INS, 55 F. Supp.2d 555 (W.D. La. 1999) (concluding that review of discretionary decisions is not available in habeas corpus proceedings); Edoo v. Kaplinger, 47 F. Supp.2d 769, 773 (W.D. La. 1999) (same).

7

the alien made a similar claim, arguing that the Attorney General
had failed to consider a pertinent factor -- his rehabilitation.
210 F.3d at 474.   The Fifth Circuit held that those types of
"failure to consider" claims were traditionally reviewed for an
abuse of discretion and are now precluded from habeas corpus
review because they do not rise to the level of a due process
violation.   Id.

     Torres-Espino also challenges the Board's "inferences" from
the record as "unwarranted."  Hab. Pet. 7.  In Toscano-Gil, the
Fifth Circuit addressed this type of claim as well.   There, the
alien alleged that the Board mischaracterized his DWI arrest as a
conviction.  210 F.3d at 473.  The Fifth Circuit concluded that
"needless to say, a factual error is not a due process violation"
and therefore is not reviewable in habeas proceedings.   Id. at
475.   Accordingly, the Court should dismiss Torres-Espino's
allegations as unreviewable.

     Two other circuits have reached similar conclusions.   In Sol
v. INS, 274 F.3d 648 (2d Cir. 2001), the Second Circuit concluded
that, because a habeas corpus petition "may be used to challenge
incarceration or orders of deportation as being 'in violation of
the Constitution or laws or treaties of the United States,'" it
does not authorize review over an alien's claim that "the
decisions of the INS lacked adequate support in the record."  Id.
at 651.  In Sol, the alien had raised a similar type of claim to
the one raised by Torres-Espino.   The alien argued that the

8

decisions of the Immigration Judge and Board, denying the
application for Section 212(c) relief, lacked adequate support in
the record.   Id.   The Second Circuit distinguished the "fact-
intensive review" that the alien was seeking from the "vastly
different" review that the habeas statute allows for statutory
and constitutional claims.   Id.

Similarly, in Gutierrez-Chavez v. INS, ___ F.3d ___, 2002 WL
1760583 at *3 (9th Cir. July 31, 2002), the Ninth Circuit held
that "28 U.S.C. §2241 does not allow us, in the absence of
constitutional or statutory error, to second-guess the manner in
which the INS chooses to exercise the discretion given it by the
statute."  In its reasoning, the Court observed that Section 2241
expressly provides for review of challenges to custody based on
violations of the Constitution and federal law, not for
challenges based on the exercise of discretion.   In reaching its
decision, the Ninth Circuit also relied on the decisions of
several other circuits that have refused to extend the reach of
Section 2241 beyond the plain terms of the statutory text.
Id. at *4-5.

Indeed, most circuits have also drawn a distinction between
the extraordinary remedy of habeas corpus under Section 2241 and
the general review available under the Administrative Procedures
Act.  In Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert.
denied, 526 U.S. 1004 ( 1999), the First Circuit emphasized that
habeas review does not include the "broad review of

9

administrative decision-making available under the APA." Id. at

125 (citing Heikkila v. Barber, 345 U.S. 229, 236 (1953)

(recognizing the distinction between the scope of inquiry on

direct review as opposed to habeas corpus review). In Ter Yang

v. INS, 109 F.3d 1185, 1189-91 (7th Cir.), cert. denied sub nom.

Katsoulis v. INS, 522 U.S. 1027 (1997), the Seventh Circuit

dismissed the review petitions of criminal aliens who challenged

the denial of Section 212(c) relief as a matter of discretion.

Significantly, the Court noted that the aliens could not seek

review in district court under 28 U.S.C. §2241 because their

claims were not covered under that statute.[2]  Id. at 1195; see

also Bowrin v. INS, 194 F.3d 483 (4th Cir. 1999) (stating that,

while district courts have habeas corpus jurisdiction pursuant to

28 U.S.C. §2241 under IIRIRA's transitional rules to review a

criminal alien's statutory and constitutional challenges to his

---

[2] Furthermore, still other circuits which have found habeas
corpus review to survive for constitutional and statutory claims
have also been careful to distinguish challenges to the Attorney
General's factual findings and exercises of discretion.  Mayers
v. INS, 175 F.3d 1289, 1301 n.15 (11th Cir. 1999) ("petitioners
are not seeking to review a decision to grant or deny a §212(c)
waiver, but rather are seeking to review a decision concerning
the ability to apply for such waiver") (citing Accardi v.
Shaughnessy, 347 U.S. 260, 268 (1954) ("It is important to
emphasize that we are not here reviewing and reversing the manner
in which discretion was exercised.  Rather we object to the
[BIA's] alleged failure to exercise its own discretion contrary
to existing valid regulations.")); Henderson v. INS, 157 F.3d 106
(2d Cir. 1998), cert. denied sub nom. Reno v. Navas, 526 U.S.
1004 (1999) ("The questions presented by these aliens are ones of
pure law.  We are not called upon in this case to review the
agency's factual findings or the Attorney General's exercise of

10

deportation order, "[r]eview of *factual or discretionary issues* is prohibited." Id. at 490 (emphasis added).

Accordingly, the Court should dismiss the habeas corpus petition for lack of jurisdiction because Torres-Espino's claims do not fall within the limited scope of the habeas statute.

## II. The Board Properly Concluded That Torres-Espino Abandoned His Domicile.

Even assuming the Court reaches the merits of Torres-Espino's claims, it should deny the habeas corpus petition. Torres-Espino's central argument is that the Board erred by finding that he was not eligible for Section 212(c) relief because he had abandoned his domicile. As set forth below, the Board's finding should be affirmed.

### A. Standard of Review and Statutory Scheme

The question of whether Torres-Espino abandoned his domicile "is mainly a question of fact turning on [his] intent ...". Carrasco-Favela v. INS, 563 F.2d 1220, 1222 (5th Cir. 1977). Thus, the Board's finding on this issue is reviewed for substantial evidence. INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992). To reverse under the substantial evidence standard, the

_____

her discretion.").

11

evidence must be so compelling that no reasonable fact-finder could fail to find the facts were as the alien alleged. Id. The Supreme Court has made it clear that the "substantial evidence" standard is highly deferential to the Board. Id. at 483-84 ("the scope of our review of BIA decisions is narrow, not broad"). Under this strict standard, the Court will "reverse such findings only where the evidence presented by the applicant would compel any reasonable fact-finder to reach a contrary result." 8 U.S.C. §1252(b)(4)(B) (2000) (codifying INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992)).

Torres-Espino's central claim is that the Board erred by finding that he had abandoned his permanent resident status and therefore was no longer eligible for Section 212(c) relief. Pet. Hab. 7. The INS has the burden of establishing by clear, unequivocal, and convincing evidence that Torres-Espino's status has changed. Woodby v. INS, 385 U.S. 276, 277 (1966). "[I]n order to qualify as a returning resident alien, an alien must have acquired lawful permanent resident status in accordance with our laws, must have retained that status from the time he acquired it, and must be returning to an 'unrelinquished lawful permanent residence' after a 'temporary visit abroad.' " Matter of Huang, 19 I&N Dec. 749, 753, 1988 WL 235431 (1988) (quoting Santos v. INS, 421 F.2d 1303, 1305 (9th Cir. 1970)). A trip is a "temporary visit abroad" if:  (a) it is for a "relatively short" period, fixed by some early event; or (b) the trip will terminate

upon the occurrence of an event that has a reasonable possibility of occurring within a relatively short period of time. _Singh v. Reno_, 113 F.3d 1512, 1514 (9th Cir. 1997) ("Singh's trips abroad, sometimes eight or nine months in consecutive duration, could not be described as "relatively short"); _Chavez-Ramirez_, 792 F.2d 932, 936-37 (9th Cir. 1986). If the alien's trip abroad is not "relatively short," it is a "temporary visit abroad" only if the alien has "a continuous, uninterrupted intention to return to the United States during the entirety of his visit." _Id._ at 937. The relevant intent is not the intent to return ultimately, but the intent to return to the United States within a relatively short period. _Id._

### B. Substantial Evidence Supports the Board's Finding That Torres-Espino Abandoned his United States Domicile.

This Court should uphold the Board's decision because it is supported by substantial record evidence. The Board reasoned that Torres-Espino has failed to point to a specific error of law or fact to support his motion to reconsider. March 4, 2002 Decision at 3. The Board observed that its February 10, 1995 decision was "comprehensive and detailed in its discussion of the abandonment issue . . . ." _Id._ In the 1995 decision, the Board first observed that the relevant factors to be considered in determining whether the alien had abandoned his domicile include the location of the alien's family ties, property holdings and

13

job, and the intention of the alien with respect to both the
location of his actual home and the anticipated length of the
excursion.  1995 Board Decision at 4; see Singh, 113 F.3d at
1514-515 (summarizing relevant factors in considering whether
alien abandoned domicile).  The Board further observed that it
would consider the alien's purpose in departing the United States
and whether that purpose can be accomplished in a visit abroad
that terminates within a relatively short period of time.  1995
Board Decision at 5.

In applying these factors and finding that Torres-Espino had
abandoned his residence, the Board reasoned that his actions
between 1984 and 1988 do not support his "professed intent" to
remain in the United States.  Id.  The Board stated that in 1984,
Torres-Espino voluntarily requested transfer to a Mexican prison,
knowing that he would be required to serve at least three more
years in prison, and "at best ignorant of whether his criminal
conviction would preclude him from reentering the United States."
Id.  The Board pointed out that, although Torres-Espino requested
the transfer in order to be incarcerated in a facility closer to
his family in the United States, after his release from prison,
he made no effort to resume living in the United States but
elected to remain in Mexico for several months.  Id.  The Board
further noted that, during this time he lived with his brother,

14

was employed with his brother's bakery, and married a native and citizen of Mexico.  Id.

The Board also based its decision on Torres-Espino's actions in entering the United States without inspection on multiple occasions during the time he lived in Mexico, and his delay in applying for a replacement "green card" until two months after he began living in the United States in 1988.  Id.  According to the Board, these actions "appear inconsistent with a genuine belief that his immigration status would be unaffected by his years spent in Mexico."  Id.

The Board concluded that Torres-Espino's time in Mexico from 1984 to 1988 could not be viewed as a period that would terminate within a "relatively short time" or have a fixed termination date, especially in light of the fact that upon his release he resumed his daily life in Mexico.  Id.  Accordingly, the Board found that the INS had demonstrated by clear, convincing and unequivocal evidence that Torres-Espino had abandoned his lawful permanent residence and was therefore ineligible for relief under Section 212(c).  Id. at 6. The Board's denial of the motion to reopen should be affirmed.  The Board relied on the detailed explanation provided in its 1995 decision of why it concluded that Torres-Espino had abandoned his domicile.  Torres-Espino has failed to present  "compelling" evidence that the Board was wrong.  Carrasco-Favela, 563 F.2d at 1222 (Board's decision

15

finding that alien had abandoned his domicile was supported by substantial evidence where alien returned to Mexico to live with his family and commute to work for three of the four years preceding his arrest and incarceration); Singh, 113 F.3d at 1515-516.  In particular, Torres-Espino's time in Mexico after his release from prison, in which he lived and worked in Mexico, and married a native citizen of Mexico, supports the proposition that he "did not harbor a continuous, uninterrupted intention to return" to the United States.  Chavez-Ramirez, 792 F.3d at 937. The Board's decision is also clearly supported by Torres-Espino's criminal actions in illegally entering the United States on several occasions after his release from prison in Mexico and his failure to promptly apply for a replacement residency card until two months after he began living in the United States.  Singh, 113 F.3d at 1515 ("Furthermore, Singh's dealings with immigration procedures are further evidence that he did not intend to reside permanently in this country."); (noting that Singh used a visa to enter United States four times even though a permanent resident does not require such a visa).

