UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 6 2002

Michael N. Milby
Clerk of Court

APOLINAR TORRES-ESPINO     )
                                )
v.                            )     C.A. No. B-02-062
                                )
E.M. TROMINSKI, INS DISTRICT   )
    DIRECTOR                )
_____)

PETITIONER'S OPPOSITION TO INS' MOTION TO DISMISS
AND SUBMISSION OF PERTINENT PORTIONS OF THE RECORD OF PROCEEDINGS

Apolinar Torres-Espino, by and through the undersigned, hereby files the instant Opposition to Respondent's Motion to Dismiss his petition for habeas corpus. He would also supplement Respondent's "Return" with key portions of the Certified Administrative Record, as filed in *Torres-Espino v. INS*, No. 97-60320 (5th Cir.), to wit, those documents relating to his Motion to Reopen and Reconsider. (Exhibit G, cited as (G:___)), and the transcript of proceedings before the Immigration Judge, (Exhibit H, cited as (H:___)). [1]

I. THE NATURE OF THE DECISION UNDER CONSIDERATION

Mr. Torres is currently seeking habeas review of the Decision and Order of the Board of Immigration Appeals, ("BIA"), dated March 4, 2002. (Exhibit B). [2]  Said decision denied his "Motion To Reopen For the Purpose Of Filing a Brief In Support Of His Appeal, To Reconsider Finding That He Had Abandoned His Residence, And To Remand Case For Evidentiary Hearing." (G:109).

_____

[1]  All of Mr. Torres' Exhibits are cited in this manner.

[2]  Mr. Torres is not abandoning his requests for review of the initial deportation order, and to reinstate and/or clarify the Court's decision in *Torres-Espino v. Trominski,* CA B-97-149. *See,* Exhibit E, filed with the instant petition.  However, in the interests of clarity, he will leave those issues for later briefing, if necessary, and will concentrate herein on the BIA's most recent decision, Exhibit B, issued March 4, 2002.

## II.  PERTINENT BACKGROUND

In order to understand Mr. Torres' Motion to Reopen and Reconsider, a little history is required.  In his initial hearing, Mr. Torres was represented by an Attorney from Texas Rural Legal Aid ("TRLA"), Margaret Burkhart, who is now an Immigration Judge.  When his initial appeal was (improperly) rejected as untimely, Attorney Burkhart filed a successful petition for review with the Fifth Circuit.  However, by the time the case was remanded to the BIA to process the appeal, she was no longer associated with TRLA, and could do no more than give the file to someone else to prepare the brief.  Unfortunately, that did not occur. *See,* (G:126-131).

As a result, the BIA reached its decision without benefit of a brief for Mr. Torres.  In that decision, the BIA found, allegedly on the basis of *de novo* review, that Mr. Torres had abandoned his LPR status.  Consequently, the Board found that he was ineligible for §212c) relief, and ordered him deported to Mexico. (Exhibit A).

Then came error number two by the office of TRLA.  Mr. Torres had a right to plenary judicial review of the BIA's decision, including review of his claim that such a finding could not be entered where he had not been charged with having abandoned his residence, [3] and the issue had been raised only as a *matter of law*, in the context of whether he had abandoned his domicile, and/or residence, by asking to serve his time in Mexico, (allegedly because the treaty did not apply to Mexicans domiciled in the U.S.), and he had not been on notice that it would be addressed in the plenary fashion conducted by the BIA. *See,* (H:229-244).  He also could have urged that the finding was not supported by the record, to the requisite level of "clear, unequivocal and convincing" evidence. *See,* U.S.C.

---

[3]    *See, Zamora-Morel v. INS,* 905 F.2d 833 (5th Cir. 1990) (alien could not be deported on the basis of a charge which had not been properly made before the Immigration Judge).

§1105a(a)(4) (1995); *Matter of Huang,* 19 I&N Dec. 749 (BIA 1988) (It is INS' burden to prove that an LPR has abandoned his resident status by clear, unequivocal and convincing evidence).

Because he had been convicted of an aggravated felony, Mr. Torres only had thirty days to file such a petition. 8 U.S.C. §1105a(a)(1) (1995). Unfortunately, someone from TRLA sent him a letter advising him that he had *ninety* days to file the petition, but that said office could no longer represent him, and he should seek private counsel. (G:130-131). Mr. Torres did as instructed. Prior to the date on which he had been told that the petition for review had to be filed, he hired the undersigned, who, also within that time frame, filed the motion currently under consideration. (G:109).

Therefore, the first form of relief requested was that the Board reopen, on the grounds of ineffective assistance of counsel, for the purpose of permitting Mr. Torres to submit a brief in support of his appeal. This, he noted, would have the dual effect of bringing his arguments before the Board, and, if they were not persuasive, of restoring his right to judicial review. [4]

He also requested that the Board reconsider its finding that he had abandoned his residence, which, he urged, had been made in a procedurally flawed manner, both in that he lacked proper notice that the issue would be addressed other than in the context of the treaty, and because the BIA had overlooked crucial evidence, and requested a remand, for a full evidentiary hearing. (G:109-131).

