*18*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 9 2003

Michael N. Milby
Clerk of Court

APOLINAR TORRES-ESPINO        )
                              )
v.                            )    C.A. No. B-02-062
                              )
E.M. TROMINSKI, INS DISTRICT  )
    DIRECTOR                  )
_____)

**PETITIONER'S REPLY TO OPPOSITION OF RESPONDENT TO HIS MOTION FOR
NEW TRIAL AND/OR TO AMEND OR ALTER JUDGMENT**

Apolinar Torres-Espino, through the undersigned, hereby files the
instant reply to the opposition of Respondent [1] to his motion for
a new trial, and/or to amend or alter the Judgment herein. [2]

## I. THE OPPOSITION OF RESPONDENTS

In said Opposition, INS makes the following claims:

1.  INS challenges Mr. Torres' explanation under *Matter of Lozada*,
19 I&N Dec. 637 (BIA 1988), and urges that he should have filed a
grievance even though prior counsel "had left the organization
given that she was his attorney of record." (OPP:5,n.1).   INS
notes, *id.* at 5, that Mr. Lara previously made this argument, and
maintains that this Court "properly rejected" this claim, under
*Lara v. Trominski*, 215 F.3d 487,497 (5th Cir. 2000).

2.   INS also asserts that Mr. Torres' Due Process claims fail
because he allegedly cannot establish prejudice, citing *U.S. v.
Lopez-Ortiz*, 313 F.3d 225,230 Cir. 2002), for the proposition that
§212(c) relief is not "an interest warranting constitutional
protection." INS also cites *Miranda-Lopez v. INS,* 17 F.3d 84 (5th
Cir. 1994), holding that the person must make a *prima facie* showing
that he merits relief in the exercise of discretion, and *Mejia-*

---

[1]  For convenience, Respondent is referred to as "INS."

[2]  Said Opposition is cited herein as (OPP:___).

*Rodriguez v. Reno*, 178 F.3d 1139 (11th Cir. 1999), for its failure to recognize a property interest, notwithstanding the payment of a fee. Mr. Torres has complied with *Miranda-Lopez*, by making the requisite showing. He also urges that *Mejia-Lopez* cannot apply in this circuit, as it is inconsistent with both Supreme Court, and Fifth Circuit, decisional law.

## II. ISSUES PRESENTED

**A. *LARA v. RESENDEZ* DOES NOT STAND FOR THE PROPOSITION THAT A GRIEVANCE IS REQUIRED UNDER ALL CIRCUMSTANCES, AND THE FACTS OF THE CASE AT BAR DO NOT FALL WITHIN ITS SCOPE.**

**B. MR. TORRES IS ENTITLED TO DUE PROCESS IN THE ADJUDICATION OF HIS MOTION TO REOPEN, AS IN DETERMINING WHETHER HE MERITS RELIEF.**

**C. MR. TORRES HAS SHOWN THAT THE BIA FAILED TO FOLLOW ITS OWN PRECEDENT, AND THAT HE WAS SUBSTANTIALLY PREJUDICED THEREBY.**

## III. ARGUMENT

**A. *LARA v. RESENDEZ* DOES NOT STAND FOR THE PROPOSITION THAT A GRIEVANCE IS REQUIRED UNDER ALL CIRCUMSTANCES, AND THE FACTS OF THE CASE AT BAR DO NOT FALL WITHIN ITS SCOPE.**

INS asserts that Mr. Torres should have filed a grievance against Immigration Judge Burkhart, even though she had left Texas Rural Legal Aid, because she was still his "attorney of record." This misses the point. As an Immigration Judge, Ms. Burkhart could not continue representing Mr. Torres. It was precisely because TRLA failed to designate another attorney to take her place that the error occurred, (and that she continued to be shown as Mr. Torres' "attorney of record"). But virtually by definition, this was not her error. Once she left the employ of TRLA, she had no control over, and therefore no responsibility for, Mr. Torres' case.

Nor is it correct that Mr. Torres' has no Due Process rights with regard to his motion to reopen, because the underlying relief he seeks is discretionary. As reiterated in *Lara, supra* at 496, quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992):

2

> "[T]he abuse of discretion standard applies to motions to reopen regardless of the underlying basis of the alien's request for relief."

Several months after *Doherty* was decided, the Fifth Circuit examined the "abuse of discretion standard" in the context of deportation proceedings. As explained therein, *Diaz-Resendez v. INS*, 960 F.2d 493,495 (5th Cir. 1992) (internal citations omitted):

> The Board's denial of an applicant's petition for relief under section 212(c) is reviewed for abuse of discretion. ... Such denial will be upheld unless it is arbitrary, irrational, or contrary to law. ... When determining whether the Board's action was arbitrary, irrational, or not in accordance with the law, we "engage in a substantial inquiry, . . . a thorough, probing, in-depth review of [the] discretionary agency action." ...