In his habeas corpus petition, Torres-Espino argues that the Board "failed to consider pertinent evidence in the record, and drew unwarranted inferences" as to his intent.  Hab. Pet. at 7. Torres-Espino, however, offers no explanation to support his argument.  He fails to specifically identify the evidence that

16

the Board allegedly did not consider.  He also fails to explain what inferences the Board drew from his actions that were "unwarranted."  The Board's reliance on its detailed 1995 opinion was reasonable.  The 1995 decision set forth in detail the Board's consideration of the pertinent factors including family ties, property holdings, Torres-Espino's request to transfer to a prison in Mexico, his time in Mexico after his release from prison, including his job, residence and marriage to a native in that country, his illegal entries and his application for a new green card after returning to the United States.  In short, the Board's 1995 decision was well-reasoned and comprehensive.  As the Fifth Circuit has repeatedly stated, there is simply "no duty to write an exegesis on every contention."  Osuchukwu v. INS, 744 F.2d 1136, 1142 (5th Cir. 1984).

After examining the record as a whole, a reasonable fact-finder would not be compelled to find that Torres-Espino had intended to continuously maintain his domicile in the United States.  Thus, the Board's decision should be affirmed if the Court reaches this issue.


**III. Torres-Espino's Due Process Challenges Are Without Merit.**


Torres-Espino claims that his due process rights were violated by the BIA's denial of his motion to reopen and

17

reconsider because it failed to meaningfully consider its merits. Hab. Pet. 7.  Contrary to that conclusion, the BIA considered the Petitioner's claims in its decision of February 10, 1995.  In that decision, the BIA considered all the issues presented by Torres-Espino and there is no need to recite the applicable law again in its March 4, 2002, decision.  The parties were given an opportunity to fully argue all Petitioner's claims prior to the 1995 BIA decision and the 2002 BIA decision.  Consequently, Torres-Espino cannot demonstrate a violation of his due process rights.

Additionally, Petitioner argues that due process was violated because the Board should not have addressed the abandonment issue.  Hab. Pet. 7.  Torres-Espino apparently reasons that the Board could not consider this issue because it was not addressed by the Immigration Judge.  That assertion is without foundation.  The Immigration Judge's decision clearly reflects the judge's consideration of this issue.  See, e.g., Petitioner's Exhibit C at 8 (finding that Torres-Espino's actions constituted "abandonment of his lawful permanent resident status and domicile in the United States . . . ").  Therefore, his due process allegations are without merit.

Furthermore, Torres-Espino cannot succeed on his due process claim because he has failed to demonstrate prejudice from the constitutional infirmity he alleges.  Anwar v. INS, 116 F.3d 140,

144 (5th Cir. 1997) ("Due process challenges to deportation proceedings require an initial showing of substantial prejudice."). He cannot establish the requisite showing of prejudice because eligibility for discretionary relief under Section 212(c) of the INA is not a right protected by the Constitution. See Finlay v. I.N.S., 210 F.3d 556, 557 (5th Cir. 2000) (stating that "the denial of discretionary relief does not rise to the level of a constitutional violation, even if Finlay had been eligible for it") (citing Tefel v. Reno, 180 F.3d 1286, 1300 (11th Cir. 1999); see also Smith, 2002 WL 1420372 at *3-4. Rather, such a waiver is an "act of grace" that rests in the "unfettered discretion" of the Attorney General. INS v. Yueh-Shaio Yang, 519 U.S. 26, 30 (1996) (internal quotation marks omitted)). Because the grant of a wavier under Section 212(c) is discretionary, "it does not create a protectible liberty or property interest. Smith, supra.

In Smith, 2002 WL 1420372, the Fourth Circuit reached this conclusion in a case where the alien collaterally attacked his prior deportation proceedings by arguing that the immigration judge and Board of Immigration Appeals erroneously found him ineligible for Section 212(c) in light of the Supreme Court's later decision in St. Cyr. The Fourth Circuit rejected Smith's constitutional challenge reasoning that he had "no protected liberty or property interest in discretionary 212(c) relief"

19

because "[f]ormer section 212(c) did not in any way limit the discretion of the Attorney General to admit otherwise deportable aliens." Id. at *4; see also Oguejiofor v. Attorney General of the United States, 277 F.3d 1305, 1309 (11th Cir. 2002) (no liberty interest in Section 212(c) relief).[3]

## IV. Petitioner's Motion to Reinstate Petition and/or Clarify Decision in *Torres-Espino v. Trominski*, C.A. B-97-149 Should be Denied.

Torres-Espino has moved this Court, in the alternative, to reinstate and/or clarify its decision in a prior case involving the same parties. That motion should be denied.

In a decision dated May 8, 1997, the BIA denied Petitioner's motion to reopen and reconsider based on §440(d) of AEDPA.  This Court's memorandum order of August 26, 1998, "adopted" the decision of the Honorable Filemon B. Vela wherein he concluded the Congress did not intend for §440(d) of AEDPA to apply to convictions occurring prior to its enactment.  This Court then remanded the matter to the BIA based on the articulated principles in Judge Vela's decision.  See Government Exh. "K".

---

[3] The Fifth Circuit had stated, even prior to the 1996 immigration reforms, that judicial review over the Board's discretionary determinations regarding Section 212(c) relief was "*exceedingly narrow*" and "*severely limited*" because Section 212(c) "does not provide for standards governing how the Board's discretion should be exercised ... ." Ashby v. INS, 961 F.2d 555, 557 (1992) (emphasis added).

In other words, the BIA was to consider Torres-Espino's motion to reopen and reconsider despite §440(d) of AEDPA.

The BIA, finding that the respondent was no longer barred by the §440(d) of AEDPA because of new regulations, considered Petitioner's motion to reopen and reconsider on its merits in its March 4, 2002, decision.  See Government Exh. "O".  The Board did exactly what it should have done - reviewed Torres-Espino's motion to reopen and reconsider on its merits.  Since the basis for the Petitioner's first case and this Court's decision were rooted in §440(d) of AEDPA and it application to him, there is no reason to reinstate the petition or clarify the decision.  Torres-Espino's displeasure with the end result does not warrant either action.  Consequently, Petitioner's Motion to Reinstate Petition and/or to Clarify Decision in <u>Torres-Espino v. Trominski</u>, C.A. B-97-149, should be denied.

///


///


///

21

**CONCLUSION**

For all the foregoing reasons, this Court should dismiss the petition for writ of habeas corpus and deny the motion to reinstate the petition and/or clarify its decision in <u>Torres-Espino v. Trominski</u>, C.A. B-97-149.

Respectfully submitted,

ROBERT D. McCALLLUM, JR.
Assistant Attorney General
Civil Division

EMILY ANNE RADFORD
Assistant Director

<u>for</u> PAPU SANDHU
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 616-9357

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

August __7__, 2002

22

## CERTIFICATE OF SERVICE

I  hereby  certify  that  a  true  copy  of  the  foregoing
Respondents' Return and Motion to Dismiss the Petition for Writ of
Habeas Corpus was mailed via first class mail, postage prepaid to:

Lisa Brodyaga, Esquire
Refugio Del Rio Grande
17891 Landrum Park Rd.
San Benito, TX  78586

on this  7  day of August, 2002.

LISA M. PUTNAM
Special Assistant United States Attorney

23



# MEMORANDUM OF CREATION OF RECORD OF LAWFUL PERMANENT RESIDENCE

*Bro IE*
*4/12/78*

*HARLINGEN TEXAS*

| | Place |
|---|---|
| | Harlingen, TX |
| | File No. |
| | A22 365 809 |

Status as a lawful permanent resident of the United States is accorded:

| Name<br>Street Address<br>City, State, Zip | Apolinar Torres-Espino<br>447 E. Yturria,<br>Raymondville, TX 78580 | | SEX<br>Male | DATE OF BIRTH<br>1-8-56 |
|---|---|---|---|---|
| | | | PLACE OF BIRTH<br>Rio Rio Bravo Tamps MX | |
| | | | NATIONALITY<br>Mexico | |

| COUNTRY TO WHICH CHARGEABLE (If any)<br>Mexico | PREFERENCE (If any)<br>First Preference | PRIORITY DATE<br>2-24-76 |
|---|---|---|

REMARKS

NONPREFERENCE:  ☐ Section 212(a)(14) certification not required because:

☐ Individual section 212(a)(14) certification issued          ☐ Blanket section 212(a)(14) certification issued

under the following provision of law:

☐ Sec 203(h) of the I & N Act          ☐ Sec 249 of the I & N Act          ☐ Sec 214(d) I & N Act
                                                                                                      ☐ Private Law no._____ of the_____
☐ Sec 244( )( ) of the I & N Act      ☐ Sec 1 of the Act of 11/2/66      Congress_____ session

☒ Sec 245 of the I & N Act             ☐ Sec 13 of the Act of 9/11/57     ☐ _____
                                                                                                      (Other law Specify)
As of   8/2/78   at   Harlingen TX
        (Month) (Day) (Year)              PORT OF ENTRY FOR PERMANENT RESIDENCE

Class of admission (Insert symbol)          P 16

| (Applicable in all cases) | | DATE OF ACTION | U. S. APPROVED INS. |
|---|---|---|---|
| RECOMMENDED BY: (Immigration Officer)       (Date)<br>_[signature]_   8/2/78 | | DD | AUG 2 1978 |
| | | DISTRICT | HLG |

## FOR USE BY VISA CONTROL OFFICE

Date_____

Foreign State   *Mexico*

Preference Category   *First*

Number   *2390*

Month of Issuance   *JUNE*

Signed_____
        (Visa Office, Dept. of State)

☐ Form I-357 delivered     ☐ Form G-153 delivered     ☐ Form I-151   Serial No. _____
                                                                                          ☐ mailed   ☐ delivered
*4/12/78*
CC: ☒ Visa Control Office, Visa Office, Department of State, Washington, D.C. 20520 for allocation of immigrant visa number.

☐ State Director, Selective Service (with I-59) _____

Form I-181 (Rev. 4-1-75)Y                                                                (Page 1)



No. 10,440                                                          Bond $ _____

The State of Texas Vs. _____ Apolinar Espino Torres _____

Charge: __Aggravated Assault on a Peace Officer__          Court: __Ninth District__
Sec. 22.02 Felony 3

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of _____Polk_____, State of Texas, duly selected, empaneled, sworn,

charged, and organized as such at the _____January_____ Term A.D. 19_81_ of the _____Ninth_____

Judicial District Court for said County, upon their oaths present in and to said court at said term that

_____ Apolinar Espino Torres _____

hereinafter styled Defendant, on or about the _____24th_____ day of _____January_____ A.D. 19_81_,

and before the presentment of this indictment, in the County and State aforesaid,

did then and there intentionally and knowingly cause bodily injury to

Barry Caver by hitting him in the mouth with his fist, and the said

Barry Caver was then and there a peace officer in the lawful discharge

of his official duty and the said Apolinar Espino Torres had been

informed and knew Barry Caver was a peace officer,

*True Bill*

FILED FOR RECORD
1931 MAR 24 PM 1:39
ELL LOUIE, DISTRICT CLERK
POLK COUNTY, TEXAS

against the peace and dignity of the State.