---

[4] Mr. Torres considered that he had adequately complied with *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), which requires either that a grievance be filed, or an explanation given as why none was filed. Mr. Torres had given such an explanation. Judge Burkhart had acknowledged the errors. (R:128). But since the errors were administrative, and she had not then been employed by TRLA, he considered that a grievance against her was not appropriate. In rejecting this claim, (B:3), the BIA did not explain why this was inadequate under *Lozada*. Rather, the Board simply cited to a later case, with very different facts, where a grievance had been filed.

## III.   ISSUES PRESENTED

**A.   THE BIA ERRED IN NOT RECONSIDERING ITS 1995 FINDING THAT MR. TORRES HAD ABANDONED HIS STATUS AS A LAWFUL PERMANENT RESIDENT.**

**B.   THE BIA FAILED TO GIVE MEANINGFUL CONSIDERATION TO MR. TORRES' MOTIONS TO RECONSIDER AND REOPEN**

**C.   THE BIA ERRED IN REJECTING MR. TORRES' CLAIM THAT PRIOR COUNSEL WAS INEFFECTIVE, AND IN NOT REOPENING FOR THE PURPOSE OF AFFORDING HIM AN OPPORTUNITY TO SUBMIT A BRIEF IN SUPPORT OF HIS APPEAL**

**D.   MR. TORRES HAS SUFFERED SUBSTANTIAL PREJUDICE FROM THE LEGAL AND CONSTITUTIONAL ERRORS OF WHICH HE COMPLAINS**

## IV.   ARGUMENT

### A. THE BOARD ERRED IN REFUSING TO RECONSIDER ITS 1995 DECISION

The first aspect of Mr. Torres' claim derives from the BIA's flawed reasoning in denying his request for reconsideration, (B:2-3):

> [Mr. Torres] argues that the Board erred in its manner of considering the issue [of abandonment] by not focusing on the respondent's intent, and by not fully considering certain evidence, such as his attempts during his years in Mexico, to get his "green card" back, that indicated he did not intent to abandon his status.  Other than these general statements, the respondent has not pointed to a specific error of fact or law to support his motion to reconsider.

This, it is submitted, is a bit of a *non sequitur*.  Pointing to specific evidence that the Board overlooked in reaching a finding, particularly one on which INS bears such a heavy burden of proof, can hardly be characterized as a "general statement[]" which does not point to a "specific error of law or fact."

To the contrary, Mr. Torres specifically challenged a crucial finding of the Board, to wit, the Board's finding that, (B:5):

> [Mr. Torres] has stated that he requested the transfer in order to be incarcerated at a facility closer to his family in the United States.  However, it is significant that on his release from prison, he made no immediate attempt to resume living in the United States.

4

Mr. Torres not only challenged this finding, but identified specific evidence, which had been overlooked, contradicting it. *See,* (H:110) (emphasis added) (footnote 2 in original):

> In the context of discussing the second offense, it was affirmatively brought out on direct examination that, at his request, Mr. Torres had served part of his sentence in Mexico, and that he had been released from prison there, (T:42-43). **When he was ready to be released, his father went to pick him up, and he returned with his family to Weslaco, Texas,** (T:25, 43, 85).
>
> **Subsequently, n.2 Mr. Torres worked briefly at his brother's bakery, in Nuevo Progreso, on the Texas border,** where he med his second wife, (T:34). He testified that while he was working at the bakery, he stayed in Rio Bravo, Mexico, (T:87), but insisted that he had not gone back to Mexico to live since he had immigrated to the United States, (T:48,104).
>
> ───────
> n.2  The record does not disclose exactly how much time he spent in Weslaco, before starting to work at his brother's bakery, just across the river, but it was doubtless relatively brief.

*See also,* (H:122-123), where Mr. Torres urged:

> Alternatively, he would urge reconsideration of the Board's finding that Mr. Torres had abandoned his residence, on the grounds that the issue was not properly charged. And even if the issue were properly before the Court, Mr. Torres would assert that the Board erred in finding that abandonment had been established to the requisite degree of proof. As noted, significant facts were not taken into consideration, such as his request to have his "green card" sent to him in Mexico, and that he returned to the U.S. immediately upon being released from prison in Mexico, although he returned to Mexico shortly thereafter for a few months, to stay with his brother, and work at the bakery.

The same claims were made in the points and authorities in support of his motion. (H:74-75,87). Mr. Torres also noted, (H:87,n.11):

> The fact that the Board missed these facts is the direct result of the error of the office of his prior counsel in

> not filing a brief in support of his appeal, and can be
> viewed as one form of prejudice from the ineffective
> assistance of counsel.

This prejudice is seen even today, in INS' assertion, (INS:5-11),
that Mr. Torres cannot challenge the BIA's finding that he had
abandoned his LPR status, and that, (INS:12), to the extent, he
can, it is under a standard that the evidence "must be so
compelling that no reasonable fact-finder could fail to find the
facts were as the alien alleged." [7]   Even assuming, *arguendo,* that
an issue upon which INS bears the burden of proof, by clear,
unequivocal, and convincing, evidence is properly before the Court
where INS has declined to charge it, brief it, or even argue it,
and where the Immigration Judge raised it only in a very limited
context, specifically declining to take any evidence on the point
other than possible documents relating to the transfer, no
reasonable factfinder could conclude that INS had met this burden,
based on the record created by the Immigration Judge.  The factors
relied upon by the BIA include such irrelevant considerations as
the fact that he has "at least one sibling in Mexico," and that he
owned no real estate in the United States.  The former is a matter
totally beyond his control, and the latter, a question of
economics.  Mr. Torres also owned no real estate in Mexico!