> Under this standard, the Board's decision may be reversed as an abuse of discretion when it is made without rational explanation, or inexplicably departs from established policies. ... Further, a decision by the Board may be found arbitrary if the Board fails to address meaningfully all material factors extant. ...

In *Lara, supra* at 494, the Fifth Circuit sustained the denial of a motion to reopen, citing *Diaz-Resendez* for the proposition that the abuse of discretion standard applied to the review of the denial for alleged Due Process violations involving failure to follow or distinguish prior precedent. The Court also noted, *id.,* that the pertinent prong of the BIA's test for reopening under *Lozada* was,

> an indication that, assuming that a violation of "ethical or legal responsibilities" was claimed, a complaint has been lodged with the relevant disciplinary authorities, or an adequate explanation for the failure to file such a complaint.

The explanation tendered in *Lara* for not filing a grievance was that the attorney's error (failure to notify him of the decision of the BIA in time to file a petition for review), did not constitute

3

a violation of his "ethical or legal responsibilities."  The BIA
found that it did, and the Fifth Circuit sustained that finding.

By contrast, in the case at bar, Mr. Torres did not file a
grievance because his prior attorney had left the employ of the
office which represented him, and the BIA made no attempt to
explain why this explanation was insufficient. [3]  Under the holding
of *Diaz-Resendez, supra,* ("the Board's decision may be reversed as
an abuse of discretion when it is made *without rational
explanation*, or inexplicably departs from established policies"),
as adopted by *Lara, supra,* the absence of any explanation, let
alone a rational one, constitutes an abuse of the Board's
discretion, and therefore reversible error.

**B.  MR. TORRES IS ENTITLED TO DUE PROCESS IN THE ADJUDICATION OF
HIS MOTION TO REOPEN, AS IN DETERMINING WHETHER HE MERITS RELIEF.**

INS also asserts, (OPP:6-10), that Mr. Torres' Due Process claims
fail because he allegedly cannot establish prejudice, citing *U.S.
v. Lopez-Ortiz*, 313 F.3d 225,230 for the proposition that §212(c)
relief is not "an interest warranting constitutional protection."

This mis-perceives both the procedural posture of his case, and the
state of the law.  Mr. Torres challenges the denial of his motion
to reopen on the basis of ineffective assistance of counsel. [4]  As

---

[3]  In the decision at issue herein, at p. 3, the BIA stated:

We note initially that, despite present counsel's
statements to the contrary, there has not been compliance
with the requirements of *Matter of Lozada,* 19 I&N Dec.
637 (BIA 1988), and reopening on that basis is therefore
not appropriate.

[4]  The BIA previously denied the motion on the basis that Mr.
Torres was not eligible for §212(c) relief under *Matter of Soriano*,
21 I&N Dec. 516 (BIA 1996; AG 1997). This decision was successfully

4

INS correctly posits, this claim is governed by the Fifth Circuit's decision *Lara v. Trominski, supra.* Under *Lara,* it is the BIA's reasons for denying the motion that are examined, not whether the individual is entitled to some form of relief.

But even assuming, *arguendo,* that the issue of the underlying relief were to be examined, Mr. Torres has demonstrated that the Fifth Circuit cases finding that §212(c) relief is not entitled to constitutional protection arose in the context of the Sentencing Guidelines, in determining whether the proceeding was fundamentally unfair, and that they have no application in the context of habeas review of an un-executed deportation order. *See, e.g., U.S. ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954), wherein the Supreme Court remanded *for an evidentiary hearing* on a claimed Due Process violation in the denial of discretionary relief. There, the petitioner argued that his application had been "prejudged" by virtue of the Attorney General's issuance, prior to the BIA's decision, of a confidential list of "unsavory characters," which included the petitioner, which the petitioner claimed made it impossible for him to secure fair consideration of his case. Since *Accardi* was decided during the epoch when Congress had removed all judicial review of deportation orders *except that which was constitutionally mandated*, the conclusion follows that review of the denial of discretionary relief for Due Process errors is so mandated, even where, as in *Accardi*, the claimed violation was extrinsic to the record of the administrative proceedings.

Nor is *Mejia-Rodriguez* persuasive authority to the contrary. *Mejia* also involved the denial by the BIA of a motion to reopen for

---

challenged in Mr. Torres' prior habeas action, CA B-97-149. INS appealed that decision, and then withdrew its appeal. following which the BIA issued the decision at issue herein.