*W. E. Raine*

Foreman of the Grand Jury

Original—Pink; State's Copy—Blue; Defendant's Copy—Yellow

JUDGMENT-PLEA OF GUILTY-JURY WAIVED-PROBATION

NO. __10,440__

| | | |
|---|---|---|
| THE STATE OF TEXAS | I | IN THE __9th__ JUDICIAL DISTRICT COURT |
| VS. | I | OF __POLK__ COUNTY, TEXAS |
| APOLINAR ESPINO TORRES | I | __JANUARY__ TERM A.D., 19 __81__ |

## JUDGMENT

On this the __7__ day of __MAY__ 19 __81__, the above entitled and numbered cause wherein the Defendant is charged with the felony offense of __Aggravated Assault on a Peace Officer__

and the State appeared by and through the District Attorney of the __9th__ Judicial District, and the Defendant __Apolinar Espino Torres__ appeared both in person and by counsel, Honorable __Jerry Whitaker__, and both parties announced ready for trial before the Court without a jury, and the said District Attorney read the information/indictment herein, and the Defendant entered his plea of guilty thereto, and having in person and through and by his said attorney waived the intervention of a jury, and counsel representing the State having agreed to said waiver of a jury, and the Court having agreed to same, and it appearing to the Court that the Defendant is sane and is not influenced by any consideration of fear or by any persuasion or delusive hope of pardon prompting him to confess his guilt, and the Court having duly admonished the Defendant as to the consequences of such plea, yet the Defendant persisted in entering his said plea of guilty, and said plea was duly accepted by the Court.

And the Court after hearing the evidence and argument of counsel, is of the opinion and finds the Defendant is guilty of the offense as charged.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that said Defendant is guilty of the offense of __Aggravated Assault on a Peace Officer, felony__ and that said Defendant committed said offense in __Polk__ County, Texas, on the __24th__ day of __January__ 19 __81__ as charged in the information/indictment, and that he be confined in the Texas Department of Corrections for __three (3)__ years, and that he pay a fine of 250.00 dollars, and that the State of Texas do have recover of the said Defendant all costs in this prosecution expended, for which let execution issue.

NO. __10,440__

| | | |
|---|---|---|
| THE STATE OF TEXAS | I | IN THE __9th__ JUDICIAL DISTRICT COURT |
| VS. | I | OF __POLK__ COUNTY, TEXAS |
| APOLINAR ESPINO TORRES | I | __JANUARY__ TERM A.D., 19 __81__ |

## ORDER PLACING DEFENDANT ON PROBATION

On this the __7__ day of __MAY__ 19 __81__, the Defendant, __Apolinar Espino Torres__ came into open Court with his attorney, Honorable __Jerry Whitaker__ for hearing on Defendant's application to suspend the imposition of sentence and to place Defendant on probation in this cause, and the State appeared by and through the District Attorney of the __9th__ Judicial District; and it appearing to the Court from the evidence that the ends of justice and the best interest of the public, as well as the Defendant, will be subserved by the suspension of the imposition of sentence herein;

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the imposition of sentence herein be and the same is hereby suspended and that the Defendant be and he is hereby placed upon probation for the period of __three (3)__ years, upon the following terms and conditions, to-wit:

That during the term of probation, the Defendant shall:

a. Commit no offense against the laws of this State or any other State or the United States;

b. Avoid injurious or vicious habits;

c. Avoid persons and places of disreputable or harmful character;

d. Report to the Adult Probation Officer, in person or by letter, at his office in __Livingston__, Texas; between the 1st and 15th day of each month throughout the term of his probation beginning __JUNE 1981__

e. Permit the Probation Officer to visit him at his home or elsewhere;

f. Work faithfully at suitable employment as far as possible;

g. Remain within the limits of the State of Texas, unless given permission to leave therefrom;

h. Pay his fine, if one be assessed, and all Court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum the Court shall determine. Court costs herein are $ _____ and shall be paid to the District Clerk within _____ days hereof.

i. Pay costs for Court appointed attorney fees to the District Clerk in the amount of $ __75.00__ within __30__ days hereof.

j. Pay a probation fee of $15.00 per month to the Probation Department of this County between the 1st and 15th day of each month hereafter during probation beginning __June 1981__

k. Support his dependants;

l. Pay restitution in the total sum of $ _____ for the benefit of _____ said sum to be payable to the District Clerk at the rate of _____ beginning _____

m. Pay a fine in the amount of $ __250.00__ to the District Clerk at __WITHIN 60 DAYS__ beginning

The Clerk of this Court will furnish the Defendant a Certified copy of this Order, and shall note on the Docket Sheet the date of delivery of such Order.

COPY RECEIVED BY:

_Apolinar Espino Torres_

DEFENDANT

~ RIGHT THUMB PRINT ~

_[signature]_

JUDGE PRESIDING

FILED FOR RECORD 1981 MAY 17 AM 11:14
NELLIE DRISKELL DISTRICT CLERK POLK COUNTY, TEXAS BY ___

No. 10,519

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE DISTRICT COURT OF |
| VS. | X | POLK          COUNTY, TEXAS |
| APOLINAR ESPINO TORRES | X | NINTH   JUDICIAL DISTRICT |

### MOTION TO REVOKE PROBATION AND ORDER ISSUING CAPIAS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through the undersigned, and moves the Court to revoke the probation heretofore granted the defendant by judgment, a copy of which is attached to this Motion, and for reason therefor would show the Court as follows:

### I.

Defendant violated condition "a" of the terms of his probation in that on or about the 8th day of June A.D. 1983, in Angelina County, Texas, he committed the offense of Attempted Murder, a felony, of which offense he was convicted in the 217th District Court of Angelina County, Texas, on August 24, 1983, in Cause No. 11,600, The State of Texas. v. Apolinar Torres.

All of the above described violations having occurred during the period in which the conditions of his probation were mandatory.

WHEREFORE, Petitioner prays that a capias be issued for defendant's arrest and that the defendant be given a hearing on this Motion at a time and place set by this Court and upon final hearing, the probation granted to this defendant on the original judgment of conviction herein entered and probated be, in all things, revoked, and that the said defendant be sentenced in accordance with the judgment heretofore entered in this cause, as the same appears on the docket of this Court, and that the Clerk of this Court be ordered and authorized to issue all necessary papers including judgment, sentence and commitment, the same as if no probation had ever been granted herein, and for such orders as the Court may direct.

_JoAnna Vernetti_
Assistant District Attorney

- JoAnna Vernetti

### ORDER OF THE COURT

Motion Granted as prayed for and the Clerk is hereby ORDERED to issue an Alias Capias for arrest of the defendant herein named, and that on arrest, a copy of this Motion be served on the said defendant.

SIGNED and ENTERED this 1ST day of NOVEMBER A.D. 19 83.

Judge Presiding

ATTEST:

THE STATE OF TEXAS                    I        IN THE  9⁷ᵗ DISTRICT CO

VS.                                   I              OF

Apolinar Espino Torres                I        Polk        COUNTY, T

<u>ORDER REVOKING PROBATION AND PRONOUNCING SENTENCE</u>

On this the 20ᵗʰ day of December , 19 83 , this cause was

again called, and the State of Texas appeared by the Assistant District

Attorney, JoAnna Vernetti , and the defendant appeared in open

court in person and by his attorney, Tom Brown .

Then came on to be heard the Motion of the State's Attorney that

the probation of the aforesaid defendant be revoked. The Court, after

examining and considering the written motion, and after hearing the

evidence submitted by both the defendant and the State of Texas, it

appears that on the 7ᵗʰ day of May , 19 81 , in the

9ᵗʰ District Court of Polk County, said defenda

was convicted of a felony and his punishment was assessed at confinemen

in the Texas Department of Corrections for a period of 3 years;

however, the imposition of the sentence was suspended and the defendant

was placed on probation for a term of 3 years subject to certain

terms and conditions. The Court is of the opinion, and does so find as

a fact, that the defendant violated the terms of his probation in that

Apolinar Espino Torres, On or about the 8ᵗʰ day of June A.D

1983, in Angelina County, Texas, committed the offense of Attempt

Murder, a felony, of which offense he was convicted in the

217ᵗʰ District Court of Angelina County, Texas, on August 24,

1983, in Cause No. 11,600, The State of Texas v. Apolinar Torres.

It is therefore ORDERED, ADJUDGED and DECREED by the Court that

the order suspending the imposition of the sentence, and placing the

defendant on probation heretofore entered in this cause be, and the

same is hereby REVOKED, and it is hereby ORDERED that the defendant be

now sentenced herein in accordance with the judgment heretofore entered

in this cause and in compliance with that order;

And, it appearing to the Court that the ends of justice will best

be served by a reformation of the judgment herein from _____ years

to _____ years in the Texas Department of Corrections, it is there-

fore ORDERED, ADJUDGED and DECREED by the Court that this judgment be

~~reformed and the penalty reduced from~~ _____ years to _____ years;
~~and~~ thereupon the defendant was asked by the Court whether he had any-
thing to say why sentence should not be pronounced against _him_
and _he_ answered nothing in bar thereof, whereupon the Court pro-
ceeded, in the presence of the said defendant, to pronounce sentence
against him as follows:

It is the ORDER and DECREE of this Court that the defendant,
Apolinar Espino Torres _____ who has been adjudged to be guilty
of the offense of Aggravated Assault on a Peace Officer _____
and whose punishment has been assessed by the judgment of this Court at
confinement in the Texas Department of Corrections for _3_ years,
be immediately delivered by the Sheriff of _Polk_ County,
Texas, to the Director of the Texas Department of Corrections, or other
person legally authorized to receive such convicts, and that the said
Apolinar Espino Torres _____ shall be confined in said Texas Depart-
ment of Corrections for an indeterminate term of not less than _2_
nor more than _3_ years in accordance with the provisions of the
laws governing the Texas Department of Corrections; and that the said
defendant is remanded to jail until said Sheriff can obey the direc-
tions of this sentence.

It is the further ORDER and DECREE that this sentence begin on the
_8_ day of _June_ A.D. 19 _83_; and that the defendant be
credited on this sentence with _____ days for the time spent in jail
since his arrest and confinement until sentence was pronounted by this
Court.

SIGNED and ENTERED this _20_ day of _December_ 19 _83_.

Joe Ned Dean
Judge Presiding

FILED FOR RECORD
1983 DEC 20 PM 3 53
NELL CLOSE—U.S. DISTRICT CLERK
POLK COUNTY, TEXAS



No. 11,600                   Bond $ 60,000.00

The State of Texas Vs. APOLINAR TORRES

Charge: ATTEMPTED MURDER                   Court: 159TH DISTRICT

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of _____ Angelina _____, State of Texas, duly selected, empaneled, sworn, charged and organized as such at the _____ April/June _____ Term A.D. 19 83 of the _____ 159th _____ Judicial District Court for said County, upon their oaths present in and to said court at said term that

APOLINAR TORRES _____

hereinafter styled Defendant, on or about the _____ 8th _____ day of _____ June _____ A.D. 19__, and before the presentment of this indictment, in the County and State aforesaid,    did then and there intentionally and knowingly and with the specific intent to commit the offense of murder did then and there attempt to cause the death of an individual, Maria Torres, by shooting her with a firearm, to-wit: a pistol,

THE STATE OF TEXAS
COUNTY OF ANGELINA

     I, Jimmie F. Robinson, Clerk of the District Court of Angelina County, Texas, do hereby certify that the above instrument, is a true copy of the INDICTMETN in cause no. 11,600 as the same appears of record in my office in the Minutes of the District Court of Angelina County, Texas

     Given under my hand and seal of said Court on this the 30th day of Jan. 19 89

s/ JIMMIE F. ROBINSON
Clerk of the District Court
of Angelina County, Texas

By: _____
        Deputy Clerk

against the peace and dignity of the State.