Therefore, one is left with the facts that he met and married his
wife in Mexico, that he stayed in Rio Bravo for "three of four
months, something like that," (H:271), and that he delayed
requesting a new green card for about a year after his release,
during which time he came and went illegally.  This does not show
an intent to abandon his residency to the requisite degree of
proof, even without considering the other evidence, to wit, that he

---

[7] This standard is inapplicable where Mr. Torres challenges
the procedure by which the finding was reached on Due Process
grounds.  Further, the BIA's decision on this point is so
outrageous that it would fail even the most minimal scrutiny.

has resided in the U.S. since 1976, and that upon his release from
prison, he returned immediately to Texas to rejoin his family, that
he attempted to get his green card sent to him in Mexico, none of
which was even mentioned by the BIA.    Thus, even under the most
minimal scrutiny, it cannot be said that the evidence supporting
such a finding was "clear, unequivocal, and convincing." [8]

Furthermore, the issue of whether one can be deported on the basis
of a finding upon which INS bears the burden of proof, where INS
has declined to charge, brief, or pursue, the issue, is one of
first impression.    In its most recent decision, the Board justifies
this action on the grounds that Mr. Torres had been put on notice
by the Immigration Judge that the issue would be considered. (B:2).

However, the Judge raised the issue as a question of law:  whether
the treaty with Mexico permitting transfer of a prisoner to Mexico
required that the applicant renounce any claim to *domicile* in the
U.S., and whether, therefore, Mr. Torres had abandoned his domicile
(or LPR status) *as a matter of law* by requesting transfer to
Mexico.    The Judge requested that the parties **brief** the issue, and
if applicable, present evidence relating to the treaty, or any
documents Mr. Torres may have signed at that time.    The Judge
specifically indicated that he was not interested in *testimony*, or
other evidence as to Mr. Torres' overall intent.    Rather, he was
interested only in the circumstances surrounding the transfer. [9]

---

[8]    The case cited by INS for the proposition that abandonment
"is mainly a question of fact," *Carrasco-Favela v. INS,* 563 F.2d
1220,12222 (5th Cir. 1977), relates to *domicile,* not *residence.*

[9]    *See,* Exhibit H, at pp. 232:

So, [abandonment] is one issue that I see *and I don't
particularly want to have the next hearing, one in which
the parties are bringing witnesses for hours of
testimony.    Instead I'd like to get the legal issues*

7

Because the Judge limited the issue to one of law, to be addressed without "witnesses [offering] hours of testimony," it cannot be said, as the Board indicates, that the Judge adequately put Mr. Torres on notice that the issue would be considered. He was led to believe that the only aspect to be considered was the question of his intent in requesting transfer. And to the extent the Judge indicated otherwise, it came too late for Mr. Torres to properly address it before the Judge. [10] Had Mr. Torres received *notice* that the issue of abandonment would be addressed in a plenary form, and not just in the context of his intent in requesting transfer, he could have presented evidence, other than his testimony, [11] showing

_____

> *straightened out. ...*

*See also,* (H:236):

> IJ:  [C]ertain legal issues were brought up in the last hearing and I've received pleadings from each party in reference to those. ...

And, (H:238-243), where the Judge suggests that INS attempt to get evidence from the U.S. Magistrate on the transfer proceedings.

[10]    *See,* Exhibit H, at pp. 279-280:

> MS. BURKHART TO JUDGE:  That's all we have, Your Honor. However, we would state for the record that it's our position that the Service never properly presented to the Court the issue of abandonment of residency in this case. *And for that reason respondent did not address it because it's our position that it was never properly placed in front of the Court. ...*
>
> ...
>
> Well, Your Honor, it's our position that we did establish upon direct that ... he did have his domicile here in the United States as well as his residency since the time of getting it.  *And the Service never questioned that position. And for that reason we don't believe that it was ever properly in front of the Court.*

[11]    *See, e.g.,* Exhibit I, showing that he applied for a new "green card" in 1988 because his was lost.  This document, obtained

that he had not abandoned his residence.   Actually, the Judge
claimed that Mr. Torres had raised the issue of abandonment, but it
was always in the context of the transfer to Mexico.   (H:280):

> Well, I don't think that the Immigration Service needs to
> raise an issue for me to consider it when you're applying
> for relief from deportation.   As far as what was raised
> in direct, what was raised in direct was his statement
> that he requested to be transferred to a prison in
> Mexico.   And his statement.. or his reference to the time
> when he was sent back to Mexico in June of '89.   That was
> not brought up by the Immigration Service, that was
> brought up by him on direct.   And that certainly raises
> the issue about un..unrelinquished domicile.

Consequently, the issue was never fully explored at the hearing.
And even if prior counsel incorrectly considered that as a matter
of law it was not properly before the Court, and therefore did not
present evidence with respect thereto, this would only constitute
a third example of ineffective assistance. (H:279-80) ("And for
that reason respondent did not address it because it's our position
that it was never properly placed in front of the Court.").