5

ineffective assistance of counsel, and was consolidated with the dismissal of a petition for habeas corpus, under §2241. Apart from the fact that *Mejia* preceded the recent series of Supreme Court cases involving habeas review of immigration decisions, there was another significant difference. In *Mejia*, the motion to reopen was untimely, whereas in the case at bar, as even INS admits, (OPP:2), it was timely filed. And in *Mejia,* the ineffective assistance claim related to the timeliness of the motion to reopen. As the Eleventh Circuit opined, 178 F.3d 1146:

> As suspension of deportation is an extraordinary remedy over which the Attorney General possesses broad discretion, Mejia does not, and cannot, argue that he would have received suspension, and thus would not be facing deportation, if he had received effective assistance from his counsel during his initial deportation proceedings. Thus, the issue becomes whether deficient representation by counsel in deportation proceedings that renders an alien ineligible for suspension of deportation inflicts a constitutional injury.

Ultimately, the Eleventh Circuit concluded that "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." In *Mejia, supra* at 1148, the Eleventh Circuit opined:

> In other words, an alien has not been deprived of "fundamental fairness" simply by being ineligible for a purely discretionary "act of grace" like suspension of deportation. The alien cannot demonstrate prejudice, much less substantial prejudice, arising from the ineligibility for such an "act of grace" because no standards exist for a court to determine whether the executive would have granted the extraordinary relief anyway.

As seen from *INS v. St. Cyr,* 121 S.Ct. at 2271, 2303 (2001), this is a misreading of *INS v. Yang,* 519 U.S. 26, 30 (1996). *Yang* can more fairly be read as holding that while discretion is initially

unfettered, once standards are developed, either by the promulgation of rules, or on a case by basis, then there is a standard to apply, and failure to do so is an abuse of discretion.

Moreover, this conclusion failed to consider cases such as *Accardi, supra,* and has been criticized by other courts of appeals. *See, Hernandez v. Reno*, 238 F.3d 50,55-56 (1st Cir. 2001);

> The Eleventh Circuit has taken the view that waiver relief is so speculative and so much a matter of grace that "an attorney's deficient representation does not deprive an alien of due process if the deficient representation merely prevents the alien from being eligible for suspension of deportation." *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1148 (11th Cir. 1999), cert. denied, 148 L. Ed. 2d 483, 121 S. Ct. 563 (2000). Yet waivers are granted or withheld according to largely fixed criteria, *Yepes-Prado v. INS*, 10 F.3d 1363, 1365-66 (9th Cir. 1993), and have an enormous practical impact. We think it best to treat the speculative and discretionary character of waivers not as an absolute bar but as bearing on the likelihood that counsel's conduct affected the outcome.

Most significantly, the Fifth Circuit declined to address it in *Toscano-Gil v. Trominski*, 210 F.3d 470,474,n.5 (5th Cir. 2000):    [5]

> [I]n the light of our holding, we need *not* address the Government's contention that denials of former §§ 212(c) relief do *not* implicate due process. *See Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) ("failure to receive relief that is purely discretionary in nature does *not* amount to a deprivation of a liberty interest" (emphasis added)).

-----

[5]    INS asserts that the petitioner in *Mejia* had also paid a filing fee. Nowhere does that decision mention such a fee, much less discuss the effect of one having been paid. And to the extent that *Mejia* conflicts with Fifth Circuit precedent, such as *Lara*, or with Supreme Court decisions such as *Accardi*, it has no persuasive authority at all in this judicial circuit.

In the Fifth Circuit, prejudice is defined in terms of the likelihood that Mr. Torres would have won his case. *Miranda-Lores v. INS*, 17 F.3d 84, 85 (5th Cir. 1994) (proving prejudice requires a *prima facie* showing that Petitioner would have been entitled to relief from deportation). Mr. Torres has made such a showing.

Nor does the Fifth Circuit Sentencing Guidelines case cite by INS, *U.S. v. Lopez-Ortiz, supra,* rely on *Mejia.* This underscores Mr. Torres' argument that the resolution of the issue in that context is not dispositive of whether cases such as *Accardi, supra,* continue to be good law. To the contrary, in its most recent pronouncement on the issue, *Demore v. Kim,* 123 S.Ct. 1708 (2003), Justice Kennedy, concurring, reaffirmed the continued vitality of habeas corpus in immigration cases, and the recognition in *Heikkila v. Barber*, 345 U.S. 229 (1953), of the difference between statutory review, of the type conducted in *Mejia*, and of the type of review conducted in habeas corpus. *Demore,* at *44:

> "The term 'judicial review' or 'jurisdiction to review' is the focus of each of these three provisions. In the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings. See *Heikkila v. Barber*, 345 U.S. 229, 97 L. Ed. 972, 73 S. Ct. 603 (1953). In *Heikkila*, the Court concluded that the finality provisions at issue 'precluded judicial review' to the maximum extent possible under the Constitution, and thus concluded that the [Administrative Procedure Act] was inapplicable. *Id.*, at 235. Nevertheless, the Court reaffirmed the right of habeas corpus. *Ibid*. Noting that the limited role played by the courts in habeas corpus proceedings was far narrower than the judicial review authorized by the APA, the Court concluded that 'it is the scope of inquiry on habeas corpus that differentiates' habeas review from judicial review." *Id.*, at 311-312.