_____
Foreman of the Grand Jury

Original—Pink; State's Copy—Blue; Defendant's Copy—Yellow

MINUTES OF THE 217 TH DISTRICT COURT OF ANGELINA COUNTY, TEXAS

AT THE     JULY/SEPTEMBER     TERM, A.D. 19 83

J U D G M E N T

NO. 51,600

T H E   S T A T E   O F   T E X A S

V.                                          DATE _____ 8/24 _____ , 19 83

APOLINAR TORRES

| | |
|---|---|
| Attorney for State: | GERALD A. GOODWIN |
| Attorney for Defendant: | MIKE ASKINS |
| Waiver of Attorney ( ): | The defendant knowingly, intelligently and voluntarily waived the right to representation by counsel |
| OFFENSE: | ATTEMPTED MURDER The jury also finds that a deadly weapon was used in this offense, to-wit: a pis... |
| DATE OF OFFENSE: | JUNE 8, 1983 |
| PLEA: | NOT GUILTY |
| PLEA TO ENHANCEMENT: | |
| FINDINGS ON ENHANCEMENT: | N/A |
| PUNISHMENT: | EIGHTEEN (18) YEARS TDC |
| SENTENCE TO BEGIN: | JUNE 8, 1983 |

The Defendant having been indicted in the above entitled and numbered cause for the felony offense shown above, and this cause being this day called for trial, the State appeared by her *FOO*. District Attorney as named above and the Defendant named above, appeared in person and either by counsel as named above or waived counsel as indicated above, and both parties announced ready for trial. A jury of __Joe M. Gr...__ _____ _____ and eleven others was selected, impaneiled, and sworn. The indictment was read to the Jury and the Defendant entered a plea of not guilty thereto. After having heard the evidence submitted; and having been charged by the Court as to their duty to determine the guilt or innocence of the Defendant, the argument of counsel, the Jury retired in charge of the proper officer and returned into open court on the __24th__ day of __August__ _____ , 19 _83_ , the following verdict, which was received by the Court and is here entered of record upon the minutes;

We, the Jury, find the defendant, APOLINAR TORRES, "Guilty of Attempt d Murder".

The Defendant not having requested in writing at the time he entered his plea that the Jury assess punishment, the Jury was discharged, and in accordance with law the Court heard further evidence on the issue of punishment and after argument of counsel, assessed punishment as indicated above.

It is therefore considered, ordered and adjudged by the Court that the Defendant is guilty of the offense indicated above, a felony, as found by verdict of the jury and that the said Defendant committed the said offense on the date indicated above, and that he be punished by confinement in the Texas Department of Corrections for the period indicated above, and that the State of Texas do have and recover of the Defendant all costs of the prosecution, for which execution will issue.

1.

And thereupon the said Defendant was asked by the Court whether he had anything to say why sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon the Court proceeded, in the presence of the said Defendant, to pronounce sentence against him as follows, to-wit: . "It is the order of the Court that the Defendant named above, who has been adjudged to be guilty of the offense indicated above, a felony, and whose punishment has been assessed at confinement in the Texas Department of Corrections for the period indicated above, be delivered by the Sheriff of Angelina County, Texas, immediately to the Director of Corrections of the State of Texas, or other person legally authorized to receive such convicts, and said Defendant shall be confined in said Department of Corrections for the period indicated above in accordance with the provisions of the law governing the Texas Department of Corrections."

The said Defendant was remanded to jail until said Sheriff can obey the directions of this sentence.

Signed and entered on this the 24th day of _____August_____ , 198_2_ .

Judge, _217_'th District Court of Angelina County, Texas

Copy to TDC _____

F I L E D
AT _____ O'CLOCK ___ M
AUG 24 1983
JIMMIE F. KESTRAJN, Clerk District Court
Angelina County, Texas
By _____ Deputy

2.

**THE STATE OF TEXAS**
**COUNTY OF ANGELINA**

    I, Jimmie F. Robinson, Clerk of the District Court of Angelina County, Texas, do hereby certify that the above instrument, is a true copy of the___JUDGMENT___ in cause no.__11,600__ as the same appears of record in my office in the Minutes of the District Court of Angelina County, Texas

    Given under my hand and seal of said Court on this the__30th__day of __Jan.__, 19 89

___s/ JIMMIE F. ROBINSON___
      Clerk of the District Court
      of Angelina County, Texas

By:_____
    /Deputy Clerk



## UNITED STATES DEPARTMENT OF JUSTICE
### Immigration and Naturalization Service

## ORDER TO SHOW CAUSE and NOTICE OF HEARING

In Deportation Proceedings under Section 242 of the Immigration and Nationality Act

UNITED STATES OF AMERICA:                    File No. __A22 365 809__

In the Matter of    Apolinar TORRES-Espino   AKA: Apolinar TORRES   Respondent.
                    405 S. Tio Street
_____Weslaco, Texas  78596_____
       Address (number, street, city, state, and ZIP code)

UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:

1. You are not a citizen or national of the United States;
2. You are a native of__ Mexico _____
   and a citizen of ____ Mexico _____,
3. You entered the United States at __ Hidalgo, Texas _____on
   or about August 30, 1976
              (date)

SEE CONTINUATION SHEET ATTACHED HERETO AND MADE A PART HEREOF

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:

SEE CONTINUATION SHEET ATTACHED HERETO AND MADE A PART HEREOF

WHEREFORE, YOU ARE ORDERED to appear for hearing before an Immigration Judge of the Immigration and Naturalization Service of the United States Department of Justice at __ to be set at a later date _____
on __ to be set at a later date at_____m, and show cause why you should not be deported from the United States on the charge(s) set forth above.

Dated:   February 13, 1989

                          _____
                          (signature and title of issuing officer)
                          Roy G. Sutton, Assistant District Director
                          for Investigations, Harlingen, Texas
                                    (City and State)

original to EOIR 2/13/89 iss

## NOTICE TO RESPONDENT

**ANY STATEMENT YOU MAKE MAY BE USED AGAINST YOU IN DEPORTATION PROCEEDINGS**

THE COPY OF THIS ORDER SERVED UPON YOU IS EVIDENCE OF YOUR ALIEN REGISTRATION WHILE YOU ARE UNDER DEPORTATION PROCEEDINGS. THE LAW REQUIRES THAT IT BE CARRIED WITH YOU AT ALL TIMES

If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Immigration and Naturalization Service. You should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you should bring the original and certified translation thereof. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Order to Show Cause and that you are deportable on the charges set forth therein. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. Failure to attend the hearing at the time and place designated hereon may result in a determination being made by the Immigration Judge in your absence.

You will be advised by the Immigration Judge, before whom you appear, of any relief from deportation, including the privilege of departing voluntarily, for which you may appear eligible. You will be given a reasonable opportunity to make any such application to the Immigration Judge.

Failure to attend the hearing at the time and place designated hereon may result in your arrest and detention by the Immigration and Naturalization Service.

## REQUEST FOR PROMPT HEARING

To expedite determination of my case, I request an immediate hearing, and waive any right I may have to more extended notice.

_____
(signature of respondent)

**Before:**

_____
(signature and title of witnessing officer)

_____
(date)

## CERTIFICATE OF SERVICE

This order and notice were served by me on ___2-13-89___ in the following manner:
(date)

Personal Service

X _____
(signature and title of employee or officer)

CONTINUATION SHEET FOR ODER TO SHCW CAUSE AND NOTICE OF HEARING FOR ALIEN RE:

Apolinar TORRES-Espino    AKA: Apolinar TORRES
405 S. Tio Street
Weslaco, Texas  78596

UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:  (Cont.)

4. At that time you were admitted temporary visitor authorized to remain in the United States for a period not to exceed 72 hours;

5. On August 2, 1978 your status was subsequently changed to that of an immigrant;

6. You were on May 7, 1981 convicted in the 9th Judicial District Court of Polk County, Texas for the offense of Aggravated Assault on a Peace Officer and sentenced to three years in the Texas Department of Corrections probated for three years;

7. You were on August 24, 1983 convicted in the 217th District Court of Angelina County, Texas for the offense of Attempted Murder and sentenced to eighteen years in the Texas Department of Corrections.

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provisions of law:

Section 241(a)(4) of the Immigration and Nationality Act, in that you at any time after entry have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, to wit Aggravated Assault on a Peace Officer and Attempted Murder.



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
Harlingen, Texas

File No.:     A 22 365 809                    March 8, 1990

In the Matter of                    )
                                    )
APOLINAR TORRES-ESPINO              )     IN  DEPORTATION  PROCEEDINGS
                                    )
              Respondent            )

CHARGE::        I&N Act - Section 241(a)(4): Conviction of two
                crimes involving moral turpitude.

APPLICATIONS:   Waiver of inadmissibility Act pursuant to Section
                212(c) of the Immigration and Nationality Act [8
                U.S.C. 1182(c).

ON BEHALF OF RESPONDENT:                    ON BEHALF OF SERVICE:

Margaret Burkhart                           District Counsel's
316 South Closner                                Office
Edinburg, TX  78539                         U.S:I.N.S.
                                            2102  Teege  Avenue
                                            Harlingen, Tx. 78550

ORAL DECISION OF THE IMMIGRATION JUDGE

     The respondent is a 34 year old married man, a native and

citizen of Mexico, who adjusted his status from that of a visitor

to that of a lawful permanent resident in the United States, in

1978, apparently on or about August 2nd of that year.

     In an Order to Show Cause issued on February 13, 1989, which

has been marked as Exhibit 1 for the record, the Immigration

Service has charged that he's subject to deportation under Section

241(a)(4) of the Immigration and Nationality Act, based upon

convictions for two crimes involving moral turpitude not arising

1

out of a single scheme of criminal misconduct.

The respondent, through counsel, has admitted the allegations in the Order to Show Cause, with the exception of allegation six, concerning an alleged conviction in May, 1981, in a Texas State Court for the offense of aggravated assault on a peace officer. Because that allegation was denied the respondent also denied deportability.

The Immigration Service has presented the document, marked as Exhibit 2, a judgement from that State Court. And based upon that judgement, I do find that the respondent was, in fact, convicted of the crime alleged in allegation number six of the Order to Show Cause. Further I find, on the basis of that, and his admission of allegation number seven and the other allegations that he is clearly and unequivocally subject to deportation on the charge under Section 241(a)(4) of the Act.

As to relief from deportation the respondent has sought relief in the form of a waiver of deportability and excludability under Section 212(c) of the Immigration Act. His application for that relief has been filed with the Court and marked as Exhibit 3.

In hearings on the question of relief from deportation the respondent has presented his own testimony as to his application for relief. During the hearing on the question of relief questions arose concerning whether the respondent had maintained an unrelinquished domicile in the United States, as required by the Act. And the Court has decided to issue this decision on that question without continuing the case to hear more evidence from the

A 22 365 809                    2                    March 8, 1990

respondent.    The respondent has made a proffer of the other evidence that would have been presented in the case.

To qualify for relief from deportation under Section 212(c) of the Immigration Act the respondent needs to show three things. He needs to show that he was lawfully admitted to the United States for permanent residence.    This does not appear to be seriously and issue since it is almost conceded by the terms of the Order to Show Cause.    And is certainly established by the respondent's unrebutted testimony on that point.    And I certainly would find that he has shown a lawful admission for permanent residence in 1978.    The respondent also is required to show that he merits the exercise of discretion.    And, although evidence has been presented on that point, I will not make a decision on that issue because I consider it the most subjective issue in the case.    And, therefore, the issue that should be reached last or if not necessary, not at all.