Mr. Torres also urges that the BIA has failed to give meaningful
consideration to the arguments he raised in his motion to reopen
and reconsider.   His claim is not, as INS appears to believe, just
that the BIA's finding that he had abandoned his status as a LPR is
unsupported by the record, (although he urges that it is not so
supported).    Rather, he argues that it was error for the BIA to
make such a finding, where the issue before the Judge was whether
he had met his burden of showing seven years consecutive domicile,
and abandonment was addressed only in a very limited context. [12]

---

through the Freedom of Information Act *after* the hearing, (H:234),
shows that, at that time, he still considered himself to be an LPR.

[12]   *See,* (A:1):

On March 8, 1990, the immigration judge found the
respondent deportable as charged; denied his application

The difference is crucial. A finding that one has not shown seven years consecutive domicile is not equivalent to a finding that one has abandoned one's residence, or LPR status. In the former instance, one continues to accumulate domicile during a non-frivolous appeal to the BIA. [13] In the latter, one's LPR status has been erased, and the question of domicile becomes irrelevant.

And even to the extent that the Immigration Judge made abandonment an issue, it was as a legal question, arising from Mr. Torres' request for a transfer. The Judge specifically stated that he did not want "hours of testimony," such as would have been appropriate if abandonment, a question of over-all intent, on which INS bears a heavy burden, had been on the table.

### B. THE BOARD FAILED TO GIVE MEANINGFUL CONSIDERATION TO MR. TORRES' MOTIONS TO RECONSIDER AND REOPEN.

Mr. Torres' right to file a motion to reopen and/or to reconsider is now statutorily guaranteed. 8 U.S.C. §§1230(c)(5) and (6). Although the BIA need not "write an exegesis on every contention.... its opinion must reflect that it has heard and thought and not merely reacted." *Opie v. INS*, 66 F.3d 737,740 (5th Cir. 1995), quoting *Ghassan v. INS*, 972 F.3d 631 (5th Cir. 1992). That standard was not met herein. In denying the motion to reconsider, the BIA reasoned, (A:2):

---

> for a waiver of inadmissibility under section 212(c) ... on the basis that he was statutorily ineligible for relief due to the lack of 7 consecutive years of lawful unrelinquished domicile, and ordered him deported from the United States to Mexico. The respondent appealed only from the denial of section 212(c) relief and the finding that he lacks the requisite period of unrelinquished domicile.

[13] In Mr. Torres' case, this would have resulted in him being eligible for §212(c) relief. His appeal was clearly non-frivolous, and more than seven years passed between the time he re-established his domicile in Texas, and the date of the BIA's decision.

> The respondent asserts that the Immigration Judge should
> not have raised the issue of possible abandonment of
> lawful permanent resident status without the Service
> making the charge that he had abandoned his status.

This is only partially correct.  The Immigration Judge found that
Mr. Torres had not shown seven consecutive years of unrelinquished
domicile, because he had abandoned his domicile when he requested
a transfer. *See,* Government Exhibit E, [14] (RespE:8):

> First, it does appear to the Court, based on the record
> in this case, that the respondent's request for a
> transfer to Mexican prison at a time when he had a term
> to serve of at least three years in Mexico, according to
> his statement, in itself would constitute an abandonment
> of his domicile in the United States.

However, the Judge then continued as follows, *id.*:

> In the alternative the Court would find that such a
> request for a transfer to Mexico when the respondent
> expected to serve at least three years in prison there
> constitutes an abandonment of his lawful permanent
> resident status and domicile in the United States, unless
> he presents some very convincing and believable
> explanation about why he felt compelled to request a
> transfer.  And in this case, the record certainly does
> not include a credible or convincing explanation of why
> he requested that transfer.

It is this finding that Mr. Torres challenges. [15] While it was Mr.
Torres' burden to demonstrate lawful, unrelinquished domicile, it
would have been INS' burden to demonstrate, by clear, unequivocal
and convincing evidence, that he had abandoned his LPR status. The

_____

[14]    Since INS has also identified Exhibits by letter, rather
than number, Government exhibits will be cited as (RespA:__).

[15]    Significantly, this passage corroborates Mr. Torres'
contention that the Judge limited the issue of abandonment to the
circumstances surrounding the transfer, although he did go beyond
his initial position that he would only entertain evidence on that
issue in the form of documents (or tapes) from that proceeding,
apparently concluding that the request for transfer had created a
rebuttable presumption which Mr. Torres had failed to rebut.

11

Judge raised the issue in the limited context of the transfer. But the BIA improperly extrapolated from this limited issue to a plenary one, allegedly finding sufficient evidence in the record as a whole to support a finding of abandonment. But Mr. Torres was never given notice that, apart from the request for transfer, abandonment was an issue, much less that it was one on which *other evidence could be presented*, and which would be decided on the totality of the record. According to the Immigration Judge, it would be decided on the basis of briefs, and any evidence INS might be able to locate relating to the transfer proceedings, and Mr. Torres therefore did not present other evidence on the issue.

**C.   THE BOARD ERRED IN REJECTING MR. TORRES' CLAIM THAT PRIOR COUNSEL HAD BEEN INEFFECTIVE, AND IN REFUSING TO REOPEN FOR THE PURPOSE OF ALLOWING HIM TO SUBMIT A BRIEF IN SUPPORT OF HIS APPEAL**

Mr. Torres' third complaint is that the BIA erred in refusing to reopen on the basis of ineffective assistance of counsel, to permit him to file a brief in support of his appeal. There is no doubt but that the office of TRLA committed two very serious errors. They failed to file a brief in support of his appeal, thereby preventing Mr. Torres from fully presenting his case to the BIA. [16]

---

[16] For example, the Board asserted that after his release from prison, Mr. Torres "made no immediate attempt to resume living in the United States," (A:5). Had he been able to file a brief, he could have pointed out that Mr. Torres did, in fact, return immediately to the United States upon release from prison, (H:218):

> Mr. Torres: [La Islas Maria, Mexico] is where I was set free, from that prison.
> Counsel: Okay. Then did you return to the United States?
> Mr. Torres: Yes.