It is therefore submitted that regardless of whether an erroneous

denial of the opportunity to apply for discretionary relief does not render removal proceedings fundamentally unfair for purposes of sentencing an alien who unlawfully re-entered after deportation, under *Accardi*, and *Lara*, Mr. Torres may assert errors of law and Due Process violations in habeas review of an un-executed order of deportation, even if the ultimate relief sought is discretionary.

### C.    MR. TORRES HAS SHOWN THAT THE BIA FAILED TO FOLLOW ITS OWN PRECEDENT, AND THAT HE WAS SUBSTANTIALLY PREJUDICED THEREBY.

Mr. Torres has shown that the BIA abused its discretion, by failing to follow or distinguish prior precedent, (here, the failure to follow or distinguish *Lozada*, by giving a rational explanation of the rejection of his explanation as to why no grievance was filed).

He has also shown that he was prejudiced by this violation, in the sense that there is a very high probability that relief would be granted in the exercise of discretion.    Indeed, it is a virtual certainty that if proceedings were reopened, he would earn §212(c) relief in the exercise of discretion.    It has been over fifteen years since he was released from prison, during which time he has committed no further offenses. He has re-married.  His wife is a lawful permanent resident, and they have four sons born in the U.S..  He has worked steadily, reported his income, and paid his taxes.  His entire family is in the U.S. legally, most of them in the Weslaco area, where he resides.  Under BIA precedent such as *Matter of Arreguin*, 22 I&N Dec. 38 (BIA 1995), [6] it is virtually inconceivable that said application would **not** be granted.

Respectfully Submitted,

*Lisa S. Brodyaga*

---

[6]    Copies of the Board's precedent decisions referenced herein are attached for the Court's convenience.

9

```
Lisa S. Brodyaga
Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
Fed Bar No:  1178
Texas Bar No:  03052800
```

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid to Lisa Putnam, SAUSA, PO Box 1711, Harlingen, TX 78551, this 19th day of May, 2003.

10

In re Catalina Arreguin De Rodriguez, Applicant

U.S. Department of Justice, Executive Office for Immigration Review, Board of Immigration Appeals

File No. A35 507 157 - Dublin

INTERIM DECISION: 3247

DEPARTMENT OF JUSTICE,
BOARD OF IMMIGRATION APPEALS

1995 BIA LEXIS 10; 21 I. & N. Dec. 38

May 11, 1995, Decided

HEADNOTES:
 [*1]

(1) An alien who has committed a serious drug offense faces a difficult task in establishing that she merits discretionary relief; nevertheless, the applicant met her burden of demonstrating that relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (Supp. V 1993), was warranted where this was her only conviction, the sentencing court noted her acceptance of responsibility and "minor role" in the offense, there was substantial evidence of efforts toward rehabilitation, and the applicant presented unusual or outstanding equities, including nearly 20 years of lawful residence and two minor dependent United States citizen children.

(2) In considering the factors to be weighed in the exercise of discretion with regard to an application for relief under section 212(c) of the Act, evidence such as community ties, property and business holdings, or special service to the community are to be considered in the applicant's favor; however, the absence of those additional ties in themselves does not negate the weight to be accorded an applicant's long residence in this country.

COUNSEL:

Pro se

Thomas L. Day, General Attorney, for the Immigration and Naturalization [*2] Service

Before: Board En Banc: Schmidt, Chairman; Dunne, Vice-Chairman; Vacca, Board Member; Holmes, Alternate Board Member.  Dissenting Opinion: Heilman, Board Member.

OPINION:

VACCA, Board Member:

This is an appeal by the applicant from the decision of an Immigration Judge denying her application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (Supp. V 1993). The appeal will be sustained.