As to the issue of the unrelinquished domicile for seven consecutive years that is required by the statute, the respondent in his testimony on direct has raised certain issues concerning whether he has maintained such an unrelinquished domicile.    The respondent is required to show by a preponderance of the evidence that he does meet each of the criteria set out in the statutes. See Matter of Marin, 16 I&N Dec. 581 (BIA 1978).    These three criteria, the lawful admission, the unrelinquished domicile and the exercise of discretion are separate criteria.    Each one of them must be met by a preponderance of the evidence.    It is not possible to meet only two of these criteria and be successful in the

A 22 365 809                        3                        March 8, 1990

application for relief.

As to the respondent's testimony as it relates to this issue, the respondent's testimony establishes that he was sentenced in August 1983, to a term of 18 years in a Texas prison. That he spent at least seven months in prison and had spent several months in county jail waiting for trial. That after approximately a year in custody on the criminal case he did request a transfer to a Mexican prison. He testified that he made this request through the Mexican Consulate. And, although there is not clear evidence in the record, there's at least some indication that was pursuant to some type of international treaty. The terms of which are not a matter of record.

The respondent's stated reason for requesting the transfer to Mexico, was that it would make it easier for his family to visit him more easily while he was in prison. He testified that he had at least three years to serve in Texas before he could have been released from prison there. And he testified that he thought at the time that he was transferred to Mexico, that he would serve as long a term in Mexico before he was released from prison there.

The respondent was released from prison, according to his testimony, some time in late 1987, which would appear to indicate that he spent at least three years in Mexican prison. And apparently more time, it's not possible to be definite as to how long he served in Mexico because the respondent could not state with any specificity when exactly he was transferred.

During the time that he served in prison in Mexico the

A 22 365 809                        4                    March 8, 1990

respondent was in two separate institutions. One of them would be at least an eight hour drive from his family's home in South Texas. The other would apparently be more than a one day drive, perhaps a two day drive, from his family's location in South Texas.

There isn't any evidence in the record to show where the respondent thought he would be placed in prison if he was transferred to Mexico. But there is certainly nothing to indicate that he had any reasonable expectation that it would be easier for his family to visit him in Mexican prison than it was in the United States. Since the prison he was located in in Texas was apparently eight hours drive or less from his family's home in South Texas.

After being released from prison in Mexico, apparently, some time in late 1987, perhaps early November of that year, the respondent testified that he lived and worked in a Mexican city not far from the United States border, employed by a brother who owned a bakery in that area. He did not give any reason for remaining in Mexico for that period of several months. He did testify that during that period he entered the United States several times without inspection. And also, apparently, entered the United States during that period at least once, perhaps more often with a border crossing card that apparently had been issued to him before he became a lawful permanent resident of the United States.

The respondent then testified that at some time, several months after being released from prison, he re-entered the United States again without inspection with the intention of living in

A 22 365 809                     5                     March 8, 1990

the United States.  That some time after doing so, he applied for a replacement permanent residence card at the Immigration office in South Texas.  And the Court notes what is shown clearly by the Immigration statute, that even a lawful permanent resident who had entered the United States without inspection would have been subject to deportation for having done so, at that time when the respondent made the application for the substitute permanent resident card.  In fact, such a person would still be subject to deportation. At the time the respondent applied for the replacement card.  The state of the law would not have apparently admitted any type of relief from deportation for a person in his situation. Although a recent decision of the Board of Immigration Appeals might change that prospectively.

It is, therefore, difficult for the Court to believe that the respondent actually disclosed that he had entered the United States illegally without inspection, when he applied for the replacement card at the Immigration office in South Texas.  On the other hand, the Immigration Service has not presented any evidence about what might have been contained in the application the respondent said he made.  Nor, have they asked him any questions on this point.

I do, however, find it is not likely that the respondent actually disclosed his entries without inspection at the time he applied for the substitute card.

The respondent states that he re-entered the United States without inspection by crossing through the Rio Grande River because it was easier to do so in that manner than by applying for a

A 22 365 809                      6                      March 8, 1990

substitute card at the Immigration office located at the international bridge between Mexico and the United States. The Court feels that this explanation is simply not credible by any common sense terms and becomes less credible when one considers that an application made by the respondent while he was physically located in Mexico and approaching the United States from Mexico, would certainly raise the question about why he had been in Mexico and for how long a period he had been there.

The respondent has claimed, through his testimony that he thought he had a valid permanent resident status in 1988, 1989, after re-entering the United States following his release from prison in Mexico. This claim is belied by aspects of his testimony which are simply incredible. As I've noted above, the Mexican prisons were further from his family's location in South Texas than the prison he was in in the United States. So, his explanation given for requesting a transfer to Mexican prison is, therefore, not credible or sensible. Second, the respondent claimed, when questioned by the Court, that in June of 1989, when returning to the United States at an international bridge, accompanied by the woman he later married, he simply hoped that she would not be asked questions about her citizenship. He admitted on cross-examination that, in fact, she had with her and presented to an Immigration officer a birth certificate in another name. This evasion by the respondent, and failure to mention the birth certificate when he was questioned by the Court, comes close to an actual misrepresentation about his intentions on that day. And his testimony in general in

A 22 365 809                          7                   March 8, 1990

the ways I have mentioned, and other ways that I think are clear from the record, simply does not have the ring of credibility.

As far as the findings of the Court concerning the applicant's domicile since his transfer to Mexico in 1984, I would make the following finding. First, it does appear to the Court, based on the record in this case, that the respondent's request for a transfer to Mexican prison at a time when he had a term to serve of at least three years in Mexico, according to his statement, in itself would constitute an abandonment of his domicile in the United States.

In the alternative the Court would find that such a request for a transfer to Mexico when the respondent expected to serve at least three years in prison there constitutes an abandonment of his lawful permanent resident status and domicile in the United States, Unless ~ unless he presents some very convincing and believable explanation about why he felt compelled to request a transfer. And in this case, the record certainly does not include a credible or convincing explanation of why he requested that transfer.

In the alternative the Court would find, in this case, that this respondent's several entries into the United States without inspection following his release from prison in Mexico, his apparent use of a border crossing card which he was no longer entitled to, the failure to renew the temporary permanent resident card that he had received from the Immigration Service at some time during 1988, and his conduct in general during that period, does demonstrate to the Court that during that period, between his

A 22 365 809                      8                      March 8, 1990

release from prison in late 1987, and the time he was stopped by Immigration officers at the international bridge in June of 1989, clearly demonstrates that during that period of time he himself believed that he no longer had lawful permanent resident status in the United States. For all these reasons it seems to the Court that even if the transfer to prison in general, or in this case in particular, does not in itself constitute an abandonment of permanent resident status or domicile in the United States, In this case, in the respondent's mind, it clearly did constitute such abandonment.

For all these reasons the Court finds that the respondent has, in fact, abandoned his lawful unrelinquished domicile in the United States which he had before his conviction. And, therefore, finds that it's impossible for him to qualify for relief under Section 212(c) of the Immigration Act. Therefore, I make the following order.

ORDER

IT'S ORDERED that the respondent's application for relief under Section 212(c) of the Act be denied.

IT FURTHER ORDERED that the respondent be deported from the United States to Mexico based on the charge in the Order to Show Cause.

ALAN VOMACKA
Immigration Judge

A 22 365 809                          9                    March 8, 1990



**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

========================================================

File:  A22 365 809 – Harlingen                Date:    JUN 25 1993

In re:  APOLINAR TORRES-ESPINO a.k.a. Apolinar Torres

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Margaret D. Burkhart, Esquire
                          316 South Closner
                          Edinburg, Texas  78539

ON BEHALF OF SERVICE:  Luis Martinez
                       General Attorney

CHARGE:

    Order:  Sec. 241(a)(4), I&N Act [8 U.S.C. § 1251(a)(4)] –
            Crimes involving moral turpitude

APPLICATION:  Waiver of inadmissibility


    The record reflects that the immigration judge rendered his
decision on March 8, 1990, at a hearing at which the respondent
was represented by counsel and that the immigration judge stated
at that time that the respondent's appeal should be filed by no
later than March 19, 1990 (Tr. at 115).

    The timely filing of an appeal requires both timely payment of a
fee to an Immigration and Naturalization Service office authorized
to accept fees (8 C.F.R. § 3.29) and subsequent filing of the
appeal with the Office of the Immigration Judge within 10 calendar
days after the stating of an oral decision with the time extended
to the next business day where the final date for filing falls on
a Sunday (8 C.F.R. §§ 3.36 and 242.21(a)).  The Notice of Appeal
(Form EOIR-26) reflects that the appeal was filed at the Office of
the Immigration Judge on March 19, 1990, but that the Service
received the filing fee on March 20, 1990.  The appeal is untimely
and is not properly before us.  See 8 C.F.R. § 242.21(a).
Accordingly, the appeal will be dismissed as untimely.

    ORDER:  The appeal is dismissed as untimely.


_FOR THE BOARD_



IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

NOV 17 1993

CHARLES R. FULBRUGE III
CLERK

No. 93-5071

APOLINAR TORRES-ESPINO,
a/k/a Apolinar Torres,

Petitioner,

versus

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

-------------------------
Petition for Review of an Order of the
Immigration Naturalization Service
-------------------------

Before    KING, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

BY THE COURT:

IT IS ORDERED that respondent's motion for remand
is GRANTED.

A true copy
Test

Clerk, U. S. Court of Appeals, Fifth Circuit

By _Melissa L. Nolan_ 11-17-93
Deputy

New Orleans, Louisiana

GOVERNMENT
EXHIBIT
H

**U.S. Department of Justice**                                    Decision of the F        1 of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

===========================================================================

File:  A22 365 809 - Harlingen                    Date:        FEB 1 0 1995

In re:  APOLINAR TORRES-ESPINO a.k.a. Apolinar Torres

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Margaret D. Burkhart, Esquire
                          Texas Rural Legal Aid, Inc.
                          316 South Closner
                          Edinburg, Texas  78539-4565

ON BEHALF OF SERVICE:  David M. Dixon
                       Chief Appellate Counsel

CHARGE:

   Order:  Sec. 241(a)(4), I&N Act [8 U.S.C. § 1251(a)(4)] –
           Crimes involving moral turpitude

APPLICATION:  Waiver of inadmissibility


   On March 8, 1990, the immigration judge found the respondent
deportable as charged; denied his application for a waiver of
inadmissibility under section 212(c) of the Immigration and
Nationality Act, 8 U.S.C. § 1182(c), on the basis that he was
statutorily ineligible for relief due to the lack of 7 consecutive
years of lawful unrelinquished domicile in the United States; and
ordered him deported from the United States to Mexico.  The
respondent appealed only from the denial of section 212(c) relief
and the finding that he lacks the requisite period of
unrelinquished domicile.

   In a decision dated June 25, 1993, the Board of Immigration
Appeals dismissed the respondent's appeal as untimely, predicating
that decision on the untimely payment of the filing fee to the
Immigration and Naturalization Service despite the timely filing
of the Notice of Appeal (Form EOIR-26) at the Office of the
Immigration Judge.  The alien appealed our decision to the United
States Court of Appeals for the Fifth Circuit.  Thereafter, the
Fifth Circuit granted a motion of the Service for remand of the
record to the Board.  Affidavits of counsel for respondent and the
management office of the Department of Justice, Executive Office
for Immigration Review in Harlingen, Texas, attached to a
February 28, 1994, memorandum of David M. Dixon, Chief Appellate
Counsel for the Service, are to the combined effect that at the
time the alien's appeal was filed it was the practice for filing
fees to be paid at the Office of the Immigration Judge in
Harlingen, Texas, simultaneously with the filing of the Notice

A22 365 809

of Appeal, with the filing fees later forwarded to the Service office where a receipt for filing fees was ultimately issued or the Form EOIR-26 was stamped filed. On remand, the Service concedes that the alien's appeal was timely filed. Consequently, the Board decision of June 25, 1993, is vacated, and the Board will review the merits of this case. The appeal will be dismissed.