*See also*, (H:260):

> IJ: ... And when you were released from prison in Mexico what did you do when you left that prison?
> Mr. Torres: I came with my family here.
> IJ: Did your family meet you at the prison in Mexico?
> Mr. Torres: My father went there to wait for me.

And second, they affirmatively misinformed him of the time in which he could file a petition for review to the Fifth Circuit.

In refusing Mr. Torres' claim of ineffective assistance of counsel, the Board reasoned as follows, (B:3):

> Nor do we find an adequate basis to reopen or reconsider based on alleged ineffective assistance of counsel. We note initially that, despite present counsel's statements to the contrary, there has not been compliance with the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), and reopening on that basis is therefore not appropriate. *Compare Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996).

Although the BIA did not specify what requirement is lacking, it is clear that the problem was that Mr. Torres did not file a grievance against Judge Burkhart. However, *Grijalva* does not resolve this issue. Under *Lozada*, 19 I&N Dec. at 639 (emphasis added):

> [B]efore allegations of ineffective assistance of former counsel are presented to the Board, former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond, should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, *the motion should reflect whether a complaint has been filed* with appropriate disciplinary authorities regarding such representation, *and if not, why not*.

This is not a mandate that a grievance be filed in all circumstances. In his motion, Mr. Torres asserted, (G:123,n.11):

> It should be noted that the requirements of <u>Matter of Lozada</u>, 19 I&N Dec. 637 (BIA 1988), for reopening on the basis of ineffective assistance of counsel have been met. The errors have been brought to the attention of, and acknowledge[d] by, prior counsel. Since they were administrative errors, and not violations of counsel's

13

> "ethical or legal responsibilities," no grievance would
> be appropriate. Further, since prior counsel represented
> in the notice of appeal that a brief would be filed, and
> has acknowledged that the failure to do so was the result
> of an error in her office, there is not need for an
> affidavit from Mr. Torres.

Mr. Torres also noted that Judge Burkhart was no longer employed at
TRLA, and another attorney had sent the letter misadvising him of
the date to file a petition for review, and advising him that the
office of TRLA could no longer handle his case. (H:122,126-128). [17]
Even under current BIA standards, and Fifth Circuit precedent, it
is not clear why this was insufficient, and the BIA's decision does
not give any guidance in that regard. *Matter of Grijalva, supra,*
involved a situation where an attorney's office called the alien,
and incorrectly informed him that he need not attend a hearing. In
that case, a grievance was filed. But regardless of whether the
attorney's conduct therein involved a violation of counsel's
"ethical or legal responsibilities," that case does not answer the
question of whether the case at bar involved such a violation.

Nor is that question answered by *Lara-Resendez v. INS*, 216. F.3d
487, 498 (5th Cir.2000), which reiterated that "Lozada does not
absolutely require that a disciplinary complaint be filed. Rather,
a reasonable explanation can excuse the failure to file a
complaint." The Board made no attempt to explain why it did not
find Mr. Torres' explanation to be "reasonable," or which of the
purposes served by such a grievance would be furthered by filing
one against Judge Burkhart, or, for that matter, against either of

---

[17] It is not even clear against whom a grievance would have
been filed: against Judge Burkhart, who had previously represented
Mr. Torres, but was no longer associated with TRLA; against the
unknown attorney who had been asked to prepare the brief to the
BIA, and did not, or the one who signed the letter incorrectly
advising Mr. Torres of the date on which he needed to file the
petition for review, even though neither attorney ever represented
Mr. Torres. The BIA makes no attempt to answer this question.

the other attorneys associated with TRLA through whose hands the file had passed, neither of whom had ever represented Mr. Torres.

As explained in *Lara-Resendez, supra* at 496, the requirement of a grievance serves "to deter meritless claims and to aid in policing the immigration bar." Here, a grievance would have served neither purpose. A face-to-face encounter with Judge Burkhart, the only attorney to actually previously represent Mr. Torres, at which she acknowledged the errors committed by TRLA, was certainly sufficient to ensure that the claim had merit. And since she was no longer a member of the immigration bar, but an Immigration Judge herself, filing a grievance against her would not aid in "policing the immigration bar." To the contrary, as an Immigration Judge, the most appropriate agency to inform of any errors committed under her watch as a private immigration attorney would be the Board of Immigration Appeals. Mr. Torres' motion provided such notice.

It is also unrealistic to consider that an immigrant whose prior attorney is now an Immigration Judge would be able to find new counsel to pursue a motion to reopen on the basis of ineffective assistance by that Judge, if filing a grievance against her were an absolute requirement. Confronting Judge Burkhart with the errors committed was painful enough. The undersigned cannot say with certitude that she would have agreed to represent Mr. Torres, if it would have required that she file a grievance against Judge Burkhart, for conduct for which the Judge was, at best, only technically responsible, since she had long since left TRLA.