I.   PROCEDURAL HISTORY

The applicant is a 41-year-old native and citizen of Mexico. She began residing in the United States in 1970, when she was 17 years old, and was admitted into the United States as an immigrant on December 12, 1975.    On September 29, 1993, the applicant was convicted in a United States District Court of importing marijuana in violation of 21 U.S.C. § § 952(a) and 960(a)(1) (1988).   The 78.45 kilograms of marijuana were found in a camper shell of a pickup truck the applicant was driving across the border.  The applicant was arrested upon her attempted entry and, because of the marijuana found in the truck and her subsequent conviction, was placed   **[*3]**   in exclusion proceedings under sections 212(a)(2)(A)(i)(II) and (C) of the Act, 8 U.S.C. § § 1182(a)(2)(A)(i)(II) and (C) (Supp. V 1993). n1 In these proceedings, the applicant has not contested her excludability, but has applied for a waiver under section 212(c) of the Act.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Section 212(a)(2)(A)(i)(II) of the Act provides that "any alien convicted of . . . a violation of (or a conspiracy to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), is excludable."

Section 212(a)(2)(C) of the Act provides that "[a] ny alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance or is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance, is excludable."

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*4]**

At the conclusion of the hearing on the merits of the applicant's request for relief from exclusion, the Immigration Judge issued an oral decision finding that relief under section 212(c) of the Act was not warranted in the exercise of discretion, and ordering her exclusion and deportation to Mexico.  On appeal, the applicant asserts that the Immigration Judge erred in his evaluation of the equities in her case.  She is thus requesting that the decision of the Immigration Judge be vacated and that she be granted relief

2

from exclusion under section 212(c) of the Act.

## II. ISSUE PRESENTED

Section 212(c) of the Act provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a). . . .

In adjudicating an application under section 212(c) of the Act, we balance the adverse factors evidencing the applicant's undesirability as a permanent resident with the social and humane considerations presented in her behalf [*5] to determine whether the granting of section 212(c) relief appears to be in the best interests of this country. See Matter of Edwards, Interim Decision 3134 (BIA 1990); Matter of Buscemi, 19 I&N Dec. 628 (BIA 1988); Matter of Marin, 16 I&N Dec. 581 (BIA 1978). Accordingly, the issue in this case is whether, considering the particular facts presented, relief is warranted in the exercise of discretion. Upon our independent review of the record, we find that relief should be granted. See Matter of Burbano, Interim Decision 3229 (BIA 1994).

## III. REHABILITATION

We first address the question of the applicant's rehabilitation. In his oral decision, the Immigration Judge states that the applicant "must also convince the court that she has rehabilitated." This statement leaves the erroneous impression that an applicant may be barred from relief simply by a failure to demonstrate that she is rehabilitated. A clear showing of reformation is not an absolute prerequisite to a favorable exercise of discretion in every section 212(c) application involving an alien with a criminal record. See Matter of Edwards, supra. [*6] Section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. Matter of Roberts, Interim Decision 3148 (BIA 1991); Matter of Edwards, supra. Here, the applicant is currently serving her sentence for the conviction underlying these proceedings. We recognize the difficulties an incarcerated alien faces in demonstrating convincing efforts towards rehabilitation. However, any efforts will be considered, and the applicant is not barred automatically from discretionary relief by her incarceration. Accordingly, in our review of this matter, we have taken into account the following indicators of the applicant's efforts at rehabilitation.

Evidence of the applicant's efforts towards rehabilitation include her apparent acceptance of responsibility for her crime. In this regard, we note that the criminal court reduced the applicant's sentence because of her acceptance of responsibility.

3

This was based on the presentence investigation report prepared for the applicant's sentencing, which states:

    The Defendant made a voluntary post-arrest statement in which she admitted [*7] her involvement in the instant offense.  On August 2, 1993, she pled guilty and during the subsequent presentence interview, she again admitted responsibility for smuggling the camper shell containing the marijuana into the United States for remuneration.

Likewise, at the hearing the applicant did not disclaim responsibility for the crime and did express remorse for her participation, stating that she was thankful she was caught so that she was unable to carry out the importation.

    Despite her current incarceration, the record reflects that the applicant has apparently used her time in prison well in that she has advanced her otherwise meager education by voluntarily pursuing GED studies, for which she received a letter of commendation, has pursued other courses, has had no prison infractions, and has been involved in a church ministry.

    In sum, the applicant's acceptance of responsibility for her crime and her achievements while in prison are favorable indicators of efforts at rehabilitation which we take into account in weighing the equities of her application.