In the case before us, we emphasize that deportability is not contested on appeal. We also recognize that the immigration judge found that the respondent's testimony as to domicile was not credible. However, we will not address the immigration judge's finding that the applicant's testimony lacked credibility, because even if we were to accept the applicant's testimony as true, it would not establish his claim that he qualifies for section 212(c) relief on the basis of 7 consecutive years of lawful unrelinquished domicile.

It is undisputed that the respondent was admitted to the United States as a lawful permanent resident in 1978. His criminal history includes a conviction on August 24, 1983, for attempted murder for which he was sentenced to 18 years of imprisonment by the Texas Department of Corrections. 1/ The respondent testified that as the result of his 1983 conviction he was incarcerated for a total of 4 years and 10 months, counting time in a county jail prior to his conviction, a period of 7 or 8 months served after his conviction in prison in Texas, and a period spent in prison in Mexico. He stated that at his request in about June 1984 he was transferred to a Mexican prison where he remained until about November 1987. 2/ He indicated that he requested the transfer to prison in Mexico in order to facilitate his visitation by family members who resided in Texas. He admitted that at the time he

------------------------------------------------------------

1/  Certified conviction records also show that in 1981 he was convicted of aggravated assault on a peace officer for which he was fined and sentenced to 3 years in the Texas Department of Corrections, suspended on condition of completion of 3 years' probation

2/  We have placed no reliance on the immigration judge's speculation during deportation proceedings regarding the nature of documents signed by the respondent in conjunction with his transfer to a Mexican prison pursuant to provisions of an unidentified treaty between the United States and Mexico. Although the Service was given an opportunity to introduce documentary evidence pertaining to the prison transfer at the deportation hearing, it declined to do so, and the respondent has submitted no evidence as to the documents signed or the treaty under which the transfer was effectuated.

-2-

A22 365 809

requested his transfer to a prison in Mexico he was aware that he
would be confined outside the United States for more than 3 years.
He related that after his release from prison in November 1987, he
remained in Mexico for 3 to 5 months, during which time he was
employed at his brother's bakery, lived in his brother's home, and
met and married his wife.  During this period when he worked and
lived with his brother in Mexico, he made brief visits to the
United States via entries without inspection, i.e. crossing the
river.  When he decided to move to the United States to live, he
then entered this country using a border crossing card issued in
1967, prior to his acquisition of lawful permanent resident status
in 1978.

The respondent also testified that beginning in 1988 he and his
wife (who has no legal status here) lived in the United States;
his wife entered the United States without inspection since she
had no valid immigration documents.  He also stated that in
1983 his "green card" was physically taken from him during the
course of criminal proceedings and that he applied for and was
given a replacement document by the Service about 2 months after
he began living in the United States in 1988.  He also reported
that his wife, after becoming pregnant, returned to Mexico to care
for her sick mother; that he went there to help her return to the
United States; and that in June 1989 they were excluded from the
United States when it was found that the respondent's temporary
"green card" had expired and his wife attempted entry using the
birth certificate not her own.  The respondent also related that a
few days later they both re-entered the United States without
inspection. 3/  The respondent further testified that it was never
his intention to return to live in Mexico after he became a lawful
permanent resident and that after his release from prison it was
never his intention to live or remain in Mexico on a permanent
basis.

Section 212(c) of the Act provides, in pertinent part, that
aliens lawfully admitted for permanent residence who temporarily
proceed abroad voluntarily and not under an order of deportation,
and who are returning to a lawful unrelinquished domicile of
7 consecutive years, may be admitted in the discretion of the
Attorney General without regard to certain specified grounds for
exclusion enumerated in section 212(a) of the Act, 8 U.S.C.
§ 1182(a).  The grounds specified include those enumerated in
section 212(a)(4) of the Act, 8 U.S.C. § 1182(a)(4), concerning
conviction for crimes involving moral turpitude.  A waiver of a
ground of inadmissibility under section 212(c) may be granted to a

---

3/  The respondent has raised no issue on appeal concerning the
    propriety of deportation proceedings.

A22 365 809

permanent resident alien in deportation proceedings regardless of whether he departs the United States following the act or acts which render him deportable. Matter of Silva, 16 I&N Dec. 26 (BIA 1976). If a ground of deportation is also a ground of inadmissibility, section 212(c) can be invoked in a deportation hearing. Matter of Granados, 16 I&N Dec. 726 (BIA 1979).

It would be incongruous to have a situation where an alien could no longer qualify as a returning resident immigrant and then hold that his status as a lawful permanent resident in deportation proceedings had not changed by virtue of his absence from the United States. See sections 101(a)(20) and 101(a)(27)(A) of the Act; Matter of Quijencio, 15 I&N Dec. 95, 97 (BIA 1974). Consequently, we agree with the immigration judge that it is appropriate to consider whether the respondent, who became a lawful permanent resident in 1978, abandoned his status, rendering him unable to establish the 7 consecutive years of lawful unrelinquished domicile required for section 212(c) eligibility.

From the language in the immigration judge's decision, we are uncertain of the burden of proof he applied in determining whether the respondent did in fact abandon his lawful permanent resident status. On de novo review of the record, we find that while the burden of proving eligibility for relief from deportation is generally on the alien, where an applicant for section 212(c) relief in deportation proceedings shows that he was admitted as a lawful permanent resident more than 7 years immediately preceding his application for relief, the burden is then on the Service to show that the applicant abandoned his status as a lawful permanent resident. We also find that the Service's burden is to show that the applicant's status has changed by clear, unequivocal, and convincing evidence. See Matter of Huang, 19 I&N Dec. 749, 754 (BIA 1988) (exclusion proceedings). Where abandonment of an alien's lawful permanent resident status is established, he is statutorily ineligible for section 212(c) relief due to his inability to show lawful unrelinquished domicile.

We conclude that the same factors considered in determining whether a returning resident immigrant should be deprived of his status as a lawful permanent resident are applicable to the circumstances of the instant case. The factors to be considered include the location of the alien's family ties, property holdings, and job, and the intention of the alien with respect to both the location of his actual home and the anticipated length of his excursion. Matter of Muller, 16 I&N Dec. 637 (BIA 1978); Matter of Kane, 15 I&N Dec. 258 (BIA 1975); Matter of Quijencio, supra. Also to be considered is the applicant's purpose in departing from the United States and whether that purpose is likely to be accomplished in a visit abroad which terminates within a relatively

-4-

A22 365 809

short period of time and with the termination date being fixed by some early event.  See, e.g., Matter of Kane, supra.  An alien's intent and desire to retain lawful permanent resident status is not sufficient by itself to retain that status.  Matter of Huang, supra; Matter of Kane, supra.

In the instant case, while the respondent's professed intent was to return to the United States and to maintain his lawful permanent resident status, his actions between 1984 and 1988 do not support that intent.  The respondent has at least one sibling in Mexico and many family members in the United States. 4/  There is no indication in the record that the respondent owned real estate in the United States prior to his incarceration in Texas in 1983 or that he has ever owned real estate in Mexico.  In 1984 he voluntarily requested transfer to a Mexican prison, knowing that he would be required to serve at least 3 more years in prison and at best ignorant of whether his criminal conviction would preclude him from reentering the United States.  He has stated that he requested the transfer in order to be incarcerated at a facility closer to his family in the United States.  However, it is significant that on his release from prison, he made no immediate attempt to resume living in the United States.  Instead, he elected to remain in Mexico for several months, living with his brother while employed at his brother's bakery and marrying a native and citizen of Mexico during this time.  His actions in entering the United States without inspection on multiple occasions during this period, as well as his delay in applying for a replacement "green card" until 2 months after he began living in this country in 1988 appear inconsistent with a genuine belief that his immigration status would be unaffected by his years spent in Mexico.

The respondent's time in Mexico between 1984 and 1988 cannot be viewed as a period which would terminate within a relatively short time or as having a termination date fixed by some early event.  In fact, the respondent was, as he anticipated, incarcerated in Mexico for at least 3 years and subsequent to his release resumed his daily life there, living, working, and marrying in his home

---

4/  The respondent testified that his father is a United States citizen and that his mother is a lawful permanent resident (Tr. at 31).  His testimony concerning his siblings is somewhat difficult to follow (Tr. at 30-32, 87).  He supplied the names of seven siblings and related that four are lawful permanent residents and that two may have applied for legalization.  His family members in the United States were initially located in Texas near the Mexican border, but are now in Ohio, Kansas, and Oklahoma as well as in Texas.  His relatives in Mexico include one brother who owns a bakery in Mexico and also resides there.

-5-

A22 365 809

country.  Considering the evidence in its entirety, we find that the respondent is shown by clear, convincing, and unequivocal evidence to have abandoned his lawful permanent resident status and thus to be unable to establish the requisite 7 consecutive years of lawful unrelinquished domicile for statutory eligibility for section 212(c) relief.

We note that the respondent on appeal has advanced arguments as to his equities and asserts that he warrants a grant of section 212(c) relief in the exercise of discretion.  However, as we find the respondent statutorily ineligible for a waiver of inadmissibility under section 212(c) of the Act, we need not reach whether relief is warranted in the exercise of discretion and find no error in the immigration judge's similar conclusion.

Accordingly, the appeal will be dismissed.

ORDER:  The Board's decision of June 25, 1993, is vacated.

FURTHER ORDER:  The appeal is dismissed.

_____
FOR THE BOARD



U.S. Department of Justice
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A22 365 809 - Harlingen                          Date:   MAY - 8 1997

In re:  APOLINAR TORRES-ESPINO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:       Lisa S. Brodyaga, Esquire
                               402 East Harrison, 2nd Floor
                               Harlingen, Texas 78551

ORDER:

    PER CURIAM. This Board has previously rendered a decision in this matter and has
jurisdiction over the instant motion to reopen and reconsider. The respondent seeks reopening
in order for us to again consider whether he abandoned his lawful permanent resident status, as
well as his application for a waiver of inadmissibility under section 212(c) of the Immigration
and Nationality Act, 8 U.S.C. § 1182(c). However, under the present law the respondent is
statutorily ineligible for such relief as an "alien who is deportable by reason of having committed
any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered
by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of
their commission, otherwise covered by section 241(a)(2)(A)(i)." See Antiterrorism and
Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA")
§ 440(d); Matter of Soriano, Interim Decision 3289 (A.G., Feb. 21, 1997). Accordingly, as the
respondent cannot presently establish prima facie eligibility for section 212(c) relief, we need not
reconsider whether he abandoned his lawful permanent resident status.

    For these reasons, the respondent's motion to reopen and reconsider is denied.

                    _____
                            FOR THE BOARD



IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

JUN 0 9 1998

CHARLES R. FULBRUGE III
CLERK

No. 97-60320
Summary Calendar

APOLINAR TORRES-ESPINO,

Petitioner,

versus

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

- - - - - - - - -
Petition for Review of an Order
of the Board of Immigration Appeals
BIA No. A22 365 809
- - - - - - - - -

Before JONES, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

Apolinar Torres-Espino petitions for review of the Board of
Immigration Appeals' decision denying his motion to reopen his
appeal.  Respondent moves the court to dismiss the petition for
lack of jurisdiction.