It is not the intent of *Lozada*, or *Lara-Resendez*, to impose a requirement which, far from deterring meritless claims, would make it almost impossible for an immigrant who has clearly suffered from administrative errors in the office of prior counsel, now an Immigration Judge, to find anyone who would help him seek redress.

### D.   MR. TORRES SUFFERED SUBSTANTIAL PREJUDICE.

Finally, Mr. Torres suffered substantial prejudice from the errors of which he complains. In the immigration context, prejudice inheres where the alien is deprived of the opportunity to fully present his case, and receive meaningful consideration thereof. *See, Matter of Ruiz*, 20 I&N Dec. 91, 93 (BIA 1989) (to reopen in absentia proceedings, alien need not show prima facie eligibility for relief, since relief is the opportunity to present case).

Mr. Torres' hearing did not comport with Due Process. Notwithstanding INS' refusal to brief the issue, much less lodge such a charge, and the limited context in which he considered the issue, the Judge held that, in the absence of a sufficient reason, his request for a transfer constituted an abandonment of his LPR status. And even as they recognized that the Judge's treatment of the issue was flawed, the BIA concluded, without benefit of a brief from Mr. Torres, that the record as a whole demonstrated that he had abandoned his LPR status.    But the "record as a whole" was never developed on this issue. Mr. Torres was never on notice that the issue would, or could, be considered in any way other than solely as a legal matter, arising from his request for a transfer. To the contrary, the Judge declined to hear "hours of testimony" on the matter, and his attorney preserved for the record the fact that she had therefore not put on a case with respect to that point. [18]

Mr. Torres fared no better before the Board. The BIA acknowledged that, once he proved he had been admitted as a LPR, it was INS'

---

[18]    At the hearing, Mr. Torres' attorney noted that the issue of abandonment was not properly before the Court, and "for that reason [Mr. Torres] did not address it," (R:279).    *See, Zamora-Morel v. INS, supra* at 839 (where eligibility for discretionary relief depended on fact that could have formed the basis of charge of deportability, to wit, the existence of a second conviction for a controlled substance violation, and no such charge was laid, BIA could not rely on the alleged conviction for purposes of finding that alien was not eligible for discretionary relief, regardless of whether evidence of such a conviction was found in the record).

16

burden to prove, by clear unequivocal and convincing evidence, that he had abandoned his status. But given the limited treatment the issue had received below, the BIA should have remanded for plenary consideration, under cases such as *Martinez-Solis v. INS*, 14 I&N Dec. 93, 95 (BIA 1972) (Contested deportation hearing is a quest for the truth, and case should be remanded to supplement record where needed facts not fully developed); and *Matter of K-H-C-*, 5 I&N Dec. 312, 314 (BIA 1953) (it is function of the Immigration Judge to ensure that "the facts are clearly and fully developed").

Moreover, given the error at TRLA, resulting in the lack of a brief on Mr. Torres' behalf, the Board overlooked major portions of the evidence, which would have precluded a finding that INS had met its exacting burden of proving abandonment. However, Mr. Torres was also deprived of the opportunity to challenge the decision, again as a result of an error at TRLA, which erroneously advised him that he had three months in which to seek review from the Fifth Circuit.

The prejudice from these errors is also seen in the BIA's 2002 decision, which addressed the issues only from the limited perspective of whether Mr. Torres had met the high burden required for reopening. The BIA rejected his request for reopening to file a brief, and that his appeal be given *de novo* consideration, on the basis that they had considered the appeal *de novo* in the first place. (B:3) ("in our February 10, 1995, decision, we specified that we were reviewing the abandonment issue de novo"). However, that review was conducted without the benefit of a brief on behalf of Mr. Torres. Unless the Board is saying that briefs are useless, *de novo* review without one cannot be equated with *de novo* review, guided by the errors pointed out in a party's brief. [19]

---

[19] *De novo* review would still have been required, even if Mr. Torres had filed a brief, since it is undisputed that the Immigration Judge erred in his treatment of the abandonment issue.

Ultimate prejudice, in the sense that there was a reasonable chance that the motion would have been granted, can be seen from (a) the defects in the initial proceedings, and the BIA's 1995 decision; (b) the evidence he has provided in support of his application, including fifteen years of rehabilitation, a growing family, and clean record, and (c) a comparison of his equities with those of the applicant in *Matter of Arreguin*, 21 I&N Dec. 38 (BIA 1995).

Although serious, the offenses involved herein occurred in 1981 and 1983. Mr. Torres has had no problems with the law before, or since. Both crimes involved youthful passion, and he has matured greatly since then. Although both he and Ms. Arreguin spent a significant time in prison, Mr. Torres had been released before his hearing, and now has had fifteen years in which to demonstrate genuine rehabilitation, whereas Ms. Arreguin was still incarcerated when her application was granted. Both had resided in the U.S. for twenty years or more, but Mr. Torres has far greater family and other ties, [20] and steady history of employment. His deportation would also cause the dissolution of a close-knit family unit, since his wife and children would not accompany him to Mexico. *See, Diaz-Resendez* v. *INS*, 960 F.2d 493, 497 (5th Cir. 1992). Ms. Arreguin, by contrast, was a single mother, whose children were in the care of her sister while she was incarcerated. Her offense was far more recent, and the only showing of rehabilitation she was able to make was the little that could be done while she was still in prison.