    IV.  OTHER FAVORABLE FACTORS

    The other two major equities to be considered in the applicant's favor are her long  [*8]  residence and her five United States citizen children.  The Immigration Judge seems to have found that these did not constitute unusual or outstanding equities.  We disagree.  Of the applicant's five United States citizen children, two are minors, Fernando, 11 years old, and Myra, 3 years old.  The other three are emancipated adults.  Due to the applicant's incarceration, the minor children are presently in the custody of the applicant's sister, who is receiving Aid to Families with Dependent Children on their behalf, since she is unable to support them on her salary while also raising her own children.  However, the record reflects that they lived with the applicant prior to her arrest. The letters of support submitted by the applicant assert that she is a responsible and caring mother and that her exclusion and deportation would bring great hardship upon the children. Accordingly, we find that the minor children do constitute an outstanding equity, and that the three adult children are additional family ties to the United States to be considered in her favor.

    Likewise, we find that the applicant's nearly 20 years of lawful permanent residence in this country constitutes an unusual [*9]  or outstanding equity.  The immigration judge found this not to be so because she "has little to show for her residence in the United

States." There is no doubt that additional community ties, property and business holdings, or special service to the community would be equities in her favor.  See Matter of Marin, supra. However, the absence of those additional ties in themselves does not negate the weight to be accorded the applicant's long residence in this country, which is otherwise without a criminal record, and during most of which she was employed.  We note that the applicant testified that she has paid income taxes and she submitted copies of returns for 1982 to 1986.  Accordingly, we consider the applicant's long residence to be an unusual and outstanding equity in her favor.

We additionally take into account that a letter submitted on behalf of the applicant states that she will be offered full-time employment upon her release.  In this regard, we note that the applicant is apparently undecided as to whether the two minor children would accompany her or remain if she were deported; thus, they might remain in the United States if she were deported.  **[*10]** We accordingly take into consideration that if the applicant remains in the United States and reenters the work force the children would be able to stop receiving welfare, as they would no longer be dependent on her sister.

The record reflects that during most of her 25 years of residence in this country the applicant has supported herself and her children and, according to the presentence report, has paid rent when living with her sisters. During two periods she resorted to welfare -- after she was divorced, from 1977 to 1979, and after her youngest child was born, from 1991 until 1993, when she was arrested. In balance, we consider the applicant's long history of employment to be a favorable equity.

In sum, upon consideration of the applicant's efforts at rehabilitation and the other factors outlined above, we give greater weight to the favorable facts of record than did the immigration judge.

V.  ADVERSE FACTORS

As well as differing with the immigration judge regarding the favorable facts presented by the applicant, we make the following observations regarding the negative facts of record.  First, as noted above, the court that convicted the applicant reduced her sentence **[*11]** on account of her acceptance of responsibility, as recommended in the presentence report.  In addition, the sentencing court itself further reduced the sentence "because the defendant played a minor role in the offense." The applicant has had no other convictions or arrests, except for the incident discussed below. Thus, while we do not discount the gravity of the applicant's conviction, we take into account the mitigating factors relied upon by the sentencing court, as well as the fact that this is the applicant's only criminal conviction.

With regard to the applicant's immigration history, the

5

Immigration and Naturalization Service presented documentation regarding the applicant's arrest in 1980 on suspicion of smuggling aliens. The applicant was alleged to have picked up a number of undocumented aliens near the border in an attempt to transport them further into the country for gain. The apprehension report states that prosecution was declined, and we note that deportation proceedings were never instituted on the basis of this incident. At the hearing, the applicant admitted that she gave a ride to a family, but denied that she was paid for it or that she was engaged in any **[*12]** wrongdoing. She also testified that the three birth certificates and social security cards mentioned in the report belonged to her three children, and that she always carried them with her.

The Immigration Judge concluded that this incident was a negative factor to be considered in exercising discretion. Just as we will not go behind a record of conviction to determine the guilt or innocence of an alien, so we are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight.

VI.  CONCLUSION

An alien who has committed a serious drug offense faces a difficult task in establishing that she merits discretionary relief. Nevertheless, relief under section 212(c) of the Act may be merited based upon the totality of circumstances presented in a particular case. Matter of Burbano, supra. Here, we have weighed the negative fact of the applicant's only conviction, **[*13]** the mitigating facts of her minor role and efforts toward rehabilitation, and the favorable facts of record, which include nearly 20 years of lawful residence and two minor dependent children, and we find that relief under section 212(c) of the Act is warranted in this instance.

In granting this waiver we particularly advise the applicant that if she commits another offense leading to exclusion or deportation proceedings, she is not likely to be the beneficiary of such relief again.

ORDER: The appeal is sustained.

FURTHER ORDER: The applicant is granted a waiver of inadmissibility under section 212(c) of the Act and is hereby admitted to the United States as a returning lawful permanent resident.

DISSENTBY: HEILMAN

6

DISSENT:

HEILMAN, Board Member, dissenting:

I respectfully dissent.