This court lacks jurisdiction to review Torres-Espino's
petition.  See Nguyen v. INS, 117 F.3d 206, 207 (5th Cir. 1997).
IT IS ORDERED that Respondent's motion to dismiss is GRANTED.

PETITION DISMISSED; MOTION GRANTED.

---

[*]   Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.







UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 2 8 1998

Michael N. Milby, Clerk of Court
By Deputy Clerk

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
F I L E D

AUG 2 6 1998

Michael N. Milby, Clerk

APOLINAR TORRES-ESPINO,           §
                Petitioner         §
                                   §
VS                                 §     C.A. NO. B-97-149
                                   §          (HGT)
E. M. TROMINSKI,                   §
District Director, Immigration     §
and Naturalization Service,        §
                Respondent          §

---

MEMORANDUM ORDER

---

The instant case is one of a series of Petitions for Writs of
Habeas Corpus, challenging a final order of deportation issued by
the Board of Immigration Appeals (BIA) under the authority of
Matter of Soriano, I.D. 3289 (BIA 1996; AG 1997), holding that
§ 440(d) of Antiterrorism and Effective Death Penalty Act, (AEDPA),
restricting eligibility for relief from deportation under 8 U.S.C.
§ 1182(c), applied to all cases pending when it was enacted.  The
parties designated Cantu-Salinas, et al v. Trominski, C.A. B-97-
183, Honorable Filemon B. Vela, presiding, as the "lead" case in
this series, and agreed that the conclusions reached by this Court
therein on the jurisdictional issues, and the applicability of
AEDPA § 440(d), would extend to all the cases in the series.

The Honorable Filemon B. Vela has recently signed an Order in that case, finding that the Court has jurisdiction under 28 U.S.C. § 2241(c)(1) and (c)(3); concluding that Congress did not intend that 8 U.S.C. § 1252(g) amend 28 U.S.C. § 2241, and further concluding that Congress did not intend for AEDPA § 440(d) to apply to convictions occurring prior to its enactment. Consequently, the Court remanded the case to the BIA for reconsideration of its prior decision, in light of the principles articulated therein. <u>See</u> <u>Lerma de Garcia v. INS</u>, 141 F.3d 215 (5th Cir. 1998); <u>Okoro v. INS</u>, 125 F.3d 920 (5th Cir. 1997); <u>U.S. ex rel Marcello v. INS</u>, 634 F.2d 964 (5th Cir. 1981); <u>Goncalves v. Reno</u>, No. 97-1953 (1st Cir. May 15, 1998), 1998 WL 236799; <u>Heikkila v. Barber</u>, 345 U.S. 229 (1953); <u>Plyler v. Doe</u>, 102 S.Ct. 2382 (1982); <u>Felker v. Turpin</u>, 116 S.Ct. 2333 (1996); <u>Mojica v. Reno</u>, 970 F.Supp. 130 (E.D.N.Y. 1997); <u>Sabino v. Reno</u>, ___ F.Supp. ___, 1998 WL 313305 (S.D.Tx. June 1, 1998).

IT IS THEREFORE HEREBY ORDERED that the Government's Motion to Dismiss be, and the same hereby is, **DENIED**;

IT IS FURTHER ORDERED that the instant Petition for Writ of Habeas Corpus be, and the same hereby is, **GRANTED**.

IT IS FURTHER ORDERED that the decision of the BIA regarding the above Petitioner be **VACATED**, and that the case be **REMANDED** to the BIA for further proceedings consistent herewith.

The Clerk of Court shall send certified copies of the foregoing to all counsel of record.

DONE at Brownsville, Texas, this 26 day of August, 1998.

_____
                    Judge Presiding



# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO,               )
      Petitioner,                    )
                              )
      v.                             )    C.A. No. B-97-149
                              )
E.M. TROMINSKI,                       )
DISTRICT DIRECTOR, INS;               )
JANET RENO, U.S. ATTORNEY GENERAL     )
                              )
      Respondents.                   )    Notice of Appeal

Notice is hereby given that all Respondents hereby appeal to the United States Court of

Appeals for the Fifth Circuit from the district court's order dated August 26, 1998, denying

Respondents' motion to dismiss, granting the petition for writ of habeas corpus, vacating the

order of the Board of Immigration Appeals ("BIA"), and remanding to the BIA for further

proceedings.  The district court's order was entered on August 28, 1998.

                        Respectfully submitted,

                        JAMES H. DeATLEY
                        United States Attorney
                        Southern District of Texas

                        DAVID M. McCONNELL
                        Assistant Director

                        LAURA A. SMITH
                        Attorney,  Office of Immigration Litigation
                        Civil Division, U.S. Department of Justice

                        LISA M. PUTNAM
                        Special Assistant U.S. Attorney
                        P.O. Box 1711
                        Harlingen, Texas 78551
Dated: October 23, 1998           Tel:  (956) 389-7048

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on counsel at the following address, by depositing a copy of it in the United States mail, first class postage prepaid, to:

Lisa S. Brodyaga, Esq.
402 E. Harrison, 2d Floor
Harlingen, TX 78550
(210) 421-3426

on this the _23rd_ day of October, 1998.

LAURA A. SMITH, Attorney
Office of Immigration Litigation



*United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

22 365 809

CHARLES R. FULBRUGE III
CLERK

TEL. 504-589-6514
600 CAMP STREET
NEW ORLEANS, LA 70130

March 30, 2001

Mr Michael N Milby, Clerk
Southern District of Texas, Brownsville
United States District Court
Room 1158
600 E Harrison Street
Brownsville, TX 78520

No. 98-41325 Cantu v. Trominski with other 27 consolidated cases.
USDC No. B-97-CV-183
B-97-CV-140
B-97-CV-153
B-97-CV-147
B-97-CV-144
B-97-CV-154
B-98-CV-47
B-97-CV-224
B-97-CV-145
B-97-CV-152
B-97-CV-226
B-97-CV-151
B-98-CV-127
B-98-CV-29
B-97-CV-225
B-97-CV-223
B-97-CV-196
B-97-CV-146
B-98-CV-19
B-98-CV-59
B-97-CV-148
B-97-CV-261
B-97-CV-200
B-97-CV-260
B-97-CV-149
B-98-CV-095
B-98-CV-130
B-98-CV-48

Enclosed is a certified copy of the judgment issued as the mandate.
(FOR APPEAL NUMBERS: 98-41314, 98-41320, 98-41321, 98-41322, 98-41323,
98-41329, 98-41333, 98-41334, 98-41335, 98-41338, 98-41339, 98-41341,
98-41342, 98-41344, 98-41347, 98-41348, 98-41349, 98-41351, 98-41352,
98-41353, 98-41354, 98-41355, 98-41359, 98-41360, 98-41361, 98-41362,
AND 98-41363

39-74-1419. ⑩ 17

Records/original papers/exhibits to be returned at a later date.

Sincerely,

CHARLES R. FULBRUGE, III, Clerk

By: _____
　　　Nancy Dolly, Deputy Clerk

cc: w/encl:
　　Mr David Michael McConnell
　　Mr Papu Sandhu
　　Ms Lisa S Brodyaga
　　Ms Jayashri Srikanitah
　　Mr Michael J Churgin
　　Ms Barbara Bergman
　　Mr Locke E Bowman
　　Mr Marc Van Der Hout
　　Mr Zachary Miller Nightingale
　　Ms Jodilyn Marie Goodwin
　　Ms Clarissa Guajardo Shaw

P.S. Cases 98-41336 and 98-41346 still remain open.

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
F I L E D

MAR 2 7 2001

CHARLES R. FULBRUGE III
CLERK

No. 98-41325

Case No. 98-41325

JUAN ENRIQUE CANTU; MIGUEL ANGEL GONZALEZ-GARCIA; JORGE
ELIGIO GARCIA-TOSCANO; ELEAZAR REGALADO-GUTIERREZ

Plaintiffs - Appellees

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service

Defendant - Appellant

----------------------------------------------------------------

Case No. 98-41314

MARTIN ROBERTO CHAVEZ-ORTIZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration Naturalization
Service; JANET RENO, US Attorney General; U S ATTORNEY

Respondents - Appellants

----------------------------------------------------------------

Case No. 98-41320

TEODORO BARRERA-GARCIA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration Naturalization
Service; JANET RENO, US Attorney General

Respondents - Appellants

----------------------------------------------------------------

Case No. 98-41321

JOSE DANIEL SOTO-BENAVIDES

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration & Naturalization
Service; JANET RENO; US Attorney General

Respondents - Appellants

------------------------------------------------------------------------

Case No. 98-41322

JULIO ALEJANDRO MUNOZ-TORRES

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration &
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

------------------------------------------------------------------------

Case No. 98-41323

HOMERO MEDRANO-LOPEZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

------------------------------------------------------------------------

Case No. 98-41329

VICTOR HUGO ALANIZ-GONZALEZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

Case No. 98-41333

JOSE ORTIZ-BARROSO

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

---------------------------------------------------------------

Case No. 98-41334

JESUS GARZA PACHECO

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

---------------------------------------------------------------

Case No. 98-41335

SAMUEL REMIREZ-CONDE

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

---------------------------------------------------------------

Case No. 98-41336

JUANA MARIA LERMA-DE GARCIA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

Case No. 98-41338

LORENZO ANGUIANO-PEREZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

--------------------------------------------------------------

Case No. 98-41339

JORGE GUADALUPE ELIZONDO-GARZA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

--------------------------------------------------------------

Case No. 98-41341

JUAN EMILIO SALAZAR-GONZALEZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

--------------------------------------------------------------

Case No. 98-41342

JAMIE CONTRERAS-OLIVARES

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

Case No. 98-41344

ALMA DELIA SILVIA-RODRIGUEZ

Petitioner - Appellee

v.

HONORABLE JANET RENO, US Attorney General; E M TROMINSKI, District Director, Immigration Naturalization Service

Respondents - Appellants

------------------------------------------------------------------------

Case No. 98-41346

JUAN RODRIGUEZ CERNA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and Naturalization Service; HONORABLE JANET RENO, US Attorney General

Respondents - Appellants

------------------------------------------------------------------------

Case No. 98-41347

MOISES JIMENEZ-OROSCO

Petitioner - Appellee

v.

HONORABLE JANET RENO, US Attorney General; E M TROMINSKI, District Director, Immigration Naturalization Service

Respondents - Appellants

------------------------------------------------------------------------

Case No. 98-41348

HORACIO GARZA BARRERA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

Case No. 98-41349

ENRIQUE DEL ANGEL MONTIEL

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

--------------------------------------------------------------------

Case No. 98-41351

MARIA ELENA SANCHEZ DE PEREZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; U S ATTORNEY; JANET RENO,
US Attorney General

Respondents - Appellants

--------------------------------------------------------------------

Case No. 98-41352

ISRAEL TORRES-CARILLO

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

--------------------------------------------------------------------

Case No. 98-41353

FRANCISCA ROJAS DE NORIEGA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

Case No. 98-41354

MARIA GUADALUPE RAMIREZ-MORALES

Petitioner - Appellee

v.

HONORABLE JANET RENO, US Attorney General; E M TROMINSKI,
District Director, Immigration and Naturalization Service

Respondents - Appellants

----------------------------------------------------------------

Case No. 98-41355

JOSE ANTONIO HINOJOSA-ALANIZ

Petitioner - Appellee

v.