## V.  CONCLUSION

It is therefore urged that Mr. Torres' petition be granted.

1. It is urged that the Court find that the issue of abandonment of one's status as a lawful permanent resident, being one on which

---

[20] Indeed, Mr. Torres has a brand new son, Jose Antonio, born July 31, 2002. Petitioner's Exhibit J, incorporated by reference.

18

INS bears the burden of proof, must be charged by INS, so that the person have proper notice that it is asserted that said status has been abandoned, and where INS declined to lodge such a charge, the issue was never properly before the Immigration Judge. Mr. Torres therefore urges that BIA's decision of March 4, 2002 be vacated, and the case remanded with instructions that his motion to reconsider the BIA's 1995 decision finding that he had abandoned his LPR status be granted, and the case be remanded for a full evidentiary hearing; and

2. In the alternative, it is urged that the Court hold that, since the Immigration Judge addressed the issue of abandonment only in the context of Mr. Torres' request for a transfer, and specifically indicated that he wanted evidence only on that aspect, and not "hours of testimony," Mr. Torres was not given adequate notice that the issue would be decided, as the BIA has done, on the basis of the record as a whole, and that the record as developed before the Immigration Judge is inadequate to resolve the issue. Mr. Torres therefore urges that the case therefore be remanded to the BIA with instructions that he be granted a full hearing on the issue of whether he abandoned his status as a lawful permanent resident; and

3. In the further alternative, it is urged that the Court hold that Mr. Torres suffered from ineffective assistance of counsel, and that the BIA's decisions of both 1995 and 2002 be vacated, and the case remanded to the Board with instructions to permit Mr. Torres' to submit a brief in support of his appeal from the decision of the Immigration Judge;

Respectfully Submitted,

Lisa S. Brodyaga
Attorney at Law

19

17891 Landrum Park Rd.
San Benito, TX 78586
Fed Bar No:  1178
Texas Bar No:  03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, TX 78551, this 26th day of August, 2002.

_____

20

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| APOLINAR TORRES-ESPINO | ) | |
| | ) | |
| v. | ) | C.A. No. B-02-062 |
| | ) | |
| E.M. TROMINSKI, INS DISTRICT | ) | |
|     DIRECTOR | ) | |
| _____ | ) | |

ORDER DENYING RESPONDENT'S MOTION TO DISMISS

Before the Court is the Motion of Respondent to Dismiss, and Petitioner's opposition thereto. Upon consideration of the same, and of the record as a whole, including the Petition, and Exhibits filed by both Parties, it is the opinion of the Court that said motion be, and the same hereby is, **denied.**

DONE at Brownsville, Texas,

this _____ day of _____, 2002.

_____

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 6 2002

Michael N. Milby
Clerk of Court

APOLINAR TORRES-ESPINO          )
                                )
v.                              )     C.A. No. B-02-062
                                )
E.M. TROMINSKI, INS DISTRICT    )
     DIRECTOR                   )
_____)

EXHIBIT "I" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Exhibit "I" is a copy of an I-90, "Application by Lawful Permanent
Resident for New Alien Registration Receipt Card," filed by Mr.
Torres on November 17, 1988, and obtained from INS' files through
the Freedom of Information Act.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, and attachment, was
personally served on the Office of Lisa Putnam, SAUSA, 1709 Zoy
St., Harlingen, Texas, this 26th day of August, 2002.

Case 1:02-cv-00062    Document    Filed in TXSD on 08/26/2002    Page 23 of 25

Application by Lawful Permanent Resident
for New Alien Registration Receipt Card

**DO NOT WRITE IN THIS BLOCK**

FEE PAID

IMMIGRATION & NATURALIZATION SERVICE
INFORMATION COUNTER
DATE 11 3 88    VERIFIED BY

Action Stamp

$65.809

(Date)

(Date)

Status Verified  ☑ CIS  ☐ A File
☐ I-151/I-551  ☐ Other         Specify

By _____ on _____
   Initials      Date      Class

| (Name in CAPS) | (First) | (Middle) |
|---|---|---|
| APOLINAR | TORRES | E |

(Address Number and Street)   (Apartment Number)

(State/Country)   (ZIP/Postal Code)
TX   78596

(Town or City)   (State/Country)
BRAVO  TAMPS.  MEXICO

4. Date of Birth (Mo/Day/Yr)   5. Sex   ☑ Male   ☐ Female

6. Name when admitted as permanent resident (if different from 1.)
SAME (1)

8. Alien Registration Number (if any)
A- 22365809

Country of Citizenship

10. Your Mother's First Name   11. Your Father's First Name
DoniFacia +   VirgiLio T

12. The city you lived in when you applied for your immigrant visa or for adjustment to permanent resident status.
RAYMONDVILLE TX

13. Your destination (city and state) in the U.S. at the time of your original admission.
RAYMONDVILLE TX

14. The consulate where your immigrant visa was issued or the INS office where your status was adjusted to permanent resident.
MC ALLEN TX

15. Your port of admission to the U.S. if you entered with an immigrant visa.

16. The date you were admitted or adjusted to permanent resident status.
08-02-78

17. List the dates of all your absences from the U.S. lasting one year or longer since you became a permanent resident.
NONE

Reason for new card (If you check a or b, you must pay $15.00 to file this form.)