The respondent's appeal did not specifically identify any errors in the Immigration Judge's decision, and I therefore find no ground on which to exercise our appellate authority to reverse the decision.

This is not an easy or simple case to adjudicate, as we are presented with a serious conviction involving a large quantity of marijuana on the one hand, and substantial equities on the other. Presented with this difficult [*14] decision, the Immigration Judge took into consideration the requisite factors set forth in our precedent decisions.  The favorable factors the Immigration Judge took into consideration included the respondent's long residence in the United States, her family ties (especially giving weight to her two minor children) , evidence of her rehabilitative efforts, and her employment history, although he found the latter diminished by her receipt of public assistance during two periods. By way of adverse factors, the Immigration Judge took into consideration the serious conviction underlying these proceedings, as well as the arrest in 1980 on alien smuggling grounds.  Upon weighing these competing factors, the Immigration Judge decided, in the exercise of discretion, that relief was not warranted.

Reasonable minds can easily reach conflicting decisions in a case as close as this one.  Nevertheless, it is my opinion that the respondent here did not adequately raise specific objections to the Immigration Judge's decision so as to warrant the re-weighing of the equities engaged in by the majority here.  Accordingly, I would not have reversed the decision of the Immigration Judge in this instance.

7

1988 BIA LEXIS 19, *; 19 I. & N. Dec. 637

12 of 12 DOCUMENTS

Matter of Lozada

In Deportation Proceedings

No. A-31025184

INTERIM DECISION: 3059

DEPARTMENT OF JUSTICE,
BOARD OF IMMIGRATION APPEALS

1988 BIA LEXIS 19; 19 I. & N. Dec. 637

April 13, 1988, Decided by Board

HEADNOTES:

(1) A motion to reopen or reconsider based upon a claim of ineffective
assistance of counsel requires (1) that the motion be supported by an affidavit
of the allegedly aggrieved respondent setting forth in detail the agreement that
was entered into with counsel with respect to the actions to be taken and what
representations counsel did or did not make to the respondent in this regard,
(2) that counsel whose integrity or competence is being impugned be informed of
the allegations leveled against him and be given an opportunity to respond, and
(3) that the motion reflect whether a complaint has been filed with appropriate
disciplinary authorities with respect to any violation of counsel's ethical or
legal responsibilities, and if not, why not.

(2) An alien deportable under section 241(a)(4) of the Immigration and
Nationality Act, 8 U.S.C. §  1251(a)(4) (1982), is ineligible for voluntary
departure unless he qualifies under the provisions of section 244(a)(2) of the
Act, 8 U.S.C. §  1254(a)(2) (1982), which in the case of criminal offenders
requires, inter alia, that the alien have been physically present in the United
States and a person of good moral character for a continuous period [*2] of not
less than 10 years following the date of his conviction. Matter of P---, 6 I. &
N. Dec. 788 (BIA 1955), followed.

CHARGE:

Order: Act of 1952 - Sec. 241(a)(4) [8 U.S.C. §  1251(a)(4)] - Crime involving
moral turpitude

COUNSEL:

ON BEHALF OF RESPONDENT: Mark L. Galvin, Esquire, Watt & Galvin, Providence,
Rhode Island,

ON BEHALF OF SERVICE: John M. Furlong, General Attorney

1988 BIA LEXIS 19, *; 19 I. & N. Dec. 637

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

OPINION:

On March 13, 1985, an immigration judge found the respondent deportable as charged on the basis of his concessions at the hearing under section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) (1982), as an alien who was convicted of a crime involving moral turpitude committed within 5 years of entry and was sentenced to confinement for 1 year or more, denied his applications for relief under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1982), and for voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e) (1982), and ordered him deported to the Dominican Republic. That same day, the respondent filed a Notice of Appeal (Form I-290A), indicating that he would be filing a separate written brief [*3] or statement in support of his appeal. No such brief or statement was forthcoming. On July 8, 1986, over a year after the immigration judge had entered his decision in the case, the Board summarily dismissed the appeal, noting that the respondent had in no meaningful manner identified the claimed error in the immigration judge's comprehensive decision of March 13, 1985.