IMMIGRATION AND NATURALIZATION SERVICE

Respondent - Appellant

----------------------------------------------------------------

Case No. 98-41359

JOSE LUIS HERNANDEZ-RIVERA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

----------------------------------------------------------------

Case No. 98-41360

APOLINAR TORRES-ESPINO

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

Case No. 98-41361

CLEODELMIRO PENA-MEDINA

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

-------------------------------------------------------------------

Case No. 98-41362

RODRIGO AGUILAR-VASQUEZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

-------------------------------------------------------------------

Case No. 98-41363

JOSE ANASTACIO GARCIA-MENDEZ

Petitioner - Appellee

v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, US Attorney General

Respondents - Appellants

-----------------------
Appeals from the United States District Court for the
Southern District of Texas, Brownsville
-----------------------

Before DAVIS, SMITH and DENNIS, Circuit Judges.

BY THE COURT:

IT IS ORDERED that the unopposed motion of appellants to
dismiss all consolidated appeals, with the exception of 98-41336,
Lerma De Garcia vs. Trominski, and 98-41346, Rodriguez-Cerna vs.
Trominski is Granted.



EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE BOARD OF IMMIGRATION APPEALS

In re

APOLINAR TORRES-ESPINO
A22 365 809

MOTION TO REMAND FOR HEARING ON §212(c) APPLICATION

Comes Respondent, by and through the undersigned, and respectfully
requests that the instant case be remanded to the Immigration Judge
for proceedings on his request for §212(c) relief, and in support
of same, shows as follows:

In a decision dated February 10, 1995, the Board dismissed
Respondent's appeal from the decision of the Immigration Judge,
finding him ineligible for §212(c) relief on the grounds that
he had abandoned his U.S. residence by agreeing to serve part
of his criminal sentence in a Mexican jail.  Respondent filed a
timely motion to reopen, alleging ineffective assistance of his
counsel, who had failed to file a brief in support of his appeal,
and reconsideration, on the grounds that the decision was in error
when issued.  Said motion was denied on May 8, 1997, solely on the
basis of AEDPA §440(d). Respondent filed a writ of habeas corpus,
challenging both the dismissal of his appeal, and the denial of his
motion to reopen and reconsider.  Said petition was granted on
August 26, 1998.  INS appealed to the 5th Circuit, which appeal was
withdrawn by order dated March 27, 2001.  Hence, the District Court
order is final.

It is therefore urged that, in accordance with the District Court's
order, Respondent's appeal, and/or motion to reopen and reconsider
be granted, and that the case remanded to permit him to pursue his
application for §212(c) relief.

Respectfully Submitted,

Lisa S. ~~Brodyaga~~, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-class postage prepaid, to the Office of the INS General Attorney, PO Box 1711, Harlingen, TX 78551, on April 12, 2001.

_____

2

**NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE**
**BEFORE THE BOARD OF IMMIGRATION APPEALS**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

In the Matter:

Apolenar Torres– Espino

I hereby enter my appearance as attorney *(or representative)* for and at the request of the following named person(s):

NAME

ADDRESS        *(Apt. No.)*        *(Number & Street)*        *(City)*        *(State)*        *(Zip Code)*

DATE  4/11/01

ALIEN NUMBER *(list lead alien number and all family member alien numbers if applicable)*

A 77 – 365 – 809
A — —
A — —

Check if Applicable Item(s) below:

[X] 1.    I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
_____ Texas _____ and am not under a court
*(Name of Court)*
or administrative agency order suspending, enjoining, disbarring, or otherwise restricting me in practicing law.

[ ] 2.    I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:
_____

[ ] 3.    I am associated with_____, the attorney of record who previously filed a notice of appearance in this case and my appearance is at his/her request. *(If you check this item, also check item 1 or 2 whichever is appropriate.)*

[ ] 4.    Other *(Explain fully.)*

SIGNATURE

NAME *(Type or print)*

Lisa Brodyaga, Attorney

COMPLETE ADDRESS [X] Check here if this is a new address
Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

TELEPHONE NUMBER
956 – 421 – 3226

PURSUANT TO THE USA ORDER RIO GRANDE74, I HEREBY CONSENT TO REPRESENTATION BY AND THE DISCLOSURE TO 17891 Landrum Park RoadNAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY EIOR SYSTEM OF RECORDS:

*(Name of Attorney or Representative)*

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
|---|---|---|
|  |  |  |

*(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is or claims to be a citizen of the United States or an alien lawfully admitted for permanent residence.)*

FORM EOIR-27
JAN. 89



**U.S. Department of Justice**                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:  A22 365 809 - Harlingen                    Date:    MAR - 4 2002

In re: APOLINAR TORRES-ESPINO a.k.a. Apolinar Torres

IN DEPORTATION PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:    Lisa S. Brodyaga, Esquire

CHARGE:

Order:   Sec.   241(a)(4), I&N Act [8 U.S.C. § 1251(a)(4)] -
               Crimes involving moral turpitude

APPLICATION:  Section 212(c) waiver

ORDER:

    PER CURIAM.    This case has been before us on several previous occasions.    On
February 10, 1995, we dismissed the respondent's appeal from an Immigration Judge's decision
finding him ineligible for relief from deportation under former section 212(c) of the Immigration and
Nationality Act, 8 U.S.C. § 1182(c), for failure to satisfy the lawful unrelinquished domicile
requirement.  Following that decision, the respondent filed a motion to reopen and reconsider.  We
denied that motion on May 8, 1997, based on the Attorney General's decision in *Matter of Soriano*,
21 I&N Dec. 516 (BIA 1996; A.G. 1997).  Under that decision, the respondent was statutorily
ineligible for a section 212(c) waiver due to section 440(d) of the Antiterrorism and Effective
Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA").

    On August 26, 1998, the United States District Court for the Southern District of Texas
vacated our decision in this matter and remanded the case to us, to give the respondent an
opportunity to pursue an application for section 212(c) relief.  On March 27, 2001, the United States
Court of Appeals for the Fifth Circuit granted the government's unopposed motion to withdraw and
dismiss the appeal it had taken from the district court's decision.  Further, the Attorney General has
now established by regulation, codified at 8 C.F.R. § 212.3(g), that section 440(d) of AEDPA shall
not apply to any applicant for section 212(c) relief whose deportation proceedings were commenced
before the Immigration Court prior to April 24, 1996.  The proceedings in this case were commenced
before that date.

xc: Binder

A22 365 809

As the respondent is no longer barred from section 212(c) relief due to the provisions of AEDPA, we now will address the merits of his motion to reopen and reconsider. In his motion, the respondent makes three arguments. First, he argues that the finding by the Immigration Judge and the Board that he had abandoned his residence in this country should be set aside because he was never properly charged with abandoning his lawful permanent resident status. Second, the respondent argues that the finding that he abandoned his residence should be set aside on the merits, because the evidence does not clearly, unequivocally, and convincingly establish that he intended to abandon his home in this country. Third, the respondent argues, alternatively, that the proceedings should be reopened based on ineffective assistance of counsel, to allow him to submit a brief in support of his appeal and to receive de novo consideration of the issues being raised.

A motion to reopen before the Board must present new, material, previously unavailable evidence. 8 C.F.R. § 3.2(c)(1). A motion to reconsider must specify the errors of fact or law in the prior Board decision, and be supported by pertinent authority. 8 C.F.R. § 3.2(b)(1). The respondent's motion does not meet these requirements.

The respondent asserts that the Immigration Judge should not have raised the issue of possible abandonment of lawful permanent resident status without the Service making the charge that he had abandoned his status. As the Immigration Judge noted at the hearing, he did have authority to raise this issue, which relates to the respondent's application for relief from deportation. This situation is not analogous to a situation where an alien is found deportable on a charge that the Service did not bring. There was nothing to preclude the Immigration Judge from raising the issue of abandonment of lawful permanent resident status in connection with an application for 212(c) relief.

Moreover, the parties were clearly given notice that the Immigration Judge planned to inquire into the abandonment issue, as the Immigration Judge continued the case for the parties to brief several issues, and that issue was one the Immigration Judge specifically stated he wanted briefed. The respondent points out that the Service never did brief that issue, and asserts that because the Service did not pursue it, he assumed that it would not be an issue and did not prepare for it. These factors in no way prevented the Immigration Judge from considering this issue, which the Immigration Judge clearly informed the parties would be considered. The respondent's contention that he was "never provided with notice that abandonment was an issue" (Respondent's Motion at 20) is simply not true. As he did have notice of the issue, which the Immigration Judge had power to raise, and clearly did raise, there was no denial of "an opportunity to defend" (Respondent's Motion at 20), resulting in a denial of due process.

On the merits, the respondent argues in his motion that the Board erred in finding that the respondent had abandoned his permanent resident status. He argues that the Board erred in its manner of considering the issue by not focusing on the respondent's intent, and by not fully

2

A22 365 809

considering certain evidence, such as his attempts during his years in Mexico, to get his "green card" back, that indicated he did not intend to abandon his status. Other than these general statements, the respondent has not pointed to a specific error of fact or law to support his motion to reconsider. Our February 10, 1995, decision was comprehensive and detailed in its discussion of the abandonment issue, and the respondent has not provided an adequate basis for us to reconsider that decision.

Nor do we find an adequate basis to reopen or reconsider based on alleged ineffective assistance of counsel. We note initially that, despite present counsel's statements to the contrary, there has not been compliance with the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), and reopening on that basis is therefore not appropriate. *Compare Mattter of Grijalva*, 21 I&N Dec. 472 (BIA 1996). We further note that the issue of abandonment of lawful permanent resident status, while not briefed, was explored at the hearing, and as indicated above, the Immigration Judge made a reasoned decision on that issue, which we upheld.

We also note that the respondent requests "de novo" consideration of the issues raised, but he has already had such review. In fact, in our February 10, 1995, decision, we specified that we were reviewing the abandonment issue de novo because of concerns regarding the Immigration Judge's allocation of the burden of proof.

In sum, we find that there was no error in our February 10, 1995, decision in this case. Nor did the Immigration Judge err in raising and deciding the issue of the respondent's lawful permanent resident status. Accordingly, the respondent's motion to reopen and reconsider is dismissed.

FOR THE BOARD

3



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

_____

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**Brodyaga, Lisa S., Esquire**          **Office of the District Counsel/HL**
**17891 Landrum Park Road,**            **P.O. Box 1711**
**San Benito, TX 78586-0000**          **Harlingen, TX 78551**

**Name: TORRES-ESPINO, APOLINAR***                    A22-365-809

RECEIVED
DISTRICT COUNSEL
02 MAR 12 AM 8: 37
HARLINGEN, TX

Date of this notice: 03/04/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours.

*Lori Scialabba*

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    HOLMES, DAVID B.
    MILLER, NEIL P.
    SCHMIDT, PAUL W.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR TORRES-ESPINO,    )
                                        )
     Petitioner,         )
                                          )
v.                                )
                                        )   CIVIL ACTION NO. B-02-062
E.M. TROMINSKI, INS DISTRICT  )
DIRECTOR,                  )
                                        )
     Respondent.        )
_____)

**ORDER**

Upon consideration of the argument presented by the Petitioner and the Respondent, the Court finds that the motion to dismiss the petition for writ of habeas corpus should be granted.

It is therefore

ORDERED, ADJUDGED AND DECREED that the Petition for Writ of Habeas Corpus Seeking Review of Orders of Deportation is DISMISSED.

It is further

ORDERED, ADJUDGED AND DECREED that the Motion to Reinstate Petition and/or to Clarify Decision in Torres-Espino v. Trominski, C.A. B-97-149 is DENIED.

Done this _____ day of _____, 2002.


_____