☐ a. registration receipt card was lost, stolen, destroyed or mutilated. Explain how the card was lost, stolen, destroyed, or mutilated (and the card, if it exists).

☐ b. name has been changed. (Attach the decree of the court or other certificate and your old card.)

☐ c. required to be registered and fingerprinted after my 14th birthday. (Attach your old card. You MUST use the fingerprint card from any U.S. Consular or INS office.)

☐ d. an alien commuter taking up permanent residence in the U.S. (Attach your old card.)

☐ e. received an incorrect card. (Attach your old card and explain above.)

☐ f. never received my card.

☐ g. other. (Explain)

RECEIVED
NOV 17 1988
IMMIGRATION &
NAT. SERVICE
BROWNSVILLE,
TEXAS

**Penalties: You may, by law, be fined up to $10,000 or imprisoned up to five years, or both, for knowingly and willfully falsifying or concealing a material fact or using any false document in submitting this application.**

Certification

I certify under penalty of perjury under the laws of the United States of America, that the above information is true and correct. Furthermore, I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine if I am eligible for the benefit that I am seeking.

Apolinar Torres Espino   Date 11-3-1988   Phone Number   NONE

Signature of Person Preparing Form If Other than Above

I declare that I prepared this document at the request of the person above and that it is based on all information of which I have any knowledge.

(Address)   (Signature)   (Date)

| INITIAL RECEIPT | RESUBMITTED | RELOCATED | | COMPLETED | | |
|---|---|---|---|---|---|---|
| | | Rec'd | Sent | Approved | Denied | Returned |
| | | 11/17/88 | 12/05/88 | | | |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
FILED

AUG 2 6 2002

Michael N. Milby
Clerk of Court

APOLINAR TORRES-ESPINO            )
                                  )
v.                                )        C.A. No. B-02-062
                                  )
E.M. TROMINSKI, INS DISTRICT      )
     DIRECTOR                     )
_____ )


EXHIBIT "J" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Exhibit "J" is a copy of the birth certificate of Mr. Torres'
infant son:  his fourth!


CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, and attachment, was
personally served on the Office of Lisa Putnam, SAUSA, 1709 Zoy
St., Harlingen, Texas, this 26th day of August, 2002.



**CERTIFICATION OF VITAL RECORD**



# CITY OF HARLINGEN
# BUREAU OF VITAL STATISTICS

0400A214007

| STATE OF TEXAS | CERTIFICATE OF BIRTH | BIRTH NUMBER |
|---|---|---|

**NEWBORN**

| 1. Name | First | Middle | | Last | 2. Date of Birth | 3 Sex |
|---|---|---|---|---|---|---|
| | JOSE | ANTONIO | | TORRES | 07/31/2002 | Male |

| 4a. Place of Birth - County | 4b. City or Town (If outside city limits, give precinct no.) | 5 Time of Birth | 6a. Plurality - Single, Twin, Triplet, etc | 6b. If Plural Birth, Born 1st, 2nd, 3rd, etc. |
|---|---|---|---|---|
| Cameron | Harlingen | 03:38 p.m. | Single | |

| 7a. Place of Birth | ☐ Clinic / Doctor's Office ☐ Licensed Birthing Center ☒ Hospital | 7b Name of Hospital or Birthing Center (If Not Institution, Give Street Address) |
|---|---|---|
| ☐ Residence ☐ Other (Specify): | | Valley Baptist Medical Center |

**ATTENDANT / CERTIFIER**

| 8a. Attendant's Name and Mailing Address | 9a. Certifier - I certify that this child was born alive at the place and time and on the date as stated. |
|---|---|
| Helene A Dixon C.N.M.  2230 Haine Drive  Harlingen, Texas 78550 | Signature and Title  Date Signed |

| 8b. ☐ MD ☐ DO ☒ CNM ☐ Midwife ☐ Other (Specify): | 9b. ☐ Attendant ☒ Facility Administrator / Designee ☐ Other (Specify): |
|---|---|

**MOTHER**

| 10 Name | First | Middle | Maiden Surname | 11. Date of Birth | 12. Birthplace (State or Foreign Country) |
|---|---|---|---|---|---|
| | MARTHA | ALICIA | MIRELES | 10/08/1970 | Mexico |

| 13a. Residence - State | 13b. County | 13c. City or Town | 13d. Street Address or Rural Location |
|---|---|---|---|
| TX | Hidalgo | Weslaco | 813 EAST 27TH ST |

| 13e. Inside City Limits | 14. Mother's Mailing Address (If Same As Residence, Enter Zip Code Only) |
|---|---|
| ☐ Yes ☒ No | 78596 |

**FATHER**

| 15 Name | First | Middle | Last | 16. Date of Birth | 17. Birthplace (State or Foreign Country) |
|---|---|---|---|---|---|
| | APOLINAR | | TORRES ESPINO | 01/08/1956 | Mexico |

**REGISTRAR**

| 18a. Registrar's File Number | 18b Date Received by Local Registrar | 18c. Signature of Local Registrar |
|---|---|---|
| 03-2233 | 08/07/2002 | Belia Zavala |

42307

This is to certify that this is a true and correct reproduction of the original record as recorded in this office. Issued under authority of Sec. 191.051, Health and Safety Code.

ISSUED 10-21-2002



Belia Zavala
Local Registrar

American Bank Note Company   ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