On January 20, 1987, the respondent, through present counsel, n1 filed a motion to reopen the proceedings, alleging (1) that prior counsel's failure to submit a written brief or statement explaining the basis for appeal constituted ineffective assistance of counsel and (2) that the immigration judge erred as a matter of law and discretion in deciding the case. The respondent also filed a petition for review of the Board's decision with the United States Court of Appeals for the First Circuit. The court has stayed action on the petition for review pending the Board's resolution of the motion to reopen. The motion will be denied.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - - -

n1 The record before the Board does not contain counsel's Notice of Entry of Appearance as Attorney or Representative (Form G-28).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - -
[*4]

Any right a respondent in deportation proceedings may have to counsel is grounded in the fifth amendment guarantee of due process. Magallanes-Damian v. INS, 783 F.2d 931 (9th Cir. 1986); Paul v. INS, 521 F.2d 194 (5th Cir. 1975). Ineffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. Ramirez-Durazo v. INS, 794 F.2d 491 (9th Cir. 1986); Lopez v. INS, 775 F.2d 1015 (9th Cir. 1985); see also Magallanes-Damian v. INS, supra (alien must show not merely ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause). One must show, moreover, that he was prejudiced by his representative's performance. Mohsseni Behbahani v. INS, 796 F.2d 249 (9th Cir. 1986). See generally Matter of Santos, Interim Decision 2969 (BIA 1984).

The Government maintains that the fact that prior counsel did not submit a brief does not in itself amount to deprivation [*5] of due process. We agree.

1988 BIA LEXIS 19, *; 19 I. & N. Dec. 637

Failure to specify reasons for an appeal is grounds for summary dismissal under 8 C.F.R. § 3.1(d)(1-a)(i) (1988). See generally Matter of Valencia, Interim Decision 3006 (BIA 1986). It would be anomalous to hold that the same action or, more accurately, inaction that gives rise to a summary dismissal of an appeal could, without more, serve as the basis of a motion to reopen. To allow such anomaly would permit an alien to circumvent at will the appeals process, with its regulatory time constraints, by the simple expedient of failing to properly pursue his appeal rights, then claiming ineffective assistance of counsel. Litigants are generally bound by the conduct of their attorneys, absent egregious circumstances. LeBlanc v. INS, 715 F.2d 685 (1st Cir. 1983). No such egregious circumstances have been established in this case.

A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts. In the case before us, that affidavit should include a statement that sets forth in detail the agreement that was entered into with former [*6] counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard. Furthermore, before allegations of ineffective assistance of former counsel are presented to the Board, former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond, should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

The high standard announced here is necessary if we are to have a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before the Board. Where essential information is lacking, it is impossible to evaluate the substance of such claim. In the instant case, for example, the respondent has not alleged, let alone established, that former counsel ever agreed to prepare a brief on appeal or was engaged to undertake [*7] the task. Then, too, the potential for abuse is apparent where no mechanism exists for allowing former counsel, whose integrity or competence is being impugned, to present his version of events if he so chooses, thereby discouraging baseless allegations. The requirement that disciplinary authorities be notified of breaches of professional conduct not only serves to deter meritless claims of ineffective representation but also highlights the standards which should be expected of attorneys who represent persons in immigration proceedings, the outcome of which may, and often does, have enormous significance for the person.

The respondent's motion is wholly insufficient in light of the foregoing guidelines. We note, moreover, that no prejudice was shown to have resulted from prior counsel's failure to or decision not to file a brief in support of the appeal. The respondent received a full and fair hearing at which he was given every opportunity to present his case. We do not find, and the respondent does not allege, any inadequacy in the quality of prior counsel's representation at the hearing. The immigration judge considered and properly evaluated all the evidence presented, [*8] and his conclusions that the respondent did not merit a grant of section 212(c) relief as a matter of discretion and that he was ineligible for voluntary departure as a matter of law are supported by the record.

1988 BIA LEXIS 19, *; 19 I. & N. Dec. 637

The allegations of error ascribed to the immigration judge in the respondent's motion are unfounded. Contrary to present counsel's contention, it is clear from the transcript of hearing and the immigration judge's decision that the immigration judge was well aware that the respondent committed the offense of obtaining money under false pretenses several years prior to his conviction of that offense. And contrary to counsel's contention, the immigration judge correctly determined that the respondent was not eligible for a grant of voluntary departure. By the express terms of section 244(e) of the Act, an alien deportable under section 241(a)(4) of the Act is ineligible for voluntary departure unless he qualifies under the provisions of section 244(a)(2) of the Act, which in the case of criminal offenders requires, inter alia, that the alien have been physically present in this country, and a person of good moral character, for a continuous period of not less than 10 years **[*9]** following his conviction. See generally Matter of P---, 6 I. & N. Dec. 788 (BIA 1955). The 10-year period is measured from the date of conviction, not the date the offense was committed, since it is the conviction, not the commission of the offense, that renders the alien deportable. Id. Since 10 years from the date of the conviction constituting the ground of deportation have not yet elapsed, the respondent is unable to demonstrate statutory eligibility for voluntary departure.

The respondent has shown no basis for reopening or reconsideration. His motion will be denied.

ORDER: The motion is denied.